# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| JODELLE L. KIRK, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:13-cv-05032-DGK |
| SCHAEFFLER GROUP USA, INC., d/b/a FAG BEARINGS CORP.; FAG HOLDING, LLC; WAYNE ALLISON; and FAG BEARINGS, LLC, | ) |
| Defendants. | ) |

## ORDER DENYING MOTION TO QUASH SUBPOENA

This case arises from Plaintiff Jodelle L. Kirk's allegations that trichloroethylene ("TCE") released from a manufacturing plant injured her. Now before the Court is Third-Party Janice Kirk's Motion to Quash *Subpoena Duces Tecum* and for Order of Protection (Doc. 34). Plaintiff joins the motion (Doc. 39).[1]

Defendants have sought medical records related to autoimmune illnesses from Plaintiff's mother Janice Kirk ("Mrs. Kirk"), a third-party to this litigation, to determine whether a family history of autoimmune illness may have caused Plaintiff's autoimmune hepatitis. Mrs. Kirk has invoked her physician-patient privilege to keep these records confidential and non-discoverable, and she moves to quash the subpoena. For the following reasons, the motion is DENIED.

## Background

Plaintiff is suing Defendants alleging, among other things, that she suffers from an autoimmune hepatitis caused by exposure to TCE released from FAG Bearings' manufacturing plant in Joplin, Missouri. Plaintiff's own expert acknowledges that the origin of Plaintiff's

---

[1] The Court refers to Plaintiff and Mrs. Kirk together as "Movants."

autoimmune illness may be genetic, and the record indicates that Plaintiff's mother, Mrs. Kirk, suffers from at least one autoimmune illness. Defendants seek to review Mrs. Kirk's medical records related to autoimmune illness to explore whether the cause of Plaintiff's autoimmune hepatitis might be genetic.

Plaintiff's counsel had previously represented to Defendants that they also represented Mrs. Kirk, and Defendants should contact Mrs. Kirk through Plaintiff's counsel. Accordingly, Defendants asked Plaintiff's counsel to provide them with additional information about Mrs. Kirk's autoimmune illness. In response, Plaintiff's counsel stated that they did not represent Mrs. Kirk in connection with a request for records or a subpoena.

Consequently, on March 1, 2014, Defendants served Mrs. Kirk with a subpoena which requested both her personal appearance at a deposition and the production of "all documents and communications reflecting the identity of any Medical Provider who provided any treatment to you for any autoimmune illness or disorder, including but not limited to Graves Disease." The subpoena limited the request to records relating to autoimmune illnesses. Defense counsel also wrote to Mrs. Kirk's current counsel explaining the relevance of these medical records and offering to discuss reasonable steps to safeguard Mrs. Kirk's privacy.

In response, Mrs. Kirk filed the pending motion to quash.

Defendants do not currently know which medical providers diagnosed or treated Mrs. Kirk for her autoimmune illness. Defendants worded the subpoena to identify those medical providers so they could serve them with subpoenas, as required by Missouri law, to obtain Mrs. Kirk's medical records related to her autoimmune illness.

## Standard

Federal Rule of Civil Procedure 45(d)(3)(A)(iii) provides that the district court issuing a subpoena must quash or modify a subpoena if the subpoena requires the disclosure of privileged or other protected matter and no exception or waiver applies. Because this is a diversity action, Missouri state law provides the applicable rule on evidentiary privileges. *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir. 1987). Although third-party medical records are privileged under Missouri law, their discovery is permitted under certain circumstances. *See State ex rel. Wilfong v. Schaeperkoetter*, 933 S.W.2d 407, 409 (Mo. 1996) (Benton, J.). Under Missouri law, a judge may order discovery of an otherwise privileged third-party's medical records if (1) the records are relevant to a claim at issue, and (2) adequate safeguards are provided to protect the third-party as much as possible. *Id.* at 410. While the caselaw does not explicitly require a litigant seeking a third-party's medical records to meet a heightened standard of relevance, in practice, courts deny access to such records unless the litigant demonstrates the subpoena is reasonably likely to lead to the discovery of admissible evidence on this issue. *See, e.g., id.*; *State ex. rel. Allison v. Mouton*, 278 S.W.3d 737, 741-42 (Mo. Ct. App. 2009). Finally, "[t]he only proper procedure to compel discovery of such records is by subpoena *duces tecum*." *State ex rel. Wilfong*, 933 S.W.2d at 408.[2]

---

[2] While Movants characterize Missouri's physician-patient privilege as absolute, applying in every situation, and dissolvable only upon waiver, *State ex rel. Wilfong* emphasizes that "[t]he circumstances, facts and interests of justice determine the applicability of the physician-patient privilege to a particular situation." 933 S.W.2d at 409.

**Discussion**

**A.  The records are relevant to an important claim at issue, and the subpoena is reasonably likely to lead to the discovery of admissible evidence on this claim.**

Here, the information sought by Defendants is directly relevant to a crucial issue in this case, namely whether TCE caused Plaintiff's autoimmune hepatitis. If the origin of Plaintiff's autoimmune hepatitis is genetic, then Defendants did not cause her illness.

