IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| JODELLE L. KIRK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13-cv-5032-DGK |
| | ) | |
| SCHAEFFLER GROUP USA, INC., | ) | |
| FAG HOLDING, LLC, and | ) | |
| FAG BEARINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER PARTIALLY GRANTING PLAINTIFF'S MOTION ON COLLATERAL ESTOPPEL

This case arises from Plaintiff Jodelle Kirk's allegation that Defendants are liable for negligently or intentionally introducing trichloroethylene ("TCE") into the environment near her childhood home, contaminating the groundwater and causing her to develop a variety of serious illnesses.

Now before the Court is Plaintiff's Motion for a Determination that Offensive, Non-Mutual Collateral Estoppel Applies to Bar Defendant from Re-Litigating Certain Issues (Doc. 40). Plaintiff contends that because other courts have repeatedly held a predecessor company arguably related to Defendants liable for this contamination, collateral estoppel prevents Defendants from contesting certain allegations in this case.

For the following reasons, the motion is GRANTED IN PART.

**Standard**

Collateral estoppel, or issue preclusion, is a legal doctrine which precludes the same parties from relitigating issues which have been previously adjudicated between them. *Oates v. Safeco Ins. Co. of Am.*, 583 S.W.2d 713, 719 (Mo. 1979). The purpose of the doctrine is to "'to

promote judicial economy and finality in litigation.'" *Allstate Ins. Co. v. Blount*, 491 F.3d 903, 909 (8th Cir. 2007) (quoting *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 758 (8th Cir. 2003)).

Collateral estoppel is an issue of substantive law which requires a federal court sitting in a diversity action to apply the forum state's law on collateral estoppel. *Richardson v. Phillips Petroleum Co.*, 791 F.2d 641, 643 (8th Cir. 1986). "This rule applies [even] when the original judgment is that of another federal court sitting in diversity." *Follette v. Wal-Mart Stores, Inc.*, 41 F.3d 1234, 1237 (8th Cir. 1994). Thus, the Court applies Missouri's collateral estoppel law to this motion.

Historically, Missouri courts applied the doctrine only when all the parties were part of the previous action. In 1979, the Missouri Supreme Court extended the doctrine to cases in which a stranger to the prior suit asserted collateral estoppel against a party to a prior suit. *Oates*, 583 S.W.2d at 719. Applying the doctrine in this way is known as non-mutual collateral estoppel, referring to the fact that at least one of the prior parties was not involved in the prior litigation. A plaintiff may invoke the doctrine against a defendant even "where the plaintiff was not a party to the earlier judgment." *In re Caranchini*, 956 S.W.2d 910, 912 (Mo. 1997). This is called offensive non-mutual collateral estoppel. *Id.*

In determining whether offensive non-mutual collateral estoppel applies under Missouri law, a court considers: (1) whether the issue decided in the prior case is identical to the issue presented in the present action; (2) whether the prior case ended with a judgment on the merits; (3) whether the defendant was a party, or in privity with a party, to the prior case; and (4) whether the defendant had a full and fair opportunity to litigate the issue in the prior case. *James v. Paul*, 49 S.W.3d 678, 682 (Mo. 2001). Each case is analyzed on its own facts, and the court should not apply the doctrine where doing so would be inequitable. *Id.*

**Background**

FAG Bearings Corporation ("FAG"), a Delaware corporation, operated a ball bearing manufacturing plant in Joplin, Missouri. From approximately 1975 through 1981, this plant used the volatile organic chemical TCE in its operations as a vapor degreaser. The Village of Silver Creek, Missouri ("Silver Creek") is one of several residential areas located downhill from this plant. Plaintiff alleges that TCE released from the plant made its way into "the water supply of her childhood residence" in Silver Creek, and subsequently caused her to develop autoimmune hepatitis, steroid-induced diabetes, Barrett's esophagus, and precancerous cells on her cervix. Plaintiff is suing under theories of strict liability (Count I), negligence (Count II), and negligence per se (Count III).

FAG no longer operates under its original name. On January 6, 2005, it was converted into Defendant FAG Bearings LLC ("FAG Bearings") pursuant to Del. Code Ann. tit. 8, § 266. Since this date, FAG Bearings has been wholly owned by Defendant Schaeffler Group USA, Inc. ("Schaeffler"). Prior to 2005, Schaeffler did not have an ownership interest in either FAG or FAG Bearings.

