**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| JODELLE L. KIRK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13-cv-5032-DGK |
| | ) | |
| SCHAEFFLER GROUP USA, INC., | ) | |
| FAG HOLDING, LLC, and | ) | |
| FAG BEARINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART MOTION FOR SANCTIONS UNDER RULE 37(C)

This case arises from Defendants' release of trichloroethylene ("TCE") into the environment near Plaintiff Jodelle Kirk's childhood home. Plaintiff alleges she was exposed to the TCE and that it caused her to develop serious illnesses.

Now before the Court is Defendants' Motion for Sanctions (Doc. 85). Defendants argue that Plaintiff has attempted to change her theory of exposure and liability after the close of discovery. They ask that Plaintiff be precluded from introducing any evidence that she was exposed to TCE anywhere but through the water supply at her childhood home, and move the Court to award them their attorneys' fees and expenses incurred in bringing this motion.

Finding that Plaintiff failed to properly disclose all of theories of exposure and liability during discovery, the Court GRANTS IN PART the motion. Discovery shall be re-opened for the sole purpose of allowing Defendants to conduct additional discovery into the evidence disclosed in Plaintiff's affidavit and/or Plaintiff's additional theories of TCE exposure. Plaintiff's counsel shall reimburse Defendants one-third of the reasonable costs and expenses

incurred as a result of the violation and Defendants' reasonable attorneys' fees and expenses incurred in bringing this motion.

## Background

The Defendants in this case are FAG Bearings, LLC ("FAG Bearings"), Schaeffler Group USA, Inc. ("Schaeffler"), and FAG Holding, LLC ("FAG Holding"). Schaeffler owns FAG Bearings which, while operating under the name FAG Bearings Corporation, owned a ball bearing manufacturing plant in Joplin, Missouri. From approximately 1975 through 1981, the FAG Bearings plant used TCE in its operations as a vapor degreaser and released TCE into the environment.

Located downhill from this plant is the Village of Silver Creek ("Silver Creek"), which is located in Newton County, Missouri. Plaintiff was born and raised in Silver Creek.

The Court previously ruled that Defendant FAG Bearings is estopped from denying that TCE released from FAG Bearings' plant contaminated at least some of the groundwater[1] in Silver Creek, and that its plant was the sole source of this contamination. Plaintiff is suing Defendants under theories of strict liability (Count I), negligence (Count II), and negligence per se (Count III).

### The Complaint

The First Amended Complaint ("the Complaint") alleges Plaintiff was injured "as a result of the exposure to TCE and other chemicals released from FAG's property." First Am. Compl. (Doc. 14-1) at ¶¶ 35, 41, 55. She claims she was exposed to TCE via "the water supply," "the ground water," and "well water" at her childhood residence. *Id.* at ¶¶ 9-10, 17, 24, 27, 38(h), 45,

---

[1] The parties appear to agree that "groundwater" means all water beneath the surface.

52.[2]  The exposure caused her to develop autoimmune hepatitis, steroid-induced diabetes, Barrett's esophagus, and precancerous cells on her cervix.  *Id.* at ¶¶ 9, 20-24.  The Complaint is silent with respect to precisely how Plaintiff was exposed (e.g., by eating it, drinking it, absorbing it through her skin, etc.) and does not allege she was exposed at any other location than her childhood home.  Although two paragraphs in the Complaint mention contamination of the ground and groundwater around and adjacent to her family's property, the Complaint does not allege that such ground and groundwater were somehow pathways for Plaintiff's exposure. *Id.* at ¶¶ 24, 38(h).  For example, the Complaint does not allege that Plaintiff was exposed to TCE by inhaling it as water vapor emanating from nearby contaminated properties.

### Plaintiff's Rule 26 Disclosures

Plaintiff's initial Rule 26 Disclosures identified the following individuals and entities as having discoverable information relevant to her claims:  Plaintiff; Plaintiff's "family and friends," but it specifically mentions only her mother; eighteen medical providers; "employees or former employees of Defendants;" "all Defendants;" and all individuals identified by Defendants.  Pl.'s Rule 26 Disclosures (Doc. 86-3) at 2-5.[3]  The initial disclosures also limited the testimony of Plaintiff's family and friends to the topic of "the *impact* of Ms. Kirk's

