IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| JODELLE L. KIRK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13-cv-5032-DGK |
| | ) | |
| SCHAEFFLER GROUP USA, INC., | ) | |
| FAG HOLDING, LLC, and | ) | |
| FAG BEARINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER PARTIALLY GRANTING PLAINTIFF'S SECOND MOTION ON COLLATERAL ESTOPPEL

This case arises from Plaintiff Jodelle Kirk's allegation that Defendants' release of trichloroethylene ("TCE") into the environment near her childhood home caused her to develop serious illnesses. Previously, on January 20, 2015, the Court issued an order (Doc. 131) partially granting Plaintiff's motion to apply collateral estoppel to bar Defendants from re-litigating certain issues they had litigated in other cases. Plaintiff has now filed a second motion (Doc. 154) seeking to preclude Defendant FAG Bearings, LLC ("FAG Bearings") from contesting specific facts found by the Court in its January 20 order. For the following reasons, this motion is GRANTED IN PART.

**Standard**

Collateral estoppel, or issue preclusion, is a legal doctrine which prevents the same parties from relitigating issues which have been previously adjudicated between them. *Oates v. Safeco Ins. Co. of Am.*, 583 S.W.2d 713, 719 (Mo. 1979). The purpose of the doctrine is to "'to promote judicial economy and finality in litigation.'" *Allstate Ins. Co. v. Blount*, 491 F.3d 903, 909 (8th Cir. 2007) (quoting *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 758

(8th Cir. 2003)).  Under Missouri law, a plaintiff may invoke the doctrine against a defendant even "where the plaintiff was not a party to the earlier judgment."  *In re Caranchini*, 956 S.W.2d 910, 912 (Mo. 1997).  This is called offensive non-mutual collateral estoppel.  *Id.*

In determining whether offensive non-mutual collateral estoppel applies, a court considers:  (1) whether the issue decided in the prior case is identical to the issue presented in the present action; (2) whether the prior case ended with a judgment on the merits; (3) whether the defendant was a party, or in privity with a party, to the prior case; and (4) whether the defendant had a full and fair opportunity to litigate the issue in the prior case.  *James v. Paul*, 49 S.W.3d 678, 682 (Mo. 2001).  Each case is analyzed on its own facts, and the court should not apply the doctrine where doing so would be inequitable.  *Id.*

## Background/Prior Litigation

The Court's January 20 order discussed extensively findings made by other courts in four prior lawsuits[1] involving Defendant FAG Bearings.  The Court incorporates those findings here.

## Discussion

Plaintiff moves to preclude FAG Bearings from litigating the following sixteen proposed facts or assertions:

1. Defendant FAG Bearings released TCE into the environment in a number of different ways.

2. Defendant FAG Bearings released approximately 12,000 to 25,000 gallons of TCE through waste, spills, leaks, overflowing tanks, incidental use of TCE, and dumping of "still bottoms" into the ground at FAG Bearings' facility.

---

[1] These cases are *FAG Bearings Corp. v. Gulf States Paper Co.*, No. 95-5081-CV-SW-8, 1998 WL 919115 (W.D. Mo. Sept. 30, 1998); *Lewis v. FAG Bearings Corp.*, 5 S.W.3d 579 (Mo. Ct. App. 1999); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, No. 94-0241-CV-W-8 (W.D. Mo. May 14, 1996); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, No. 99-5017-CV-SW-3, 2001 WL 34118390 (W.D. Mo. May 21, 2001).

2

3. During investigations at Defendant FAG Bearings' facility from 1991 to 1996, TCE or TCE-related chemicals were detected in at least 36 different locations across the FAG facility.

4. Defendant FAG Bearings' employees occasionally dumped or pumped TCE directly into the ground. The highest levels of TCE contamination were found at or near these locations.

5. The "trail," or plume, of contamination runs directly from these locations to residential wells located south of Defendant FAG Bearings' property.

6. Defendant FAG Bearings was "100%" responsible for the TCE contamination in Silver Creek, Saginaw, and on FAG's property.

7. Defendant FAG Bearings could not account for approximately 30,000 gallons of TCE it purchased.

8. Defendant FAG Bearings' vapor recovery system frequently and repeatedly malfunctioned, releasing large amounts of TCE into the air over a long period of time.

9. Defendant FAG Bearings' own experts and employees have opined that these vapors then condensed and returned to the soil on Defendant FAG's property.

10. The releases of TCE on Defendant FAG Bearings' property were predictable and foreseeable.

11. Defendant FAG Bearings knew that the vapor recovery system malfunctioned and allowed TCE to escape regularly and repeatedly.

12. While Defendant FAG Bearings repaired the vapor recovery system frequently, it did not take appropriate steps to prevent the systems from malfunctioning or operating.

13. Defendant FAG Bearings' actions in regard [to] the releases of TCE were deliberate, the releases were expected by Defendant FAG Bearings, and the releases were not accidental.

14. Defendant FAG Bearings totally refused to cooperate in investigation and remediation of the TCE contamination.

15. Defendant FAG Bearings was the sole cause of the TCE contamination in the groundwater at Silver Creek.

16. Defendant FAG Bearings acted deliberately in causing the TCE contamination in the groundwater at Silver Creek.

These propositions are based on findings made in the Court's January 20 Order which were based on findings in the four previous cases.

