IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| JODELLE L. KIRK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13-cv-5032-DGK |
| | ) | |
| SCHAEFFLER GROUP USA, INC., | ) | |
| FAG HOLDING, LLC, and | ) | |
| FAG BEARINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING IN PART MOTION TO EXCLUDE DEFENDANTS' EXPERTS**

This case arises from Defendants' release of trichloroethylene ("TCE") into the environment near Plaintiff Jodelle Kirk's childhood home. Plaintiff alleges she was exposed to this TCE and that it caused her to develop serious medical problems, including autoimmune hepatitis ("AIH").

Now before the Court are Plaintiff's motions to exclude the testimony and opinions of Defendants' experts Dr. Philip Guzelian, M.D. (Doc. 152); James Kline, CPA (Doc. 173); and Dr. B. Tod Delaney, Ph.D., P.E., BCEE (Doc. 175). Also pending are the parties' requests for hearings and oral argument on the motions (Doc. 197). Because the existing record provides a sufficient basis on which the Court can rule, the parties' requests for hearings and oral argument are denied.

For the following reasons, the motions are DENIED with respect to Dr. Guzelian and Mr. Kline's testimony, and GRANTED with respect to Dr. Delaney.

**Standard**

When the admissibility of expert testimony is challenged, the district court must make "a preliminary determination of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). The party seeking to introduce the expert's testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). Under Federal Rule of Evidence ("FRE") 702, a witness may give an expert opinion if the following conditions are met:

> (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In other words, the proponent must show that the expert's opinions are relevant, the expert is qualified to offer them, and "the methodology underlying his conclusions is scientifically valid." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006). Doubts should be resolved in favor of admissibility. *Id*. at 758.

**Analysis**

**I.      Dr. Guzelian's testimony is admissible under FRE 702.**

Dr. Philip S. Guzelian, M.D., is a retired doctor and toxicologist Defendants retained to analyze and rebut the opinions of Plaintiff's three causation experts, Drs. Kathleen Gilbert, Ph.D., Ernest Chiodo, M.D., and Allen Parmet, M.D. Generally speaking, Dr. Guzelian opines TCE is not known to cause AIH in humans, and that even if it were known to cause AIH in

humans, Plaintiff's experts have failed to adequately define a dose that would have been sufficient to cause Plaintiff's AIH. Guzelian Rep. (Doc. 170-19) at 111, 125, 148, 169.

Plaintiff seeks to exclude Dr. Guzelian's testimony, arguing that: (1) he is not qualified to testify whether TCE causes AIH; (2) he did not use a reliable toxicology methodology to reach his conclusions; (3) he misapplied his methodology to the facts of this case; (4) his opinion is unreliable because it was developed for purposes of this litigation. Plaintiff also notes that in 1999, a federal court excluded him from testifying as an expert witness under Rule 702.

The Court is not persuaded by these arguments. First, Dr. Guzelian is qualified to testify whether TCE causes AIH. Although he has no specific expertise in AIH or TCE and has not conducted experiments involving TCE or published any peer-reviewed papers involving TCE, Dr. Guzelian has extensive experience treating liver disease, and he is an accomplished toxicologist with significant academic credentials. Furthermore, it is well-established that a toxicologist may testify that exposure to a chemical caused a person's injuries. *Marmo*, 457 F.3d at 758; *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 928-31 (8th Cir. 2001). Plaintiff's concerns go to the weight his testimony should receive, not its admissibility.

With respect to Defendants' second argument, it is a close call whether Dr. Guzelian's testimony is the product of a reliable methodology. His methodology used here, "Evidence-Based Toxicology" ("EBT"), posits that only human studies can establish a chemical causes harm to humans. Guzelian Dep. (Doc. 153-1) at 73:8-12. Dr. Guzelian firmly believes animal studies alone can almost never establish causation. *Id.* at 59:17-24.[1]

---

[1] Defendants intimate that Dr. Guzelian's view is akin to that articulated by the Supreme Court in *General Electric Co. v. Joiner*, 522 U.S. 136 (1997). This is simply not true. In *Joiner*, the Supreme Court did not even question whether animal studies alone can be a proper foundation for an expert's opinion on causation; it was a given. *Id.* at 144. Dr. Guzelian, on the other hand, opines that animal studies alone can virtually never establish causation.

