IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| JODELLE L. KIRK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13-cv-5032-DGK |
| | ) | |
| SCHAEFFLER GROUP USA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART DEFENDANTS' MOTIONS IN LIMINE

This case arises from Defendants' release of trichloroethylene ("TCE") into the environment near Plaintiff Jodelle Kirk's childhood home. Plaintiff alleges she was exposed to the TCE, and that it caused her to develop several serious illnesses, including autoimmune hepatitis ("AIH").

Now before the Court are Defendants' eighteen motions in limine (Docs. 334-351). The Court withholds ruling on Defendants' fourth (Doc. 337), tenth (Doc. 343), eleventh (Doc. 344), and sixteenth motions in limine (Doc. 349) until the Court determines whether to bifurcate the trial. The Court rules as follows on the balance.[1]

**1. Motion to Exclude Undisclosed Evidence (Doc. 334).**

Defendants' first motion seeks to exclude any undisclosed exhibits or witness testimony. Specifically, Defendants move to exclude:

> 1. Untimely and improperly disclosed theories of exposure to TCE at any location other than Plaintiff's childhood residence and the

---

[1] To save space, throughout both this Order and the Court's order on Plaintiff's motions in limine, when the Court directs "Plaintiff" or "Defendants" to do something, that directive applies to the litigant and the litigant's attorneys, experts, witnesses, and anyone else to whom the directive could conceivably apply. Similarly, when the Court precludes a litigant from "referring to" something, it precludes the litigant from offering, introducing, referencing, or making any argument concerning the matter. If counsel is unsure whether a question or evidence might violate a ruling in limine, he or she should approach the bench first, outside of the jury's hearing.

nineteen alleged exposure locations in Plaintiff's July 14, 2014, affidavit (Doc. 322);

2. Any individual not identified by Plaintiff in this affidavit, including any evidence or testimony from such individuals;

3. Any previously undisclosed and/or untimely opinion testimony or other evidence from any of Plaintiff's expert witnesses, including testimony or evidence related to the supplemental discovery period;

4. Any untimely and/or undisclosed evidence of Plaintiff's hourly wage, hours worked, or other earnings; and

5. Any other document or witness that Plaintiff has failed to disclose in the time and manner required by the Federal Rules of Civil Procedure.

Mot. at 3.

This portion of the motion is GRANTED except that the Court's ruling does not preclude Plaintiff from: (1) offering evidence of any in utero exposure;[2] or (2) offering testimony that did not have to be disclosed during discovery, for example, testimony offered for rebuttal or impeachment purposes.

Defendants also move to exclude Plaintiff's experts from introducing, referring to, or relying on any "facts, opinions, documents, or evidence" that Plaintiff or her experts have failed to disclose. *Id.* at 4. Defendants ask the Court to exclude three specific items. The Court discusses each separately.

i. Defendants move to exclude the expert opinions of Drs. Everett and Wells that the estimated TCE level at Plaintiff's childhood home is "broadly consistent with the finding of 11µg/L in a home southwest of the Kirk home (private well number 274 on Burgess Street)."

---

[2] This ruling is discussed more in the Court's ruling on Defendants' ninth motion in limine (Doc. 342).

Defendants contend Plaintiff never disclosed any facts or documents supporting this statement, thus it either does not exist or this portion of the experts' opinions should be excluded. Defendants contend the only evidence in the record from well number 274 is that there were *no* test results for the well because its pump had been disconnected.

Plaintiff responds that the Court has already ruled on this issue in denying Defendants' *Daubert* motion to exclude Drs. Everett and Wells.

Unfortunately, the existing record is underdeveloped on this point. Obviously, if Plaintiff has provided well data to her experts that she has not identified or provided to Defendants, this would be problematic.