Defendants have also demonstrated that the subpoena is reasonably likely to lead to the discovery of admissible evidence on this issue. They have placed evidence in the record indicating that Plaintiff's mother suffers from at least one autoimmune illness, Graves' Disease. One of Plaintiff's doctors, a treating pediatric gastroenterologist, wrote a letter alluding to the fact that Plaintiff's mother had recently experienced the onset of Graves' Disease (Doc. 38-7 at 2). Plaintiff's own expert testified at his deposition that Graves' Disease is an autoimmune illness, and that "[a]utoimmune illnesses certainly can have a genetic basis, so, therefore, it would be important to know about a patient's family history of autoimmune illnesses if they also have an autoimmune illness" (Doc. 38-8 at 5).[3]

Movants do not acknowledge or discuss this evidence. Instead, they simply deny that the records are relevant, and they dismiss as a "mere defense theory" the possibility that genetic factors, and not Defendants' actions, are responsible for Plaintiff's autoimmune hepatitis (Doc. 45 at 4). Although *State ex. rel. Wilfong* clearly controls, Movants make no attempt to argue the subpoena should not be issued under *Wilfong*.

---

[3] Other evidence in the record confirms that this is a legitimate line of inquiry. For example, a water sample taken from Plaintiff's family's well in December 1991 and tested by the Environmental Protection Agency detected no TCE in the water (Doc. 48-2). This result is consistent with Defendants' theory that Plaintiff's autoimmune hepatitis was more likely the result of genetic factors than exposure to TCE. If Plaintiff was never exposed to TCE, then her illness must have been caused by something else, e.g., genetic factors.

The Court finds no merit to these arguments. To begin, the fact that Defendants are seeking discovery on a theory of defense is irrelevant. Plaintiff's allegation that exposure to TCE caused her to develop autoimmune hepatitis is also only a "theory," namely Plaintiff's theory of liability. The Federal Rules of Civil Procedure do not provide different discovery rules for defendants' theories and for plaintiffs' theories. Rather, the primary purpose of discovery is to allow *both* parties access to the facts behind the allegations. *See Daniels v. City of Sioux City*, 294 F.R.D. 590, 512 (N.D. Iowa 2013) (observing the purpose of discovery is to allow access to the information essential to litigation of the facts behind discovery, to eliminate surprise, and to promote settlement). Consequently, the fact that Defendants are seeking discovery on one of their theories of defense is no more remarkable than the fact that Plaintiff is pursuing discovery on her theories of liability, and it provides no basis for quashing the subpoena.

What Movants apparently meant to argue or are attempting to argue is that Defendant's theory is based on nothing more than speculation, and the Court should not permit discovery of a third-party's medical records based on speculation. The Court recognizes that Missouri law extends a great deal of protection to third-party medical records, and it agrees that Missouri law does not authorize a litigant to go on a "fishing expedition" through a third-party's records. But that is not what is happening here. Defendants' request is clearly not the product of speculation or wishful thinking. Defendants have placed facts on the record demonstrating that the subpoena is reasonably likely to yield information that is directly relevant to an important issue in the case. This differentiates this case from those cases where the litigant was denied access to the third-party's medical records. *See, e.g., State ex rel. Wilfong*, 933 S.W.2d at 409-10 (noting the plaintiff's siblings medical records were irrelevant because there was no evidence that the

5

siblings suffered from similar genetic disorders). Consequently, the first prong of the analysis is satisfied.

**B.  The subpoena provides adequate safeguards to protect Mrs. Kirk as much as possible.**

The second prong of the analysis considers whether the subpoena provides adequate safeguards to protect the third-party as much as possible. Although Movants do not contest this factor, the Court has conducted its own analysis of the subpoena and finds it provides adequate safeguards for two reasons. First, the subpoena is narrowly written to discover *only* the *identity* of medical providers who provided treatment to Mrs. Kirk for autoimmune illnesses or disorders, including but not limited to Graves' Disease. She does not have to disclose the identity of any other medical providers. The Court cannot think of a more narrowly worded request. Second, Defendants have also offered to take any reasonable steps, such as stipulating to a protective order or submitting the records for an *in camera* review, to safeguard Mrs. Kirk's medical records. Defense counsel are officers of the court, and the Court sees no reason to question their word. Consequently, the Court finds the subpoena protects Mrs. Kirk's privacy as much as possible while still allowing Defendants to investigate Plaintiff's family medical history.

**Conclusion**

Because Defendants' subpoena *duces tecum* meets the standard set out under Missouri law to subpoena a third-party's medical records, Movants' motion (Doc. 34) is DENIED.

**IT IS SO ORDERED.**

Date:   June 20, 2014                           /s/ Greg Kays
                                                        GREG KAYS, CHIEF JUDGE
                                                        UNITED STATES DISTRICT COURT