Defendant FAG Holding, LLC ("FAG Holding") was formed on January 6, 2005, when FAG Holding Corporation converted into FAG Holding. FAG Holding has been wholly owned by Schaeffler since at least this date. FAG Holdings and FAG Bearings appear to be sister corporations who are owned by the same entity, Schaeffler.[1]

The Defendants in this case are FAG Bearings, Schaeffler, and FAG Holding.

**Prior Litigation**

---

[1] Despite being the object of supplemental briefing, *see* Order Directing Supplemental Briefing (Doc. 71), the record contains little information about FAG Holding.

FAG's release of TCE into the groundwater from the Joplin manufacturing plant has been repeatedly litigated and is well-settled. The four cases that ended with a judgment on the merits are discussed below.

1. **FAG Bearings Corp. v. Gulf States Paper Co., et. al.** In this case, FAG sued other manufacturers in the area around its plant claiming they caused or contributed to the contamination found on FAG's property and in certain residential drinking water wells in Silver Creek and in the Village of Saginaw, Missouri. *FAG Bearings Corp. v. Gulf States Paper Co.*, No. 95-5081-CV-SW-8, 1998 WL 919115, at *1–2, 39 (W.D. Mo. Sept. 30, 1998). FAG asserted claims against the defendants for contribution under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), and for nuisance, trespass, and strict liability. *Id.* at *2. Two of these manufacturers counterclaimed against FAG. *Id.*

After a three-week bench trial, the court, the late Honorable Judge Joseph Stevens, Jr., ruled against FAG. Judge Stevens' decision made extensive factual findings. Relevant to the present case, he found:

> * FAG released TCE into the environment in a number of different ways. Because of periodic malfunctions in the plant's vapor recovery system, some TCE was released into the atmosphere as fugitive air emissions. *Id.* at *4.
>
> * FAG released approximately 12,000 to 25,000 gallons of TCE through waste, spills, leaks, overflowing tanks, incidental use of TCE, and dumping of "still bottoms" into the ground at FAG's facility. *Id.* at *4-5.
>
> * During investigations at FAG's facility from 1991 to 1996, "TCE or TCE-related chemicals were detected in at least 36 different locations across the FAG facility." *Id.* at *11.
>
> * FAG's employees occasionally dumped or pumped TCE directly into the ground. The highest levels of TCE contamination were found at or near these locations. *Id.* at *12.

4

> \* The "trail," or plume, of contamination runs directly from these locations to residential wells located south of FAG's property. *Id.*
>
> \* FAG was "100%" responsible for the TCE contamination in Silver Creek, Saginaw, and on FAG's property. *Id.* at *24, 31–32, 41.
>
> \* FAG "totally refused to cooperate in investigation and remediation" of the TCE contamination. *Id.* at *41.

Judge Stevens did not, however, determine the extent of the TCE contamination. He held:

> FAG has released substantial quantities of TCE onto its property. TCE and TCE-related chemicals existing on FAG's property are attributable to FAG's release. FAG may also be the source of other chemicals existing on its property and in the Villages [Silver Creek]. However, the extent of FAG's release and of the contamination existing at its property and in the Villages, while shown to be extensive, has not been fully defined.

*Id.* at *14.

    2. **Shannon Lewis v. FAG Bearings Corp.** Shannon Lewis ("Lewis"), a Silver Creek resident until 1989, sued FAG for personal injuries sustained from her exposure to TCE, which included "brain damage, cognitive defects, personality changes, fatigue, muscle aches, headaches, malaise, and upper respiratory problems." *Lewis v. FAG Bearings Corp.*, 5 S.W.3d 579, 581 (Mo. Ct. App. 1999). During the trial, Lewis presented evidence that from 1970 to 1982, "TCE was dumped or leaked into pits, lagoons, and onto the ground at Defendant's facility. The land sloped to the south from Defendant's facilities, in the direction of the Village of Silver Creek." *Id.* at 582. *Lewis* also presented evidence of a Missouri Department of Natural Resources ("MDNR") investigation that revealed high concentrations of TCE leaking from FAG's facility in 1991. *Id.* This discovery forced the federal Environmental Protection Agency to provide bottled water to the citizens of Silver Creek. *Id.* "The MDNR eventually concluded