---

[2]  ¶ 9 ("Jodelle Kirk was first informed that her Autoimmune Hepatitis was caused by her exposure to trichloroethylene in the water supply of her childhood residence in June, 2012."); ¶ 10 (Plaintiff did not "personally ascertain that the cause of her illness might be connected to her childhood home's water supply" until June, 2012); ¶ 17 ("Plaintiff's family was told in 1992 that no TCE was detected on their property or in their well, so there was no reason to seek an alternate water supply."); ¶ 24 ("Plaintiff [has been injured] due to the illnesses caused by the Defendant negligently introducing TCE into the real property and ground water around Plaintiff's childhood home.") ¶ 27 ("Defendants . . . allowed the escape and release of TCE from FAG's premises into the ground water and onto Plaintiff's property."); ¶ 38(h) ("Defendants negligently failed to warn property owners of the contamination of the ground and water in and around and through adjoining property including Plaintiff's."); ¶ 45 ("Defendants . . . breached their duty when they allowed TCE to migrate into the ground water and into Plaintiff's property."); ¶ 52 ("Defendants . . . [knew that Plaintiff would be harmed from TCE] migrating from Defendant FAG's property into the groundwater and Plaintiff's well water.").

[3] All references to page numbers refer to the page number in the original document, not the document as paginated by the ECF document system.  Similarly, references to paragraph numbers refer to the paragraph number in the original document.

Autoimmune Hepatitis on her everyday life." *Id.* at 2 (emphasis added). Plaintiff did not identify any witnesses as providing testimony concerning how she was exposed to TCE. Plaintiff did not disclose any witnesses that would testify about where she swam, played, or otherwise spent her time while growing up. She has never filed supplements to these initial disclosures.

**Plaintiff's Responses to Defendants' First Interrogatories**

In her responses to Defendants' First Interrogatories, Plaintiff provided the following information relevant to the pending motion. Defendants' Interrogatory Number 2 asked Plaintiff to "[i]dentify all facts upon which you base your allegation that trichloroethylene ('TCE') existed in, or was found in, or otherwise contaminated 'the water supply of your childhood residence,' as alleged in paragraph 9 of your Petition." Pl.'s Answers to Defendant Schaeffler Group USA, Inc.'s First Interrogs. (Doc. 103-1) at 5. Plaintiff began her answer by objecting that it was an improper and premature contention interrogatory. She then stated that based upon her limited investigation, the facts supporting this allegation included, but were not limited to, those found in: (1) a health investigation conducted by the Environmental Protection Agency ("EPA");[4] (2) a health investigation conducted by the Missouri Department of Public Health; (3) a health investigation conducted by the United States Agency for Toxic Substances and Disease Registry ("ATSDR"); and (4) the report of Dr. Allen Parmet, M.D. *Id.* Defendants' Interrogatory Number 3 asked Plaintiff, "Identify all facts upon which you base your allegation that you were exposed to TCE *at any time or place*, including but not limited to your allegation . . . that you were exposed to TCE in the water supply of your childhood residence." *Id.* (emphasis added). Plaintiff answered, "See Answer to Interrogatory No. 2." *Id.*

---

[4] By "health investigation conducted by the Environmental Protection Agency," Plaintiff was apparently referring to a document titled "EPA Superfund Record of Decision: Newton County Wells" dated September 30, 2004.

The reports from the agency investigations mentioned in Plaintiff's answer focus on the scope of TCE contamination in Newton County generally, but they briefly mention different ways an individual could be exposed. A short section of the EPA report states:

> As shown in the conceptual site model . . . the following pathways for current and future receptors were considered. Reasonable exposure scenarios were developed based on how the Site is currently used and assumptions about its future use. These scenarios included:
>
> - Ingestion, dermal contact, and inhalation of groundwater contaminants for domestic usage (washing, bathing, laundry, etc.) for potential area residents and as a potable drinking water supply for potential area residents and onsite occupational workers;
>
> - Ingestion and dermal contact with contaminated soils for current and future onsite workers, visitors and trespassers;
>
> - Inhalation of airborne contaminants in outdoor air for current onsite workers, visitors and trespassers; and
>
> - Ingestion and dermal contact from spring water for current residential and recreational users.

EPA Superfund Record of Decision (Doc. 103-2) at 7. This section comprises about one-half page in the 103-page report.[5] The report does not discuss any particular individual's exposure.