Defendants oppose the motion, contending that it is an attempt by Plaintiff to clarify or reconsider the Court's January 20 order to her benefit. Alternately, Defendants suggest this is an attempt to move for partial summary judgment that does not comply with the procedural requirements for such a motion. Defendants observe that the only difference between the instant motion and Plaintiff's previous motion is that Plaintiff seeks to add specificity to the previous order regarding the manner in which the contamination occurred. Defendants complain the present motion is based on all the same facts and cases as the initial motion, and that Plaintiff had every opportunity to request in that motion the level of specificity she now seeks. Defendants note courts strongly disfavor such repetitive, piecemeal motion practice, and suggest the previous ruling is the law of the case that should not be disturbed. Finally, Defendants contend Plaintiff cannot show she is entitled to relief because the "facts" she wishes to preclude Defendants from litigating are inaccurate recitations of findings in the previous cases, and that these "facts" were not actually, necessarily, and unambiguously decided in these cases.

The Court holds Plaintiff's motion is not an attempt to clarify or reconsider the January 20 order, nor is it an attempt to "back-door" a partial summary judgment motion. The motion is a legitimate method of foreclosing FAG Bearings from re-litigating issues that have been decided against it in other cases which promotes judicial economy and finality in litigation. Plaintiff is not attempting to modify an adverse prior order. Rather, she is seeking to delineate the contours of the Court's January 20 ruling, an endeavor that will ultimately benefit both

4

parties by ensuring that any trial in this case will not be bogged down in an endless series of sidebars with the parties arguing about precisely what was litigated in the previous cases. Furthermore, Defendants will not be unfairly prejudiced by the Court's addressing the merits of the pending motion. An adverse ruling will mean FAG Bearings will not be able to re-litigate an issue previously decided against it. Since it has no right to re-litigate an issue that has been decided against it previously, it will not be prejudiced by this. On the other hand, a ruling in its favor will clarify what it can litigate and facilitate trial preparation.

The Court also rejects Defendant's claim that the above issues were not actually, necessarily, and unambiguously decided in the previous cases. The decisions in the prior cases are clearly based on these findings, and so these findings were actually, necessarily, and unambiguously decided.

Defendants' observation that the present motion is duplicative because it is based on the same facts and cases as those in the initial motion, however, is well-taken. But the inconvenience to Defendants and the Court of this serial briefing is outweighed by the benefit of resolving these issues well before trial. Furthermore, Defendants will not have to respond to any additional motions from Plaintiff asserting collateral estoppel arising from these four prior cases. Plaintiff has now had ample opportunity to raise and brief this issue, and the Court will not entertain a third motion on the same subject.

There is also some merit to Defendant's complaint that Plaintiff has not accurately described the findings in the previous cases. In formulating propositions 12, 13, and 16, Plaintiff has taken findings in the Court's January 20 Order and slightly altered them, omitted language qualifying the finding, or taken the finding out of context so that the proposed fact is different from the original finding.

Proposition twelve—"While Defendant FAG Bearings repaired the vapor recovery system frequently, it did not take appropriate steps to prevent the systems from malfunctioning or operating"—omits a word from the original finding which changes the meaning slightly. In the prior litigation, a district court found that "[w]hile FAG repaired the system frequently, it **apparently** did not take appropriate steps to prevent the systems from malfunctioning or operating." *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, No. 94-0241-CV-W-8, slip op. at 9 (W.D. Mo. May 14, 1996) (emphasis added). "Apparently" qualifies the court's finding, suggesting the court was unsure of what happened. By omitting "apparently" from this finding, Plaintiff makes the proposition stronger than it should be. Hence, it is not accurate.

Propositions thirteen and sixteen, which respectively claim "Defendant FAG Bearings' actions in regard [to] the releases of TCE were deliberate, the releases were expected by Defendant FAG Bearings, and the releases were not accidental," and "Defendant FAG Bearings acted deliberately in causing the TCE contamination in the groundwater at Silver Creek," are also problematic. These proposed facts suggest FAG Bearings may have committed an intentional tort, which is not what the prior cases found. As this Court's January 20 Order observed, the issue of whether and to what extent FAG Bearings' acted "deliberately" in releasing TCE into the environment was litigated in the context of a declaratory judgment action concerning insurance coverage. *Kirk v. Schaeffler Group USA, Inc.*, No. 3:13-cv-5032, 2015 WL 247881, at *6 (W.D. Mo. Jan. 20, 2015). In that case, FAG Bearings' general liability insurer sought a ruling that it owed no duty to defend or indemnify the corporation. *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, No. 94-0241-CV-W-8, slip op. at 1 (W.D.Mo. May 14, 1996). In resolving this claim, the court had to construe a clause which excluded coverage for all but "sudden and accidental" releases or escapes of pollutants. *Id.* at 8. The district court agreed with

the insurer, holding FAG Bearings release of TCE was deliberate in the sense that it was not "sudden and accidental," thus it was not covered under the policy. *Id.* at 9-10. In affirming the district court's decision, the Eighth Circuit noted the releases were not deliberate in the sense that FAG Bearing intended the pollution to occur; that is, the evidence did not show FAG Bearing intended to poison the town's groundwater. *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 923 (8th Cir.1998). Hence, in summarizing the prior litigation, this Court ruled only that "[p]rior cases found FAG/FAG Bearings acted 'deliberately' in causing the contamination in the sense that the contamination was not accidental." *Kirk*, 2015 WL 247881 at *8. Proposed facts thirteen and sixteen ignore this distinction and so are inaccurate.

The remaining proposed facts, however, are accurate. The Court has closely compared the thirteen other proposed facts with the Court's January 20 Order and the findings made in the underlying litigation. It holds they are accurate and established by the doctrine of offensive non-mutual collateral estoppel.

## Conclusion

For the reasons discussed above, the Court GRANTS IN PART Plaintiff's motion (Doc. 154). Plaintiff's proposed facts numbered 1-11, 14, and 15 are established for purposes of this litigation and Defendants may not contest them.

**IT IS SO ORDERED.**

Date:  June 15, 2015   /s/ Greg Kays
  GREG KAYS, CHIEF JUDGE
  UNITED STATES DISTRICT COURT