3

Toxicologists have recognized EBT's existence, and it has been discussed in toxicological journals, but it is not widely-accepted, much less "widely-cited with approval in the peer-reviewed literature" as Defendants suggest. The concluding sentence of Dr. Guzelian's journal article introducing this methodology acknowledges as much. It states: "It is time for toxicologists to endorse EBT." Philip S. Guzelian, et al., *Evidence-Based Toxicology: A Comprehensive Framework for Causation*, 24 Hum. & Experimental Toxicology 161, 192 (2005) (Doc. 153-2).

The notable characteristic of this methodology is that it makes it more difficult for toxic tort plaintiffs to establish general causation. This is particularly true with respect to substances, like TCE, that cannot ethically or legally be tested on humans. Because animal experiments cannot establish causation, plaintiffs are forced to rely on epidemiological studies or occupational studies. But for rare diseases like AIH, epidemiological studies cannot be effectively done and there are far fewer occupational studies. Thus it is significantly more onerous for plaintiffs to prove their case.

On the other hand, the Court acknowledges that numerous other factors related to his methodology weigh in favor of admitting his testimony. Dr. Guzelian is well-qualified, and his report applies nine well-established guidelines, commonly known as the Bradford Hill criteria, to analyze whether TCE has been shown to cause AIH in humans. *See In re Neurontin Mktg., Sales Practices, & Prods. Liab. Litig.*, 612 F. Supp. 2d 116, 132-33 (D. Mass. 2009) (observing courts have generally accepted the Bradford Hill criteria). Additionally, in formulating his opinions, Dr. Guzelian carefully reviewed and analyzed the expert opinions he is critiquing, and he reviewed exhaustively the published human and animal studies. Hence, his testimony is based on facts and data.

Dr. Guzelian has also published two peer-reviewed articles on EBT methodology. His first paper has been cited in other publications at least seventy-eight times. In fact, it is the sixth most cited article in the thirty-five year history of the journal Human & Experimental Toxicology, which *The Reference Manual on Scientific Evidence* acknowledges is a "reputable, peer-reviewed journal." Bernard Goldstein & Mary Sue Henifin, *Reference Guide on Toxicology*, *in Reference Manual on Scientific Evidence*, 633, 678 (Fed. Judicial Ctr. ed., 3d ed. 2011). In sum, the Court cannot say that his methodology is "fundamentally unsupported" and should be excluded. *Bonner*, 259 F.3d at 929-30 (holding an expert's testimony should be admitted unless the opinion is so fundamentally unsupported that it can offer no assistance to the jury); *see Synergetics, Inc., v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) ("[M]ere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony."). The Court is also mindful that doubts should be resolved in favor of admissibility. *Marmo*, 457 F.3d at 758.

The Court finds no merit to Plaintiff's third argument that Dr. Guzelian did not correctly apply his methodology to the facts of this case. Plaintiff argues that if he had, he would have concluded a cause and effect relationship exists between TCE and autoimmune disease. For support, Plaintiff quotes the Environmental Protection Agency's ("EPA") 2011 *Toxicological Review of Trichloroethylene*, which summarizes the results of various studies. In relevant part, it states, "The human and animal studies of TCE and immune-related effects provide *strong evidence* for *a role* of TCE in *autoimmune disease*." Weihsueh A. Chiu, et al., *Toxicological Review of Trichloroethylene*, U.S. EPA (2011), *full text available at* http://www.epa.gov/iris/toxreviews/0199tr/0199tr.pdf, at 4-427.