The Court ORDERS Plaintiff to identify specifically the materials in which she has disclosed to Defendants facts supporting the statement that there was a "finding of 11µg/L in a home southwest of the Kirk home (private well number 274 on Burgess Street)." Further, Plaintiff shall identify by pinpoint citation where in these materials these facts exist. Plaintiff shall file a short (not to exceed five pages) brief, which makes a pinpoint citation to this material and explains her position. This brief shall be filed within seven days. Defendants will then have three days to file a short (not to exceed five pages) reply brief. The Court will then rule on the matter.

ii.     Defendants also move to exclude any facts, evidence, or documents relating to any entities that are not parties to this lawsuit. Defendants contend Plaintiff's expert on damages, Dr. Ward, has not identified any facts, evidence, or documents relating to the finances of either Defendant in this action, instead using financial information for entities that are not parties to this lawsuit. *Id.* at 5.

3

Plaintiff responds that Defendants have not identified a single document cited to and relied upon by Dr. Ward that they would like excluded, leaving both herself and the Court to guess which documents Defendants believe should be excluded.

Although the Court could guess which documents Defendants seek to exclude,[3] the Court declines to do so. Motions in limine should be directed at specific evidence, not broad, vague categories of evidence or testimony. *See Sappington v. Skyjack, Inc.*, No. 04-5076-CV-SW-FJG, 2008 WL 895222, at *7 (W.D. Mo. Mar. 27, 2008) (denying motion in limine which lacked specificity). Accordingly, this portion of the motion is DENIED WITHOUT PREJUDICE.

iii.     Defendants also move to limit Plaintiff's and Dr. Ward's testimony concerning her hourly wage and hours worked to that given in her first deposition because during discovery she failed to produce documents supporting her assertions about her hourly wages, hours worked, or other claims about her earned income.

Plaintiff has not responded to this portion of Defendants' motion, and Defendants' request is reasonable. This portion of the motion is GRANTED.

Finally, Defendants move to exclude "any documents, opinions, or other evidence that Plaintiff has not disclosed." Mot. at 7. This request is DENIED WITHOUT PREJUDICE because it is insufficiently specific. *See Sappington*, 2008 WL 895222, at *7.

**2.     Motion to Exclude Undisclosed Research Literature or Studies (Doc. 335).**

Defendants move to exclude Plaintiff's experts from relying on any research, literature, studies, or data that they failed to disclose during discovery. Defendants have not identified any materials they object to other than Dr. Gilbert's ongoing, unpublished research.

---

[3] One such document appears to be a document pertaining to the financial condition of Schaeffler's parent corporation, Schaeffler AG, a German corporation which is not a party to this lawsuit. It is the subject of Defendant's fifteenth motion in limine (Doc. 348).

4

Defendants argue it would be unfair to allow Dr. Gilbert to claim that preliminary observations from this research suggest that continuous developmental exposure of MRL+/+ mice[4] to TCE generates AIH at levels of exposure lower than that found to induce AIH in adult-only exposure studies. Defendants argue this would be unfair because they have not had any opportunity to review the data, nor has it been peer-reviewed, much less published.

Plaintiff responds that Defendants questioned Dr. Gilbert about this research during her deposition, and she explained that her preliminary observations confirmed the existing body of research that developmental exposure to TCE has a greater impact than adult exposure to TCE.

The Court notes that although Defendants had an opportunity to question Dr. Gilbert about this research, Dr. Gilbert declined to provide any details about it, or, more importantly, allow Defendants to review the data. Because this data has not been published, peer-reviewed, or provided to Defendants, Dr. Gilbert will not be allowed to testify about her preliminary observations or conclusions. She will, however, be permitted to testify that she is currently conducting research into whether developmental exposure to TCE has a greater impact than adult exposure to TCE.

For the above reasons, this motion is GRANTED IN PART.

3. **Motion Regarding Certain Statements By Plaintiff's Experts (Doc. 336).**

Defendants move to preclude Plaintiff from referring to any evidence that attempts to deny or dispute certain statements made by Dr. Gilbert, Dr. Parmet, or Mr. Van Dyke. Mot. at 7.

The motion is DENIED. Any inconsistency in the experts' testimony is a question for the jury to consider in determining how much weight to give each expert's testimony, not a question of admissibility for the Court to decide.