5

that Defendant [FAG] was the primary, if not the sole, source for the TCE contamination, and that it could not account for approximately 30,000 gallons of the chemical which it had purchased over the years." *Id.*

A jury found for Lewis and awarded her $716,000 in compensatory damages and $1,250,000 in punitive damages. *Id.* at 580-81. The trial court entered judgment notwithstanding the verdict on the issue of punitive damages. The Missouri Court of Appeals affirmed both the jury's compensatory damages award and the trial court's decision to vacate the punitive damages award. *Id.* at 588. The Court of Appeals held the evidence presented in the case was sufficient to demonstrate that exposure to TCE caused Lewis's injuries. *Id.* at 586.

3. **Liberty Mutual Insurance Co. v. FAG Bearings Corp. ("Liberty Mutual I").**
FAG's general liability insurer subsequently brought a declaratory judgment action seeking a determination that it owed no duty to defend or indemnify the corporation in the underlying personal injury and property damages lawsuits and administrative proceedings. *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, No. 94-0241-CV-W-8, slip op. at 1 (W.D. Mo. May 14, 1996) ("Liberty Mutual I").

In resolving these claims, the court construed the policy's pollution clause which excluded coverage for all but "sudden and accidental" releases or escapes of pollutants. *Id.* at 8. The court held that FAG's releases of TCE were not "sudden and accidental" within the meaning of the insurance policy. *Id.* at 9-10. Rather, it found

> [FAG]'s AMEG vapor recovery system [used to recapture the TCE used in Defendant's degreasing system] frequently and repeatedly malfunctioned, releasing large amounts of TCE into the air over a long period of time. The only evidence presented indicates that this continued to occur as long as the 'closed loop' system was in operation, that is, from at least 1973 to 1981 or 1982. FAG's employees and its expert opine that these vapors condensed and returned to the soil on FAG's property, and there is no evidence

6

> that FAG released TCE in any other manner. The releases in this case were, therefore, long-term and gradual. They were not 'sudden' as defined in *General Dynamics*[2] and its progeny.
>
> Moreover, the releases were predictable and foreseeable. FAG was aware early on that the malfunctions which allowed TCE to escape occurred regularly and repeatedly. While FAG repaired the system frequently, it apparently did not take appropriate steps to prevent the systems from malfunctioning or operating. In this sense, FAG's actions were deliberate, and the releases were 'expected.' The releases were not 'accidental.'

*Id.*

The Eighth Circuit affirmed the district court's decision. *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919 (8th Cir. 1998) ("Liberty Mutual II"). With respect to whether the releases were accidental, the Eight Circuit noted, "[a]lthough, FAG may not have intended that such pollution occur, the district court correctly concluded that FAG did not do enough to stop the continuous recurrence of malfunction so as to prevent future releases of TCE. Because FAG was aware of the recurring malfunction, we agree that the TCE releases were not accidental." *Id.* at 923.

4. **Liberty Mutual Insurance Co. v. FAG Bearings Corp. ("Liberty Mutual III").** The insurer subsequently brought another action seeking a declaration that it was not obligated to provide coverage for two new lawsuits or for costs incurred in responding to EPA inquiries and a resulting consent decree. *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, No. 99-5017-CV-SW-3, 2001 WL 34118390, at *3 (W.D. Mo. May 21, 2001) ("Liberty Mutual III"). The district court applied collateral estoppel against FAG on the issue of indemnification under the policy's same "sudden and accidental" exclusion. *Id.* at *6. In response to FAG's attempt to present evidence

---

[2] The district court is referring to *Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp.*, 968 F.2d 707 (8th Cir. 1992), which discusses what 'sudden and accidental' means in an identical pollution exclusion clause.

of other sources of TCE contamination, the court held FAG was precluded from relitigating the issue or presenting different evidence about how the TCE releases occurred. *Id.* at *7.

The Eighth Circuit affirmed, finding the district court correctly applied collateral estoppel. *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 765 (8th Cir. 2003).