Similarly, a short section of the report prepared by the ATSDR in conjunction with the Missouri Department of Public Health ("MDPH") contains the following statement:

> Completed exposure pathways exist at the Newton County TCE site. The source of the contamination is believed to be past releases and improper disposal of trichloroethylene (TCE) at the FAG Bearings facility. The environmental media is contaminated

---

[5] The report also includes a six-page response section in which FAG Bearings makes numerous comments about the report, and the EPA responds to these comments. *Id.* at 90-96. Judging from the detailed comments, it appears FAG Bearings carefully reviewed this report and was aware of its contents.

> with groundwater. The point of exposure is at residences that have
> contaminated wells or at locations where contaminated surface
> water is found (springs). The routes of exposure include ingestion,
> inhalation, and skin contact. The exposed populations are people
> using contaminated well water and anyone who comes in contact
> with contaminated surface water . . . In the past, an exposure
> pathway was completed when residents used contaminated private
> wells as their sole source of water.

Public Health Assessment for Newton County Wells (a/k/a Silver Creek TCE) (Doc. 103-3) at 6.
The report also states that, "TCE exposure through inhalation, ingestion, and skin contact has
occurred" for residents using contaminated water. *Id.* at 7. Like the EPA report, this report does
not discuss any particular individual's exposure.

### Plaintiff's Deposition Answers

When Defendants asked Plaintiff at her deposition on March 12, 2014, how she believed
she was exposed to TCE, Plaintiff answered that she believed she was exposed "through the
ground water." Jodelle Kirk Dep. (Doc. 86-5) at 149. She stated she was exposed to TCE by
drinking water "or bathing, or my mother watering the garden with our vegetable, swimming.
All the normal things a 14 year-old kid does." *Id.* at 150.

When asked about where she swam and if "there [is] a swimming pool somewhere in
Silver Creek?" Plaintiff answered, "We just had a little kiddy pool in the back of our yard." *Id.*
at 151. She did not mention swimming at any other locations. When asked if she recalled the
names of any specific friends she had growing up in Silver Creek, Plaintiff testified that she had
childhood friends, but she couldn't remember any of their names. *Id.* at 12-13.

6

**Plaintiff's Affidavit Created for Drs. Everett and Wells' Expert Report**

Fact discovery closed on April 4, 2014, and Plaintiff did not communicate to Defendants before or after this date that she was amending or supplementing any of her discovery responses or deposition testimony.

On July 21, 2014, Plaintiff provided Defendants with the joint expert report of Lorne G. Everett, PhD, DSc and James T. Wells, PhD, PG. In their fourth opinion, these experts asserted that all Silver Creek residents "were exposed to FAG Bearings' toxic chemicals through a number of exposure pathways, including ingestion of contaminated water, dermal contact of contaminated well water and surface water in springs and creeks, and inhalation from volatilization[6] of TCE from well water as well as vapor intrusion." Expert Report of Lorne G. Everett, PhD., DSc and James T. Wells, PhD, PG (Doc. 86-6) at 25. In their fifth opinion, they opined "Ms. Kirk was exposed to FAG Bearings' chemicals by all three exposure pathways described above in Opinion 4. Because FAG Bearings' toxic chemicals permeated these communities, exposure was inevitable as Ms. Kirk went about her daily life." *Id.* at 28. They also stated,

> . . . Ms. Kirk's exposure to FAG Bearings' chemicals was not limited to exposure at her home. Like most people, Ms. Kirk was not cloistered in her home, she visited friends, played outside and simply lived her life across the community. Of note are her experiences at the Parrish Residence, located at 3428 Woodland Drive where Ms. Kirk played in Thurman Creek which runs through the Parrish's backyard and at the Bickett Residence, located at 3808 Duquesne Street where, among other things, she played and fished in the pond of water to the west of their house. . . Ms. Kirk also recalled spending time at the Saginaw Baptist Church, which had TCE in its well. She also described riding her bike and four-wheeling in the fields near Duquesne Road.

---

[6] "Volatilization" is the act or process of something evaporating or becoming a vapor. Webster's Third New International Dictionary 2562 (2002).

*Id.* at 28-29. The source for these assertions was an affidavit (Doc. 86-12) Plaintiff signed on July 11, 2014, four months after her deposition. Plaintiff created the affidavit for Drs. Everett and Wells, and they referenced it in a footnote to their report. Expert Report at 28 n.39.