This argument is not persuasive. As a threshold matter, Plaintiff exaggerates the strength of the EPA review's conclusion. The review concludes that human studies provide *strong evidence* that TCE plays *a role* in autoimmune disease, not that human studies *show* TCE *causes* autoimmune disease. Indeed, it is unclear whether the review's conclusion and Dr. Guzelian's position are incompatible with each other. The EPA review concludes there is a relationship between TCE and autoimmune disease generally, while Dr. Guzelian's position is that no studies have established a causal relationship between TCE and AIH in humans. Although a correlation between TCE and autoimmune disease makes it more likely that a causal relationship exists between TCE and AIH in humans, this does not mean Dr. Guzelian's conclusion is somehow inconsistent with the EPA's conclusion. Hence, the Court cannot say Dr. Guzelian's report fails to apply his own methodology.

With respect to Plaintiff's fourth argument, the Court holds Dr. Guzelian's opinions should not be excluded as unreliable even though they were "developed for litigation." Dr. Guzelian's opinion cannot be excluded simply because he has not previously opined, outside of this case, whether TCE has been shown to cause AIH in humans. If that were the standard, several of Plaintiff's experts would be prohibited from testifying as well, because they did not develop their opinions independently of this lawsuit. The question is whether Dr. Guzelian's "*expertise* was developed for litigation or naturally flowed from the expert's research." *Lauzon*, 270 F.3d at 687 (emphasis added).

Furthermore, this factor is only one of many to consider in determining the admissibility of Dr. Guzelian's opinion. *See id.* Other relevant factors, such as whether he "ruled out other alternative explanations" and "sufficiently connected the proposed testimony with the facts of the case," weigh against excluding his testimony.

6

Finally, the fact that Dr. Guzelian was previously excluded from testifying as an expert witness is not relevant because that case is not analogous to this one.  The issue in the 1999 case was whether there was an accepted, effective treatment for a Tegretol overdose, a question far afield of his expertise.  Furthermore, the court's decision to exclude Dr. Guzelian appears to have been determined as much by the proponent's failure to submit a well-researched brief as by any perceived lack of expertise.  *Harvey v. Rines*, No. 98-85-P-DMC, 1999 WL 33117105, at *6 (D. Me. Jan. 19, 1999) (noting the response defending the admissibility of his testimony failed to cite any "authority or the record").

Although it is a close call, the Court holds Defendants have established the admissibility of his testimony.

## II.     James Kline's testimony is admissible under FRE 702.

James Kline is a certified public accountant ("CPA") employed by McGladrey.  Defendants retained him to offer a rebuttal opinion on Dr. Ward's report of economic damages and the underlying data on which his report rests.  Mr. Kline has provided testimony concerning the calculation of damages in over twenty cases, four of which involved the calculation of lost earnings.  He opines that Dr. Ward's report "contains errors, deficiencies, inconsistencies, and unsupported assumptions that result in an overstatement of estimated damages," thus its conclusions are "flawed and do not provide a reliable estimate of the economic damages in this matter."  Kline Rep. (Doc. 170-24) at 5.

Plaintiff moves to exclude Mr. Kline's testimony, arguing he is not qualified to rebut any opinion by Dr. Ward, Kathie Allison (Plaintiff's certified life care planner), or Terry Cordray (Plaintiff's vocational rehabilitation specialist).  In response, Defendants note Mr. Kline is highly qualified to rebut Dr. Ward's opinions.  They also observe that Mr. Kline's report mentions Ms.

Allison's and Ms. Cordray's opinions only to rebut Mr. Ward's calculations and conclusions, and to show that he relied on obviously flawed information.