---

[4] MRL+/+ is a strain of mouse used in Dr. Gilbert's research.

**5.     Motion to Exclude References to "Unsubstantiated or Irrelevant" Medical Conditions (Doc. 338).**

Defendants move to exclude any reference to any medical conditions or procedures that, in their opinion, have not been reliably diagnosed or connected to Plaintiff's alleged exposure to TCE.  Specifically, Defendants move to exclude references to "Barrett's esophagus, musculoskeletal injuries, general anxiety, medication for such anxiety, a current and actual case of cancer, [and] the beginning stages to cancer."  Mot. at 5-6.

Plaintiff responds that she has no intention of offering evidence of Barrett's esophagus, but she does intend to offer evidence:  (1) that the chronic use of steroids from her treatment for AIH has caused her musculoskeletal injuries and put her at future risk of other musculoskeletal injuries; (2) that her AIH caused her mental anguish; and (3) that she is at a heightened risk of cancer as evidenced by precancerous cells on her ovary, and this heightened risk of cancer has caused her mental anguish.

Defendants' motion is GRANTED IN PART.  Plaintiff is permitted to offer evidence of the first two categories of injuries.  Plaintiff may be permitted to present evidence that she is at heightened risk of cancer and that this has caused her mental anguish, depending on how the evidence develops at trial.  The Court reserves ruling on this portion of the motion.

**6.     Motion to Exclude Reference to Plaintiff's Alleged Vulnerability to Developing AIH as a Result of TCE Exposure (Doc. 339).**

Defendants move to exclude any "references to the idea that Plaintiff was vulnerable or more susceptible to developing AIH as a result of her alleged exposure to TCE."  Mot. at 4.

The Court has already addressed this argument in holding that Dr. Gilbert's opinion is admissible.  The Court found that Dr. Gilbert's report provided "a reliable basis for her opinion that Plaintiff's exposure to TCE was such that, over time, acting on a genetic predisposition, it

caused Plaintiff to develop AIH, and it was not idiopathic." Order Den. Mot. to Exclude Pl.'s Experts (Doc. 285) at 5.

The motion is DENIED.

**7.      Motion to Exclude References to Government Reports (Doc. 340).**

Defendants move to exclude any reference to eight government reports. Mot. at 7-8. Defendants contend they contain multiple levels of inadmissible hearsay and are also inadmissible under Federal Rule of Evidence ("FRE") 403 because any probative value they might have is outweighed by the risk of confusion of the issues, undue delay, and wasting time. Defendants are concerned that Plaintiff's counsel will attempt to sow confusion in the jurors' minds by waving these documents in the courtroom and claiming they prove Plaintiff was exposed to TCE, and that this exposure caused her AIH.

Plaintiff contends the documents fall under the business record (FRE 803(6)) and public record (FRE 803(8)) exceptions to the hearsay rule, and that the documents are admissible for other, non-hearsay purposes such as notice.

These reports are generally admissible; the Eighth Circuit has allowed the admission of similar government reports under the public records exception to Rule 803(8). *See Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 618-19 (8th Cir. 1983) (upholding the district court's admission of epidemiological studies conducted by the federal Center for Disease Control and various state health departments and allowing plaintiff's expert to testify about these studies in a products liability action). And Defendants have failed to identify any specific portion of these reports which are not admissible.

The motion is DENIED. The Court cautions Plaintiff that if these documents are admitted for a limited purpose, such as notice, she will not be permitted to use them for some

7

other purpose, such as arguing during closings that the documents prove general or specific causation.

8.      **Motion to Exclude References to Locations at which Plaintiff has No Admissible Evidence She was Exposed to TCE (Doc. 341).**

Defendants move to exclude any reference to alleged TCE exposure at fifteen locations. Mot. at 2-3. Defendant argues Plaintiff has no admissible evidence that any measurable quantity of TCE was ever present at these locations, or that if it was present, its presence is attributable to Defendants' conduct.

Plaintiff's hydrology experts have offered plausible explanations for the various low or non-detectable levels of TCE found in the well data cited by Defendants as proof that there was never any TCE present at these locations. Plaintiff's experts also have developed a model showing that there was TCE at these locations during the relevant time. Consequently, Defendants' arguments go to the weight this evidence should receive, not its admissibility.

The motion is DENIED.

9.      **Motion to Exclude References to Any In Utero Exposure to TCE (Doc. 342).**

Defendants move to exclude any reference to Plaintiff's purported in utero exposure to TCE. Mot. at 5. Defendants argue Plaintiff failed to allege or disclose during discovery any in utero exposure, nor has she identified any location where her mother was allegedly exposed to TCE while pregnant.

After reviewing the record, the Court finds that: (1) Plaintiff disclosed this theory of exposure in her Amended Complaint (Doc. 19 at ¶ 19); (2) Plaintiff's expert Dr. Parmet discussed it in his expert report (Doc. 196-1); (3) Defendants had an opportunity to question Plaintiff's mother about the locations she may have been exposed to TCE while Plaintiff was in utero; and (4) Defendants' expert Dr. Guzelian offered a rebuttal opinion as to this theory of

8

exposure.  Although Plaintiff's disclosure was threadbare, Defendants have not been harmed by any late or incomplete disclosure.  That said, consistent with its earlier rulings, the Court restricts the locations Plaintiff may claim she was exposed to TCE while in utero to her childhood home and those nineteen locations she identified in her July 11, 2014, affidavit.

The motion is DENIED.

12. **Motion to Exclude References to Any Vapor Intrusion Theory of Exposure to TCE (Doc. 345).**

Defendants move to exclude any reference to the theory that Plaintiff was exposed to TCE through vapor intrusion.  Defendants argue there is scant credible evidence that Plaintiff inhaled TCE emanating from the soil, thus the jury should not hear testimony or argument relating to this theory.

Because Plaintiff's experts have opined that Plaintiff was exposed to TCE through vapor intrusion, Defendants' arguments go to the weight this testimony should be given, not its admissibility.  The motion is DENIED.

13. **Motion to Exclude References to the Size, Structure, Resources, or Locations of Defendants' Parent Company and Defendants' Counsel (Doc. 346).**

Defendants move to exclude any reference to the size, corporate structure, resources, and locations of any entity (or its owners or shareholders) that are not a party to this lawsuit, or to defense counsel's law firm, Dentons US LLP.

The motion is GRANTED.  In discussing her punitive damages claim, Plaintiff is free to introduce any admissible evidence she has concerning Defendants' resources, but not the resources of Defendants' parent company or their law firm.

**14.   Motion to Exclude References to Media Depictions of Toxic Tort Litigation (Doc. 347).**

Defendants move to exclude any reference to depictions of toxic tort litigation in books, films, novels, and other media.  This includes, but is not limited to, references to the film *Erin Brockovich* and the book and film *A Civil Action*.  Plaintiff does not oppose the motion.

The motion is GRANTED.

**15.   Motion to Exclude Evidence of or References to Financial Information that Relates Only to Entities that are Not Parties to This Suit (Doc. 348).**

Defendants move to exclude any reference to financial information that relates only to entities that are not parties to this lawsuit, namely, Defendants' parent corporation, Schaeffler Group AG, a German company.

The motion is GRANTED.

**17.   Motion to Exclude Evidence or References to the Exclusion of Defendants' Expert Witness Dr. Guzelian in *Harvey v. Rines* (Doc. 350).**

Defendants move to preclude Plaintiff from referring to the federal district court's decision in *Harvey v. Rines*[5] excluding Dr. Guzelian as an expert witness.  Defendants argue that decision is irrelevant to this case because, as the Court previously found, the facts and issues in *Harvey* were not analogous to those here, and the *Harvey* decision appears to have been driven as much by the defendant's failure to submit a well-researched brief as by the judge's perception that Dr. Guzelian lacked the requisite expertise.  Order Den. in Part Mot. to Exclude Defs.' Experts (Doc. 286) at 7.

In response, Plaintiff contends the *Harvey* court described Dr. Guzelian as an indiscriminate expert witness.  *See Harvey*, 1999 WL 33117105, at *8 ("Dr. Guzelian's deposition testimony . . . clearly reveals that his proffered opinions are based primarily upon a

---

[5] No. 98-85-P-DMC, 1999 WL 33117105 (D. Me. Jan. 19, 1999).

review of certain medical literature undertaken specifically for this case;" his proposed testimony is "more unscientific speculation offered by a genuine scientist that it is genuinely scientific.") Plaintiff contends this observation is highly probative of his credibility and should be admissible for impeachment purposes.

The Court holds this evidence is inadmissible under Rule 403. The probative value of admitting the *Harvey* court's *Daubert* ruling would be outweighed by the danger of unfair prejudice since a jury might give it disproportionate weight and abandon its duty to independently consider Dr. Guzelian's qualifications and methodology as applied to the facts and circumstances of this case. *See Estate of Thompson v. Kawasaki Heavy Indus., Ltd.*, 933 F. Supp. 2d 1111, 1152 (N.D. Iowa 2013) (precluding defendant from impeaching expert witness with previous cases in which his testimony had been excluded). It would also likely result in undue delay and waste of time as the parties conduct a mini-trial over exactly why the *Harvey* court excluded Dr. Guzelian's testimony and discussed the differences between the two cases. *Id.* Finally, admitting the *Harvey* ruling is unnecessary. Plaintiff can impeach Dr. Guzelian's credibility without mentioning the *Harvey* ruling by vigorously cross-examining his qualifications and methodology used in this case and presenting more credible testimony from better qualified experts. *Id.*

The motion is GRANTED.

**18.    Motion to Exclude References to Burns & McDonnell (Doc. 351).**

Defendants move to preclude Plaintiff from introducing any evidence or making any reference to Burns & McDonnell that equates the company with certain conduct of its former employee, Randy Overton. Mot. at 4. Defendants do not specify what this conduct is, or what exactly they seek to exclude.

11

Courts in previous cases have been critical of Mr. Overton's work performing well sampling and investigating TCE contamination at the FAG facility while employed by Burns & McDonnell. For example, Judge Stevens found that "FAG and Overton were clearly not interested in discovering shallow soil or groundwater contamination at FAG during their 1996 investigation. If FAG had been interested in defining the extent of contamination at FAG or in locating potential sources of such testing could and should have been done." *FAG Bearings Corp. v. Gulf States Paper Co.*, No. 95-5081-CV-SW-8, 1998 WL 919115, at *10 (W.D. Mo. Sept. 30, 1998).

Randy Overton is no longer with Burns & McDonnell and is not involved with this case. But Defendant's sole hydrology expert, Wayne Weber, who was an employee of the company charged with oversight and engineering work at the Newton County Superfund site, and who Plaintiff alleges has been paid millions of dollars to prepare reports for Defendants, now works at Burns & McDonnell.

Plaintiff contends that Burns & McDonnell, through Randy Overton, was and is an integral part of FAG's conduct by refusing to test, control, and define the contamination, and possibly made some of the contamination worse in the course of its testing. *See id.* ("It is possible that Overton's 1996 investigation at FAG contributed to the spread of contamination."). Plaintiff argues it is impossible to separate Burns & McDonnell from Defendants' history at this site, and that the fact that Mr. Weber has moved his employment from one company hired by Defendants to another company hired by Defendants goes to his credibility and bias as an expert witness because of the financial gain to him of pleasing Defendants with his testimony.

The Court holds it does not have enough information to rule on this motion. This evidence may or may not be admissible depending on how the evidence develops at trial and for what purpose it is offered. Accordingly, the motion is DENIED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Date:  February 12, 2016                     /s/ Greg Kays
                                             GREG KAYS, CHIEF JUDGE
                                             UNITED STATES DISTRICT COURT