## Discussion

In its motion and suggestions in support Plaintiff moves to preclude Defendants from litigating the following four issues:

1. Whether the groundwater at Silver Creek has been contaminated with TCE.

2. Whether the contaminated groundwater at Silver Creek is sufficient to cause health problems.

3. Whether Defendant [FAG Holdings][3] actions are the sole cause of the contamination.

4. Whether Defendant [FAG Holdings] acted deliberately in causing this contamination.

Applying the four-factor test for offensive non-mutual collateral estoppel, there is no dispute that the four cases described above were adjudicated on their merits. The parties dispute the remaining three prongs: whether the Defendants were a party (or in privity with a party) in the prior litigation; whether the issues decided in the prior cases are identical to the issues presented in this case; and whether the Defendants had a full and fair opportunity in the prior lawsuits to litigate these issues. The Court considers each of these factors below.

---

[3] In the motion and suggestions in support, Plaintiff uses different shorthand names for the various FAG entities than the Court uses in this order. For consistency, the Court has replaced Plaintiff's abbreviations with its own. These replacements are indicated with brackets.

**A.     FAG Bearings is the same entity as FAG and so was a party to the prior litigation, but FAG was not in privity with Schaeffler or FAG Holdings.**

Under Missouri law, "[w]hether parties are in privity for collateral estoppel purposes depends mostly on their relationship to the subject matter of the litigation." *Moore v. Swayne-Hunter Farms, Inc.*, 841 S.W.2d 308, 315 (Mo. Ct. App. 1992). "Privity exists where the party in the second case has interests that are so closely aligned to the party in the earlier litigation that the non-party can be fairly said to have had his or her day in court." *Kinsky v. 154 Land Co., LLC*, 371 S.W.3d 108, 113 (Mo. Ct. App. 2012) (holding an attorney was in privity with the party he represented in the prior action).

**1. FAG Bearings is the same entity as FAG and so a party to the prior litigation.**

Defendant FAG Bearings was formed on January 6, 2005, when FAG was converted from a Delaware corporation into a Delaware limited liability company. Under Delaware law in effect at that time, this conversion did not "affect any obligations or liabilities of the corporation incurred prior to such conversion." Del. Code Ann. tit. 8, § 266(d) (2004); *In re Estate of Upjohn*, No. 278668, 2010 WL 624413, at *7 (Mich. Ct. App. Feb. 23, 2010) (interpreting the statute and holding a corporation undergoing the conversion did not cease to exist). Although the statute contains language stating that after the conversion "the corporation shall cease to exist as a corporation of this State," Del. Code Ann. tit. 8, § 266(c), the statute also makes clear that after the conversion "the corporation shall continue to exist as a limited liability company." *Id.* § 266(e); *Upjohn*, 2010 WL 624413, at *7. The statute expressly provides that, "the conversion shall not constitute a dissolution of such corporation and shall constitute a continuation of the existence of the converting corporation in the form of the applicable other entity." *Id.* § 266(f). Applying this law to the present case, the Court holds that when FAG changed its name and

corporate form in 2005 it did not cease to exist or shed its liability for the contamination at Silver Creek.[4]  *Id.* § 266(d); *Upjohn*, 2010 WL 624413, at *7.

Accordingly, the Court holds FAG Bearings was not just in privity with FAG—it is the same entity.  Hence, FAG Bearings was a party to the prior litigation.  To reflect this holding, the Court will refer to this entity as FAG/FAG Bearings for the remainder of this order.

### 2. Plaintiff has not demonstrated Defendants Schaeffler or FAG Holdings were in privity with FAG/FAG Bearings.

Neither of the other Defendants, however, were parties to the previous litigation or in privity with FAG/FAG Bearings.  The existing record demonstrates that Schaeffler had no ownership interest in FAG or FAG Bearings until 2005, and that FAG Holdings relationship to FAG/FAG Bearings is only that of a sister corporation.  That is, Schaeffler owns both FAG/FAG Bearings and FAG Holdings.

Plaintiff's argument that deposition testimony from Defendants' corporate representative establishes that both Schaeffler and FAG Holdings have "assumed responsibility" for FAG/FAG Bearings' liabilities is unpersuasive.  Plaintiff cites as proof the following exchange concerning an exhibit, a 2007 Natural Resources Damages Consent Degree signed by FAG Bearings accepting responsibility under CERCLA for the environmental clean-up in Newton County:

> Q:       Okay.  And it's your understanding that the Schaeffler Group, through its subsidiary, [FAG/FAG Bearings], is responsible for the cleanup of this site and all liabilities attached thereto?
>
> [Defense counsel]:   Objection, calls for a legal conclusion.  You can answer if you're able.
>
> A:       That's my understanding, yes.

---

[4] Defendants' argument that as a matter of law FAG Bearings does not carry FAG's liabilities is without basis.

When read in context of the entire deposition, this testimony establishes only that Defendants agree that Schaeffler's subsidiary, FAG/FAG Bearings, is responsible for cleanup of the TCE contamination and the liabilities attached thereto. This testimony is not enough to establish that Schaeffler was in privity with FAG/FAG Bearings for collateral estoppel purposes, much less that FAG Holdings (which is not even mentioned in this portion of the deposition transcript), was in privity with FAG/FAG Bearings. Accordingly, collateral estoppel does not apply to these Defendants.

**B.      Some of the issues in the prior cases are identical to those presented in this case.**

The Court now turns to the second prong in the analysis, whether the issues decided in the prior cases are identical to the issues presented in this case. In applying the doctrine of collateral estoppel, Missouri generally follows the approach of the Restatement (Second) of Judgments ("the Restatement"). *See Kinsky*, 371 S.W.3d at 113 (citing the Restatement's test for determining whether parties are in privity). The Restatement notes several questions that a court should consider in determining whether an issue in two proceedings is identical. Restatement of Judgments § 27 cmt. c (1982). The question most relevant to this case is: Is there substantial overlap between the evidence or argument presented in both proceedings? *Id.*

   **1. Prior cases established the groundwater has been contaminated with TCE. They
      did not determine the extent of the contamination.**

With respect to the first issue Plaintiff seeks to preclude Defendants from litigating—whether the groundwater at Silver Creek has been contaminated—the dispute here concerns how to word what was previously litigated. The parties agree that at least *some* of the groundwater at

11

Silver Creek has been contaminated with TCE.[5]  The question is, to what extent has the groundwater been contaminated?

In 1998, Judge Stevens found that FAG "extensively" contaminated the groundwater in Silver Creek, Saginaw, and on FAG's property.  *Gulf States Paper Co.*, 1998 WL 919115, at *14.  However, he specifically declined to define the extent of this contamination, leaving that question for another day.  *Id.*; *see Liberty Mutual III*, 2001 WL 34118390, at *6 (noting Judge Stevens' decision was not intended to determine liability in other personal injury lawsuits that had not yet been filed).  His order did not address whether the Plaintiff in this case might have been exposed to groundwater contaminated with TCE, or what her level of exposure might have been.[6]

Consistent with Judge Stevens' ruling, the Court holds the previous litigation determined that the groundwater in Silver Creek has been "extensively" contaminated with TCE.  This, of course, leaves open important questions in this case such as the extent of the contamination and whether Plaintiff was exposed to any contaminated groundwater.

> **2. While prior cases established that contaminated groundwater at Silver Creek is sufficient to cause "health problems" generally, the relevant question is whether this contamination caused Plaintiff's illnesses.**

The second issue is whether the contaminated groundwater at Silver Creek is sufficient to cause "health problems."  Although *Lewis* established that TCE can cause some "health problems," whether TCE can cause health problems is not a particularly relevant issue in this case.  The question here is whether the groundwater contamination at Silver Creek caused *Plaintiff's* health problems, an issue that was not argued in the *Lewis* case.  The health problems

---

[5] Indeed, Defendants state they "acknowledge that TCE has been detected in *some* parts of Silver Creek."  Defs.' Opp'n (Doc. 48) at 5 (emphasis in original).

[6] Judge Stevens could not have addressed these issues because he released his decision fifteen years before Plaintiff even filed suit.

12
Case 3:13-cv-05032-DGK   Document 131   Filed 01/20/15   Page 12 of 17

Shannon Lewis suffered from, namely "brain damage, cognitive defects, personality changes, fatigue, muscle aches, headaches, malaise, and upper respiratory problems," *Lewis*, 5 S.W.3d at 581, are completely different from the health problems Plaintiff suffers from—autoimmune hepatitis, steroid-induced diabetes, Barrett's esophagus, and precancerous cells on her cervix. Although *Lewis* established that TCE can cause the former;[7] it did not establish that TCE can cause, much less actually caused, the latter.

Whether contaminated groundwater can cause generic "health problems" is of little relevance. Plaintiff must show that her exposure to groundwater contaminated with TCE caused her illnesses (Doc. 19).

### 3. Prior cases found FAG/FAG Bearings, not FAG Holdings, was the sole cause of the contamination.

The third issue is whether FAG Holdings was the sole source of this contamination.

The record shows that FAG/FAG Bearings caused and is solely responsible for any TCE contamination of Silver Creek's groundwater. Defendants acknowledge as much. Defendants:

> have no intention of re-litigating whether the parties other than FAG Bearings Corp[oration] are responsible for the contamination, as the court in Gulf States addressed and resolved that issue in 1998. Thus, to the extent there was TCE in some of the Silver Creek groundwater as of September 30, 1998 (the date of the Gulf States order), Defendants do not dispute that FAG Bearings Corp[oration] caused the contamination.

---

[7] Strictly speaking, the *Lewis* verdict established only that TCE can cause at least one of these health problems. The issues in *Lewis* were tried to a jury and there is no mention of a special verdict. Thus, the Court does not know whether the jury found that exposure to TCE caused all of Lewis's health problems or just some of them. The exact answer does not matter to this case because none of Lewis's health problems are identical to Plaintiff's health problems. Thus, even if the jury found TCE caused all of Lewis's health problems, it would not establish that TCE caused any of Plaintiff's health problems.

Defs.' Opp'n (Doc. 48) at 10.  The Court also notes there is no evidence in the record indicating FAG Holdings is responsible for any contamination.[8]  Thus FAG/FAG Bearings may not contest that it was the sole cause of TCE contamination in Silver Creek's groundwater.

Plaintiff has not shown that FAG Holdings is in privity with FAG/FAG Bearings, thus FAG Holdings is not estopped from denying it was the cause of any contamination.  That said, the Court recognizes that this holding may be irrelevant in light of Defendants' concession—and the Court's holding—that Defendant FAG/FAG Bearings is the sole cause of the contamination.

>    **4. Prior cases found FAG/FAG Bearings acted "deliberately" in causing the contamination in the sense that the contamination was not accidental, but did not litigate whether FAG Holdings acted deliberately.**

Finally, the Court turns to whether Defendant FAG Holdings acted "deliberately" in causing the contamination.  As a threshold matter, the Court rejects Defendants' suggestion that it is irrelevant whether and Defendants release of TCE was deliberate or not.  As Defendants acknowledge, Plaintiff's claim for punitive damages on her negligence claim requires her to show that Defendants "knew or had reason to know a high degree of probability existed that the action would result in injury." *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 164 (Mo. Ct. App. 1997).  And Plaintiff's claim for strict liability requires her to present evidence that "the defendant showed a complete indifference to or conscious disregard for the safety of others." *Id.* at 165.  Obviously, if FAG/FAG Bearings knew TCE was dangerous and yet released it into the environment in a number of different ways, including—as Judge Stevens found—by dumping it into the ground, then its behavior is highly probative of whether it had reason to know that its

---

[8] Plaintiff's argument that FAG Holdings is responsible for the TCE contamination appears to stem from confusion about FAG/FAG Bearings's relationship to FAG Holdings and the Defendants' relationship to each other, a likely consequence of Plaintiff's limited discovery on this topic.  *See* Order Denying Motion to Extend Discovery Deadline (Doc. 70) at 2 ("Although discovery was open for more than ten months, Plaintiff failed to serve any written discovery on Defendants until April 3, 2014, the day before the deadline to complete discovery expired.")

actions would result in injury. It would also evidence an indifference to, or a conscious disregard for, the safety of others. Hence, this is a relevant issue.

As to whether FAG Holdings acted "deliberately," the Court holds prior cases clearly established that FAG/FAG Bearings acted "deliberately" in causing the contamination in the sense that its releases of TCE were "predictable and foreseeable," thus "expected" and "not accidental." *Liberty Mutual I*, slip op. at 9-10; *Liberty Mutual II*, 153 F.3d at 923. The prior cases did not litigate whether FAG Holdings acted deliberately in causing the contamination, so it is not estopped from litigating this issue.

Again, the Court recognizes that this holding may be irrelevant in light of its holding above that Defendant FAG/FAG Bearings is the sole cause of the contamination. Obviously, if FAG/FAG Bearings is the sole source of contamination, FAG Holdings could not have caused any contamination, deliberate or otherwise.

## C. FAG/FAG Bearings, but not FAG Holdings, had a full and fair opportunity to litigate the four specific issues on which Plaintiff seeks preclusion.

The Court now turns to the third contested prong of the analysis, whether Defendants had a full and fair opportunity to litigate the issues in the prior cases. A party has a full and fair opportunity to litigate the issues if it received due process in the prior proceeding. *In re Carey*, 89 S.W.3d 477, 498-99 (Mo. 2002).

Plaintiff has moved to preclude litigation of the following four propositions:

1. The groundwater at Silver Creek has been contaminated with TCE.

2. The contaminated groundwater at Silver Creek is sufficient to cause health problems.

3. Defendant [FAG Holdings'] actions are the sole cause of the contamination.

4. Defendant [FAG Holdings] acted deliberately in causing this contamination.

Defendants argue that they have not had a full and fair opportunity to litigate the precise issues for which Plaintiff seeks preclusion. For example, Defendants contend that by arguing that "the groundwater at Silver Creek has been contaminated with TCE," Plaintiff is really attempting to preclude Defendants from denying that "*all* of the groundwater in the *entirety* of Silver Creek has been contaminated with TCE." Defs.' Opp'n (Doc. 48) at 8 (emphasis in original). Defendants contend this is unfair, so the Court should find that Defendants did not have a full and fair opportunity to litigate these issues. Defendants also note that they could not address in the prior litigation the key issues in this case, namely the specifics related to Plaintiff's exposure to TCE.

While Defendants' arguments go more to whether the issues decided in the prior cases are identical to the issues presented in this case, they are well-taken. The Court recognizes that "the groundwater at Silver Creek has been contaminated with TCE" does not mean that *all* of the groundwater in the *entirety* of Silver Creek has been contaminated. The Court also recognizes that prior cases did not address related key issues in this case such as: whether Plaintiff's residential water supply was contaminated with TCE; whether Plaintiff was actually exposed to TCE; whether TCE can cause the illnesses Plaintiff suffers from; and whether TCE is, in fact, the cause of Plaintiff's illnesses.

That said, as to whether Defendants had a full and fair opportunity to litigate these issues in the prior cases (that is, whether they received due process in the prior proceedings), the Court holds as follows: FAG/FAG Bearings received due process in the prior litigation and so had a full and opportunity to litigate the four issues on which Plaintiff seeks preclusion. On the other hand, FAG Holdings, which was not a party to the previous litigation (and has not been shown to be in privity with FAG/FAG Bearings) did not have any opportunity, much less a full and fair

opportunity, to litigate these issues. Hence FAG Holdings is not estopped from litigating these four issues with respect to its own liability.

## Conclusion

For the reasons discussed in detail above, the Court GRANTS IN PART Plaintiff's motion (Doc. 40). The Court holds:

1. Defendants conceded in their briefing that there is some TCE contamination in Silver Creek and that FAG caused the contamination. The Court holds that for liability purposes, FAG is the same entity as Defendant FAG Bearings. Thus, Defendants may not contest that some groundwater at Silver Creek has been contaminated with TCE and that FAG/FAG Bearings is the sole cause of that contamination. Defendants may, of course, litigate the extent of the contamination and related questions related to Plaintiff's level of exposure.

2. Whether the contaminated groundwater at Silver Creek is sufficient to cause generic, unspecified "health problems" is irrelevant. Plaintiff must show that exposure to groundwater contaminated with TCE caused her specific illnesses.

3. Because Defendant FAG Holdings is not in privity with FAG/FAG Bearings and did not have an opportunity to litigate this issue, it is not estopped from arguing its actions are the sole cause of the contamination.

4. Because Defendant FAG Holdings is not in privity with FAG/FAG Bearings and did not have an opportunity to litigate this issue, Defendant FAG Holdings is not estopped from arguing that it did not act deliberately in causing any contamination.

**IT IS SO ORDERED.**

Date: January 20, 2015          /s/ Greg Kays
                                GREG KAYS, CHIEF JUDGE
                                UNITED STATES DISTRICT COURT