In the affidavit, Plaintiff lists nineteen different locations where she alleges she "frequently played, swam, walked and lived my life throughout my neighborhood" while growing-up in Silver Creek and an adjacent village, Saginaw, which was also contaminated by TCE from FAG's bearing plant. Aff. at ¶ 4. Thirteen of these locations are residences identified by the family's surname and a street address. *Id.* Plaintiff states that at four of these residences she "swam in their pool" and that at another house she "would frequently play in Thurman Creek which runs through their backyard." *Id.* at ¶¶ 4a, 4b, 4d, 4f, 4k. She also states she that while attending vacation Bible school at two local churches, she "engaged in many outdoor water activities. " *Id.* at ¶¶ 4n, 4o. She also went fishing "frequently" with her father at Shoal Creek where she would "wade and swim in the water." *Id.* at ¶ 4p.

Defendants noted the reference to the affidavit while reviewing the report. On July 31, 2014, Defendants requested a copy of the affidavit. Plaintiff then provided it.

## Standard

Federal Rule of Civil Procedure 26 prescribes the parties' duty to disclose information and general provisions governing discovery. Rule 26(a) governs what disclosures each party is required to make and when. Rule 26(e) governs supplemental disclosures and responses. The latter states in relevant part,

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or

incorrect, and if the additional or corrective information has
not otherwise been made known to the other parties during
the discovery process or in writing.

Fed. R. Civ. P. 26(e)(1)(A).

Rule 37(c)(1) allows the court to sanction violations of the disclosure rules. It provides "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Court may also or instead "impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(C). Where there is a violation, the burden is on the potentially sanctioned party to prove harmlessness or justification. *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003).

In the Eighth Circuit, a district court enjoys wide discretion to fashion a remedy or sanction appropriate for the circumstances. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). In fashioning a remedy, the court considers the reason for the noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony. *Id.* The court's discretion, however, narrows as the effective severity of the sanction increases. *Id.* The Eighth Circuit has cautioned that exclusion is a harsh penalty that should be used sparingly. *Id.* Where the sanction imposed is tantamount to dismissal or would result in a one-sided trial, the court must consider whether a less drastic sanction is appropriate. *Doe v. Young*, 664 F.3d 727, 734 (8th Cir. 2011); *Wegener*, 527 F.3d at 692.

## Discussion

Defendants contend Plaintiff has changed her theory of exposure and liability after the close of discovery. They assert Plaintiff initiated this lawsuit alleging she was exposed to TCE

at her childhood home, but after the close of discovery began claiming she was exposed to TCE at nineteen other specific locations.

In response, Plaintiff argues the motion "is a model of bad faith motion practice. The Defendants' motion cannot even be considered." Resp. (Doc. 103) at 1. She argues this dispute is governed by Local Rule 37.1, and the Court cannot consider the motion because Defendants failed to meet and confer with Plaintiff before filing it. As for the merits, Plaintiff contends the Complaint "specifically alleges that Defendants contaminated the groundwater and alleges that she was exposed to TCE both on and off her property." Resp. at 2.

The Court first considers whether the local rule governing discovery disputes applies to this motion. Then, the Court determines whether Plaintiff violated the supplemental-disclosure rule, and if so, whether the violation was substantially justified or harmless. Finally, the Court assesses an appropriate sanction.

## I. Local Rule 37.1 does not apply to the pending motion.

As a threshold matter, the Court holds that Local Rule 37.1's "meet and confer" provision does not apply to this dispute. Rule 37.1 applies to disputes arising during the discovery period, not to a motion seeking sanctions under Rule 37(c)(1). It would make no sense to apply Local Rule 37.1 to Rule 37(c)(1) motions. Imposing a Local Rule 37.1 conference on a Rule 37(c)(1) motion would not accomplish anything. The harm—untimely disclosure—has already occurred and the offending party has already given over the information. The untimely disclosure is a bell that cannot be unrung. Once there has been a violation, the only issue left is whether the violation was substantially justified or harmless, and if not, what is the appropriate remedy.[7] Accordingly, the Court holds Local Rule 37.1 does not govern this dispute.

---

[7] Plaintiff's suggestion that *Lindstedt v. City of Granby*, 238 F.3d 933 (8th Cir. 2000), supports its contention that Defendants were required to meet-and-confer before filing their motion is, at best, completely incorrect. *Lindstedt*

**II.** **Plaintiff failed to provide timely supplementary disclosures required by Rule 26(e).**

Turning to the merits of Defendants' motion, the Court must decide whether Plaintiff violated any discovery rule. Defendants argue Plaintiff violated Rule 26(e) by failing to identify her vapor intrusion theory of exposure and the nineteen specific purported locations of TCE exposure until July 21, 2014, 108 days after the close of fact discovery, when Defendant could no longer conduct discovery into these claims. Plaintiff denies this, arguing that she "answered her interrogatories to the best of her ability, explaining that they would be supplemented with expert disclosures," and that Defendants "never objected or expressed any concerns that they would have to wait for expert disclosures before they got specific answers to the means of exposure." Resp. at 12. She also argues that "[t]o the extent that any of the information she gave in her discovery responses was inconsistent with the expert reports—which it wasn't—she fully complied with Rule 26(e)'s requirement to supplement discovery responses when she timely filed her expert reports."[8] *Id.*

The Court finds Plaintiff has patently violated Rule 26(e) by failing to identify her additional theories of exposure and the nineteen specific locations of exposure until well after the close of discovery. From the time Plaintiff filed the Complaint through her deposition and until well after the close of discovery, Plaintiff's sole disclosed theory of exposure was that she was exposed to TCE via the water supply, groundwater, and well water at her childhood residence. While her interrogatory answers referred Defendants to government reports containing short

---

specifically states, "Rule 37 of the Federal Rules of Civil Procedure does not require any meet-and confer requirement as a predicate to seeking sanctions." *Id.* at 936.

[8] Plaintiff also argues two other things: (1) that she is not required to plead every fact in the Complaint; and (2) that she did not violate Rule 26(a). While true, these points are irrelevant because Defendants are not suggesting otherwise. Rather, Defendants are claiming Plaintiff violated Rule 26(e) by failing to timely supplement her discovery disclosures. Defendants contend Plaintiff had a duty to provide supplemental discovery responses identifying at least her vapor intrusion theory of exposure and the nineteen locations other than her home where she claims she was exposed to TCE.

passages mentioning other possible pathways of exposure, none of these reports mentioned vapor intrusion. In fact, by answering Interrogatory Number 3 by incorporating her answer to Interrogatory Number 2—which mentions only exposure from her residential water supply—Plaintiff's responses left the impression that she was actually excluding other potential pathways of exposure. Plaintiff never supplemented her interrogatory answers or otherwise informed Defendants that she was claiming her exposure may have occurred via swimming in a neighbor's pool, swimming in a polluted creek, or by inhaling water vapor percolating from the ground until she submitted Drs. Everett and Wells' expert report.

Plaintiff's contention that the Complaint "specifically" alleges "she was exposed to TCE both on and off her property" is simply not true. Resp. at 2. Although paragraph 24 of the Complaint states, "Defendant negligently introduce[ed] TCE into the real property and ground water around Plaintiff's childhood home," read in context of the entire Complaint, it explains how the ground water at Plaintiff's home came to be contaminated. This paragraph cannot reasonably be read as alleging a vapor intrusion theory of exposure. This theory was not disclosed to Defendants until they received Drs. Everett and Wells' expert report.

More importantly, Plaintiff failed to disclose the underlying facts—that is, the nineteen specific locations other than her house where she was allegedly exposed to TCE—supporting her new theories until after the close of discovery. Plaintiff disclosed this information when she gave Defendants the affidavit created for Drs. Everett and Wells' expert report. Her suggestion that the affidavit is consistent with her discovery responses is again not true. Interrogatory Number 3 specifically asked her to "[i]dentify all facts upon which you base your allegation that you were exposed to TCE *at any time or place*, including but not limited to your allegation . . . that you were exposed to TCE in the water supply of your childhood residence." (Emphasis

added.)  Plaintiff answered, "See Answer to Interrogatory No. 2," an answer which did not suggest in any way that she was exposed to TCE away from her house.  And Plaintiff never provided a supplementary response or clarification before discovery closed.  On the contrary, during her deposition Plaintiff reiterated the theory advanced in the Complaint and her interrogatory answers.  Plaintiff stated she believed she was exposed to TCE "through the ground water" at her home.[9]  Expounding on this answer, Plaintiff said she was exposed to TCE by drinking water "or bathing, or my mother watering the garden with our vegetable, swimming. All the normal things a 14 year-old kid does."  When Defendants asked where she swam, she testified she swam at "a little kiddy pool in the back of our yard."  Plaintiff waited until after the close of discovery to disclose that that she swam at four friends' houses, in the creek where she fished with her father, in a creek in a friend's backyard, and that she "engaged in many outdoor water activities" at two different churches.  During her deposition, she also testified she could not remember the names of any of her childhood friends, which flatly contradicts her affidavit.

Having found that Plaintiff did not disclose these facts and theories until after discovery closed, the Court must decide whether her actual disclosure was timely.  Plaintiff has known these facts since long before she filed this lawsuit.  Therefore, her disclosure after the close of discovery is an untimely supplement.  Accordingly, the Court finds Plaintiff violated Rule 26(e) by failing to provide timely supplementary disclosures and responses.

## III.    The violation was neither substantially justified nor harmless.

Once the court determines there has been a violation, the burden is on the potentially sanctioned party to prove justification or harmlessness.  *Roberts*, 325 F.3d at 782.  Plaintiff

---

[9] The Court recognizes that Plaintiff is not an expert on TCE contamination and cannot be expected to know the details of the different ways she might have been exposed to it while growing up.  That said, Plaintiff is presumably familiar with the basic elements of her own lawsuit, particularly a year after she filed suit while sitting in her own deposition.  One would expect her to be able to answer basic questions about how she was exposed, and she testified that she was exposed through the groundwater at her home.

suggests she was substantially justified in not disclosing her theories of exposure until she submitted her expert reports because she is not a sophisticated litigant such as a large international corporation. She also points out that Defendants did not object to her interrogatory answers in which she stated she would supplement these answers with her expert disclosures, and, in any event, these were contention interrogatories.

To begin, the fact that Plaintiff is not a large international corporation does not excuse her conduct. Although Plaintiff is not an expert in TCE contamination, she certainly knew the names of her childhood friends and where she swam while growing up. She did not have to be a sophisticated litigant or expert to supply this information, crucial facts which underpin her theories of exposure.

The violation is also not substantially justified by the fact that Defendants did not object to Plaintiff's initial interrogatory answer, or that the interrogatories were arguably contention interrogatories. Plaintiff had the burden of disclosing the relevant facts in her initial disclosures, interrogatory answers, deposition testimony, and in timely supplemental disclosures. And even if some level of expert input were needed to answer questions concerning potential pathways of exposure, Plaintiff could still have identified who her friends were or where she swam as a youth before the close of discovery. Plaintiff's waiting to provide this information until after the close of discovery is unacceptable.

Finally, the violation here was not harmless. Because discovery has closed, Defendants are precluded from researching and defending against Plaintiff's new theories. Even if discovery were open, Defendants would face considerable cost and effort to do so. Thus, Plaintiff's actions are not "harmless." As the Sixth Circuit Court of Appeals has noted, "'Harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other

party." *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (citation omitted). Plaintiff's failure to disclose all her theories of exposure or nineteen of the twenty different ways she now alleges she was exposed to TCE was not inadvertent, like a typographical or administrative error. At worst, her failure to disclose this information was deliberate sandbagging, an attempt to preclude Defendants from conducting meaningful discovery into important details of her case. This would explain Plaintiff's failure to remember the names of her childhood friends or where she swam until after the close of discovery. A second possible explanation is that her attorneys were simply unfamiliar with the Federal Rules governing discovery. Since Plaintiff's counsel appears to have considerable experience litigating in federal court, this seems implausible, but in any event unacceptable. It is more likely that the Rule 37(c) violation here is yet another consequence of Plaintiff's failure to do any substantive work on this case for more than a year after it was removed to federal court.[10] Whatever the exact reason, however, the violation was not the product of an honest mistake or otherwise harmless.

Accordingly, the Court holds Plaintiff has not carried her burden of showing that the Rule 26(e) violation here was either justified or harmless.

## IV. The appropriate remedy is to allow Defendants to re-open discovery and for Plaintiff to reimburse Defendants the reasonable cost of discovery associated with the violation.

Turning to the question of a remedy, Defendants argue that the Court should preclude Plaintiff from contending or introducing any evidence that she was exposed to TCE anywhere but through the water supply of her childhood residence. They also request an award of

---

[10] As the Court previously observed in denying Plaintiff's motion to extend discovery (Doc. 70), the record "amply demonstrates that Plaintiff has not been engaged in active discovery. Although discovery was open for more than ten months, Plaintiff failed to serve any written discovery on Defendants until April 3, 2014, the day before the deadline to complete discovery expired. This is undue delay . . ." Order at 2. During this period, the case was more or less dormant in Plaintiff's hands. Plaintiff's failure to develop her specific theory of exposure during this time would be consistent with Plaintiff's failure to pursue discovery during this time.

15

attorneys' fees and expenses associated with bringing the motion.  Plaintiff adamantly denies any violation occurred and does not make any argument in the alternative as to what an appropriate sanction should be.  She does, however, suggest that prohibiting her from presenting evidence that she was exposed to TCE outside of her home would be a "crippling," "potentially dispositive" sanction.  Resp. at 16.

In fashioning a remedy, the court should consider a variety of factors, including: (1) the reason for the noncompliance; (2) the surprise and prejudice to the opposing party; (3) the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial; and (4) the importance of the information or testimony.  *Wegener*, 527 F.3d at 692.

In the present case, the reason for the noncompliance appears to be dilatory conduct during discovery, although it may have been a deliberate choice to withhold the evidence for as long as possible.  Either way, this weighs in favor of a more drastic remedy.

The surprise and prejudice to Defendants is great and also weighs in favor of a dramatic remedy.  The surprise, however, is not as great as Defendants suggest.  Defendants are sophisticated entities who have been embroiled in government investigations and litigation stemming from the FAG Bearings plant's release of TCE in Sugar Creek for decades.  In the course of defending against these investigations and lawsuits, Defendants likely became aware of every possible method of TCE exposure in humans, including ingestion of contaminated water, dermal contact with contaminated water, and inhalation from volatilization and vapor intrusion.  *See, e.g.*, EPA Superfund Record of Decision (Doc. 103-2) at 90-96 (containing Defendants' comments about the report, which indicate FAG Bearings carefully reviewed the report and was aware of its contents).  At the start of the litigation, Defendants likely anticipated that Plaintiff would assert one or more of these theories in this case.  But as discovery drew to a close with

Plaintiff reiterating in her deposition that she was exposed to TCE from the groundwater contamination at her home and not mentioning any other theory of exposure, Defendants reasonably came to understand that other potential pathways of exposure were not at issue in this case. They relied on Plaintiff's representations by not conducting discovery related to other locations or theories of exposure. Thus, Plaintiff's post-discovery assertion that she was exposed to TCE via multiple pathways was an unpleasant surprise, but not totally unforeseeable. On the other hand, Plaintiff's late disclosure that she was exposed via multiple pathways at twenty specific locations was unforeseeable.

More importantly, the potential prejudice to Defendants is great. Allowing Plaintiff to pursue additional theories of exposure at trial based on facts not disclosed during discovery would be staggeringly prejudicial to Defendants. But, as discussed below, this prejudice can be eliminated by allowing Defendants to reopen discovery and by requiring Plaintiff to reimburse Defendants a portion of the additional cost.

The third factor to consider, the potential for the information or testimony to disrupt the trial, weighs against a severe remedy since the Court will have to move the pending trial date because of unrelated scheduling conflicts. Ultimately, the trial will not be delayed or disrupted because of Plaintiff's actions.

Finally, the importance of the information and testimony to Plaintiff's case weighs strongly against excluding it. Although her actions justify exclusion, after reviewing the parties' briefing on Defendants' *Daubert* motions,[11] the Court doubts Plaintiff's case can survive if the nineteen newly disclosed locations of exposure are excluded. Her experts' opinions on specific causation are largely, if not entirely, based on the assumption that she was exposed to TCE

_____

[11] The Court withheld ruling on this motion in part because it was concerned that excluding the evidence might be outcome determinative. The parties' briefing on Defendants' dispositive motions and *Daubert* issues confirmed this.

contaminated water in some fashion at these nineteen different locations. Excluding evidence of exposure at these locations would mortally wound Plaintiff's case.

Accordingly, the Court finds a sanction less than exclusion is appropriate. Aside from exclusion, the only remedy that ensures Defendants will not be prejudiced by Plaintiff's actions is to allow them to reopen discovery and conduct extensive additional discovery into the newly disclosed evidence and theories. This sanction both ensures that Plaintiff has her day in court and that Defendants are not subjected to trial by ambush.

Of course, this means Defendants will probably incur expenses they would not have incurred but for Plaintiff's failure to timely disclose the information in her affidavit and her additional theories of exposure. For example, Defendants will likely wish to re-depose Plaintiff to ask her about these nineteen locations or why she failed to remember the names of her childhood friends during the previous deposition. Defendants may also wish to depose some of the individuals who lived at these locations or re-depose some of Plaintiff's experts. In light of any new evidence, Defendants may want to revise their summary judgment motion or portions of their *Daubert* motions. Since this additional work is necessitated by Plaintiff's untimely disclosures, and to discourage future litigants from engaging in similar behavior, Plaintiff shall reimburse Defendant one-third of all of the reasonable costs and expenses incurred as a result of the Rule 26(e) violation. Defendants are also awarded their reasonable attorneys' fees and expenses incurred in bringing the motion for sanctions.

One-third is an appropriate percentage for two reasons. First, Plaintiff should not bear all of the cost because Defendants would have incurred some of these additional costs even if Plaintiff timely disclosed the information. Second, at times both parties have engaged in a "scorched earth" policy of litigation. If this percentage were higher than one-third, Defendants

might be tempted to engage in excess discovery just because it would drive up Plaintiff's litigation costs. If the percentage were lower, Plaintiff would not be internalizing the cost of her conduct here. Although these costs may total in the tens of thousands of dollars, maybe even into the low six figures, there is no other remedy that ensures Defendants will not be prejudiced by Plaintiff's actions.

Finally, throughout this order the Court has referred to the Plaintiff as if she were responsible for the violation. The reality, of course, is that in the normal course of civil litigation it is counsels' responsibility to ensure compliance with the rules of discovery. *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 743 (7th Cir. 1998). In the present case, a young woman who appears to have a strong case that she was harmed by Defendant FAG Bearings' release of TCE into the environment was very nearly denied her day in court because her attorneys failed to comply with the well-established rules of discovery. The fact that the Plaintiff was almost denied a decision on the merits because her attorneys failed to follow the rules "is not a justification for excusing counsels' conduct or for mitigating the operation of the rule." *Id.* (upholding the district court's decision precluding the plaintiffs' expert witnesses from testifying as a sanction under Rule 37(c), intimating that because the attorneys errors hurt their clients' interests, the plaintiffs could always seek recourse against their attorneys). It is, however, a justification for requiring Plaintiff's counsel to bear the financial cost of the remedy. Accordingly, Plaintiff's counsel—not Plaintiff—shall pay all amounts owed to Defendants as a consequence of the violation here.

## Conclusion

For the reasons discussed in detail above, the Court GRANTS IN PART Defendants' motion (Doc. 85). The Court holds:

1.  Discovery shall be re-opened until August 14, 2015, for the sole purpose of allowing Defendants to conduct additional discovery into the evidence disclosed in Plaintiff's affidavit and/or Plaintiff's theories that she was exposed to TCE via "ingestion of contaminated water, dermal contact of contaminated well water and surface water in springs and creeks, and inhalation from volatilization of TCE from well water as well as vapor intrusion." This discovery shall begin immediately.

2.  On or before August 4, 2015, Defendants shall notify the Court whether they wish to revise their summary judgment motion or *Daubert* motions. If so, the Court will issue a revised briefing schedule consistent with a forthcoming new trial date.

3.  Plaintiff's counsel shall reimburse Defendants one-third of the reasonable costs and expenses incurred as a result of this additional discovery and any revisions to Defendants' motion for summary judgment or *Daubert* motions. The Court shall issue a briefing schedule at a later time related to determining the exact amount Plaintiff's counsel shall reimburse Defendants.

4.  Plaintiff's counsel shall reimburse Defendants their reasonable attorneys' fees and expenses incurred in bringing this motion. Defense counsel shall file an affidavit on or before June 29, 2015, documenting the amount of reasonable attorneys' fees incurred in making this motion. Plaintiff's counsel shall then have seven days to file any response. Any response shall be limited to discussing the amount of reasonable attorneys' fees incurred and shall not exceed five pages. If Plaintiff's counsel files a response, Defendant shall have seven days to file a reply. Any reply shall not exceed five pages. The Court will then issue an order setting the amount to be paid. The parties, however, are welcome and encouraged to resolve this issue without the Court's intervention.

**IT IS SO ORDERED.**

Date:   June 15, 2015                 /s/ Greg Kays

                                               GREG KAYS, CHIEF JUDGE
                                               UNITED STATES DISTRICT COURT