The Court rules as follows. Plaintiff's contention that as a matter of law CPAs lack the education and experience to testify on economic damages is patently incorrect. Courts routinely admit the testimony and opinions of CPA on various issues of economic loss and damages. *See, e.g., Johnson v. Cowell Steel Structures, Inc.*, 991 F.2d 474, 477 (8th Cir. 1993) (admitting testimony from two CPAs on economic damages issues such as business interruption, business valuation, and projected loss and cash flow); *Tipton v. Mill Creek Gravel, Inc.*, No. 01-5027-CV-SW-JCE, 2003 WL 25686521, at *1-2 (W.D. Mo. May 2, 2003) (allowing CPA to testify on economic damages issues such as the net value of gravel and anticipated expenses). Accordingly, Defendants have established that Mr. Kline's testimony is admissible.

## III. Dr. Delaney's is excluded from offering any testimony in his expert report responding to "Plaintiff's Opinion 1."

Dr. B. Tod Delaney is an engineer retained by Defendants to rebut opinions proffered by Plaintiff's expert witnesses Drs. Everett and Wells. Plaintiff moves to exclude Dr. Delaney from offering any testimony rebutting the doctors' first opinion, which was that Defendant FAG Bearings released large quantities of toxic chemicals, including TCE, into the environment at its Joplin facility. Plaintiff argues Dr. Delaney's testimony violates a Court ruling holding Defendants are barred by the doctrine of collateral estopped from contesting certain allegations. Defendants' response, filed before the Court issued its second order, asserts Dr. Delaney's testimony is not barred.

The Court's June 15, 2015, Order Partially Granting Plaintiff's Second Motion on Collateral Estoppel (Doc. 232) found that collateral estoppel prevents Defendants from litigating thirteen different facts in this case. These include:

8

* Defendant FAG Bearings released approximately 12,000 to 25,000 gallons of TCE through waste, spills, leaks, overflowing tanks, incidental use of TCE, and dumping of "still bottoms" into the ground at FAG Bearings' facility.

* Defendant FAG Bearings' employees occasionally dumped or pumped TCE directly into the ground. The highest levels of TCE contamination were found at or near these locations.

* Defendant FAG Bearings could not account for approximately 30,000 gallons of TCE it purchased.

* Defendant FAG Bearings' vapor recovery system frequently and repeatedly malfunctioned, releasing large amounts of TCE into the air over a long period of time.

* Defendant FAG Bearings' own experts and employees have opined that these vapors then condensed and returned to the soil on Defendant FAG's property.

* The releases of TCE on Defendant FAG Bearings' property were predictable and foreseeable.

The most significant portions of Dr. Delaney's testimony, however, contradict these facts. For example, he opines that: the TCE released into the environment from the steam condensate system at the Joplin facility "was likely no more than . . . 1,200 – 3,900 gallons;" "FAG's environmental controls and the chemical and physical properties of TCE minimized the amount of TCE that entered the subsurface environment and acted to divert most of the TCE used at the facility into the air;" and that "although the FAG facility used TCE in its operations and released TCE to the environment, it did not release 'large' quantities of TCE into the subsurface environment as claimed by the Plaintiff." Delaney Rep. (Doc. 176-1) at 18-19. The Court finds this testimony is explicitly barred by the Court's June 15 Order, so Dr. Delaney should not be permitted to give it.

Accordingly, Plaintiff's motion is GRANTED. The Court excludes Dr. Delaney from offering any testimony responding to "Plaintiff's Opinion 1" set forth on pages seventeen

9
Case 3:13-cv-05032-DGK   Document 286   Filed 09/29/15   Page 9 of 10

through nineteen of his expert report. His testimony is limited to rebutting Drs. Everett and Wells' "Opinion 3" as described in pages nineteen and twenty of his report.

## Conclusion

For the reasons above, Plaintiff's motions are DENIED with respect to Dr. Guzelian and Mr. Kline's testimony (Docs. 152, 173), and GRANTED with respect to Dr. Delaney's testimony (Doc. 175).

**IT IS SO ORDERED.**

Date:  September 29, 2015  /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT