**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| JODELLE L. KIRK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 3:13-cv-05032-DGK |
| | ) | |
| SCHAEFFLER GROUP USA, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANNOTATED PROPOSED JURY INSTRUCTIONS AND**
**OBJECTIONS TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

**Plaintiff's Proposed Instruction No. \_\_:  Jurors asking questions of witnesses.**

Defendants object to Plaintiff's proposed instruction on jurors questioning witnesses insofar as there is no need in this case for jurors to question witnesses, making the instruction unnecessary.  As the Court knows, the time in which to try this case is already limited.  To invite jurors to conduct additional questioning of witnesses would merely cause additional delay to the trial, unnecessarily prolonging the proceedings.

# INSTRUCTION NO.____

I have decided to accept as proved the following facts: [1]

1.      Plaintiff Jodelle L. Kirk is a resident and citizen of the State of Missouri

2.      Plaintiff  was born on October 4, 1988.

3.      Plaintiff resides at 3130 Woodland Drive, Silver Creek, Newton County, Missouri 64804; this same home previously was known as 513 Woodland Drive before addresses in the neighborhood were renumbered.

4.      Since 1987, Ms. Kirk's mother, Janice Kirk resided in at 3130 Woodland Drive formerly known as 513 Woodland Drive, Joplin, Newton County, Missouri, 64804 including throughout her pregnancy with Ms. Kirk.

5.      FAG Bearings, LLC, is the same entity as FAG Bearings Corporation.

6.      FAG Bearings Corporation operated a manufacturing plant at 3900 Rangeline Road, Joplin, Missouri, until at least June 6, 2005.[*]

7.      Trichloroethylene ("TCE") is a man-made volatile organic compound used as a solvent, often for removing grease from metal parts.

8.      TCE has a density that is greater than water, a high vapor pressure, a low affinity for soil particles, low solubility in water, and naturally degrades at a slow rate.

9.      FAG Bearings used a TCE vapor degreasing system in its manufacturing process until 1983, using TCE as a solvent for removing grease from metal parts.

10.      In April, May, and December 1991, the Missouri Department of Health ("MDOH") and the United States Environmental Protection Agency ("EPA") discovered TCE contamination in certain residential wells of Saginaw and Silver Creek Villages.

---

[1] Except where expressly indicated, all of these facts were stipulated to by the parties in Doc. 389.  All other facts were found by the Court in its Findings of Findings of "Undisputed Material Facts" in its January 1, 2016 Order Granting in Part Motion for Summary Judgment (Doc. 333 at 4-7.).  Those facts are indicated with an asterisk (*).

11.     In August 1991, the EPA implemented a emergency removal action and provided bottled drinking water to Silver Creek homes where TCE concentrations above the EPA's Maximum Contaminant Level ("MCL") had been detected.

12.     Plaintiff's family received documents regarding the TCE contamination in Silver Creek and Saginaw, including a variety of fact sheets, letters, notices, and other information regarding the TCE contamination and subsequent remediation efforts.[*]

13.     In or about November 1991, Plaintiff's family received a fact sheet from the MDOH regarding the laboratory test results for TCE in water samples and potential health risks from exposure to TCE.[*]

14.     Between November 13 and 15, 1991, the MDOH conducted laboratory testing of the water supply at Plaintiff's home and provided the results to her family.  This testing purportedly showed there was less than one microgram per liter of TCE in the sample, a health risk the MDOH described as "so small as to be virtually non-existent."[*]

15.     Between November 1991 and March 1992, Plaintiff's family received several letters, information sheets, agreements, contracts, and bills from the Village of Silver Creek regarding the construction and implementation of the public water system, meetings to discuss the TCE contamination, legal representation to "pursue FAG's liability and obtain public water," and the results of well water testing.[*]

16.     The EPA provided Plaintiff's parents with a December 1991 letter and January 1992 fact sheet regarding the extent of TCE contamination.[*]

17.     The December 1991 letter from the EPA provided notice of a public meeting on January 6, 1992 "to answer any questions or concerns you may have about this site." [*]

18.     The January 1992 EPA fact sheet discussed EPA measures to limit potential risks to residents and an upcoming EPA-led public meeting.[*]

19.     Pam Stanley, a Silver Creek resident, testified that she attended meetings to discuss the TCE contamination, and that Plaintiff's parents also attended those meetings.[*]

20.     On or about February 6, 1992, Plaintiff's family received letters from the EPA sharing the results of a water sample taken from their residence.[*]

21.     Silver Creek began installing a public water system in 1992

22.     Saginaw began installing a public water system in 1994.

23.     The February 6, 1992 letters from the EPA stated that no TCE was detected in Kirk family's water supply.

24.     In a mailing postmarked March 26, 1992, Plaintiff's father received a March 23, 1992, fact sheet from the Missouri Department of Natural Resource ("MDNR") describing the history and extent of the TCE contamination in Silver Creek; various EPA, MDNR, and MDOH public meetings in 1991 and 1992 to address the contamination; and "a chronology of significant site events."[*]

25.     Plaintiff's family also received a September 1993 EPA fact sheet regarding trust funds available to "allow [the community] to hire an independent expert to help them interpret technical data, understand site hazards, and become more knowledgeable about the different technologies that are being used to clean up sites."[*]

26.     In 2002, Ms. Kirk was diagnosed with Autoimmune Hepatitis, type 1, which requires medical attention and medication to control.

27.     Plaintiff has never sought treatment from any psychiatrists or psychologists.[*]

28.     None of Plaintiff's treating physicians have diagnosed her with any mental or emotional condition such as an anxiety disorder or depression.[*]

29.     None of Plaintiff's treating physicians attributed any of her anxiety to her purported exposure to TCE.[*]

30.     From approximately 1973 to 1982, FAG Bearings Corporation produced ball bearings using TCE as a commercial degreaser and parts cleaner.

31.     In 1991, the Missouri Department of Health (MDOH) discovered the TCE contamination in certain residential wells in the village of Silver Creek.

32.     FAG Bearings was the sole cause of the TCE contamination found in Silver Creek and Saginaw.

33.     FAG Bearings released TCE into the environment in a number of different ways.

34.     FAG Bearings released approximately 12,000 to 25,000 gallons of TCE through waste, spills, leaks, overflowing tanks, incidental use of TCE, and dumping of "still bottoms" into the ground at FAG Bearings' facility.

35.     During investigations at FAG Bearings' facility from 1991 to 1996, TCE or TCE-related chemicals were detected in at least 36 different locations across the FAG Bearings' facility.

36.     FAG Bearings' employees occasionally dumped or pumped TCE directly into the ground. The highest levels of TCE contamination were found at or near these locations.

37.     The "trail," or plume, of contamination runs directly from these locations to residential wells located south of FAG Bearings' property.

38.     FAG Bearings was "100%" responsible for the TCE contamination in Silver Creek, Saginaw, and on FAG Bearings' property.

39.    FAG Bearings could not account for approximately 30,000 gallons of TCE it purchased.

40.    FAG Bearings' vapor recovery system frequently and repeatedly malfunctioned, releasing large amounts of TCE into the air over a long period of time.

41.    FAG Bearings' own experts and employees have opined that these vapors then condensed and returned to the soil on FAG Bearings' property.

42.    [To be read only if punitives are not bifurcated] The releases of TCE on FAG Bearings' property were predictable and foreseeable.

43.    [To be read only if punitives are not bifurcated] FAG Bearings knew that the vapor recovery system malfunctioned and allowed TCE to escape regularly and repeatedly.

44.    [To be read only if punitives are not bifurcated] As of September 30, 1998, FAG Bearings totally refused to cooperate in investigation and remediation of the TCE contamination.

45.    Plaintiff has alleged that she was exposed to TCE at the following specific locations in Silver Creek or Saginaw:

> a. Her childhood residence at 3130 (formerly 513) Woodland Drive;
> b. The Banfield residence at 3314 Silver Creek Drive;
> c. The Parrish residence at 3428 Woodland Drive, including a portion of Thurman Creek that runs through the backyard of this residence;
> d. The Robertson residence at 4409 Malaura Lane;
> e. The Strella residence at 3112 Woodland Drive;
> f. The Johnson residence at 4509 Bradley Street;
> g. The Bickett residence at 3808 Duquesne Street, including a pond of water west of the Bickett residence;
> h. The Switzer residence at 3914 Duquesne Street;
> i. The Horine residence at 3275 Ivy Lane;
> j. The Sutton residence at 3611 Silver Creek Drive;
> k. The Garwood residence at 3101 Silver Creek Drive;
> l. The Johnson residence at 3014 Silver Creek Drive;
> m. The Vincent residence at 4415 Hickory Lane;
> n. The Simpson residence at 4508 Middleton;

o. Saginaw Baptist Church, at 406 Bartlett Avenue;
p. Christ's Community Methodist Church, at 2700 E. 44th Street;
q. Shoal Creek near the Tipton Ford access point;
r. Waters Edge Camping and Kayaking, at 6614 Old Highway71;
s. Thompson Orchard and Berry Farm, Bees and Berries, at 707 Saginaw Road; and
t. The fields near Duquesne Road.

46.     Plaintiff's residence was connected to the city water supply in 1992.

47.     The groundwater at Plaintiff's residence was tested for TCE on January 3, 1992, and on June 1, 1995. In both cases, no TCE was detected at a level above the laboratory detection limit of 1 microgram per liter (µg/L).

48.     The groundwater at the Banfield Residence was tested for TCE on January 4, 1992, and TCE was detected at a level of 1.8 µg/L at that time.

49.     The groundwater at the Parrish residence located at 3428 Woodland Drive was tested for TCE on five occasions. On December 17, 1991, TCE was detected at a level of 21 µg/L. On January 1, 1992, TCE was detected at a level of 26 µg/L. On May 20, 1993, TCE was detected at a level of 18 µg/L. On May 23, 1995, two water samples were tested, and TCE was detected at levels of 24 µg/L and 21.9 µg/L.

50.     The groundwater at the Robertson residence at 4409 Malaura Lane was tested for TCE on December 27, 1991, and at that time, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

51.     The groundwater at the Strella Residence was tested for TCE on January 3, 1992, and at that time, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

52.     The groundwater at 4509 Bradley Street was tested for TCE on three occasions. On November 5, 1991, no TCE was detected at a level above the laboratory detection limit of 1

µg/L. On January 2, 1992, TCE was detected at a level of 1 µg/L. On June 4, 1995, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

53.     The groundwater at the Switzer Residence was tested for TCE on two occasions, on January 3, 1992, and on June 3, 1995. In both cases, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

54.     The groundwater at the Sutton Residence was tested for TCE on January 14, 1992, and at that time, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

55.     The groundwater at 3101 Silver Creek Drive was tested for TCE on two occasions, on January 4, 1992 and on May 31, 1995. In both cases, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

56.     The groundwater at 3014 Silver Creek Drive was tested for TCE on two occasions, on October 10, 1991 and on January 4, 1992. In both cases, no TCE was detected at a level above the laboratory detection limit.

57.     The groundwater at 4415 Hickory Lane was tested for TCE on two occasions, on November 12, 1991, and December 20, 1991. In both cases, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

58.     The groundwater at 4508 Middleton was tested for TCE on January 3, 1992, and at that time, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

59.     The groundwater at Saginaw Baptist Church was tested for TCE on four occasions. On January 15, 1992, TCE was detected at a level of 3.8 µg/L. On February 25, 1993, TCE was detected at a level of 6.3 µg/L. On June 2, 1995, two water samples were tested, and TCE was detected at levels of 4.2 µg/L and 3.8 µg/L.

60.     [To be read only if punitives are not bifurcated] Defendant Schaeffler Group USA, Inc. is the successor to FAG Bearings Corporation.

You must accept these facts as proved.

SOURCE: 8th Circuit Model Civil Jury Instructions (2014), No. 2.05 (Judicial Notice)

**Plaintiff's Proposed Instruction No. __: Judicial Notice**

Defendants object to Plaintiff's proposed formulation of the instruction taking judicial notice of facts already decided.

First, certain facts listed by Plaintiff are only relevant to a determination of punitive damages.[2]  Accordingly, if the Court chooses to bifurcate punitive damages, these facts should not be included in the instructions during the liability and compensatory damages phase of trial.

Second, to the extent these facts listed by Plaintiff are included, all other relevant facts already accepted as proven and undisputed by this Court should likewise be included in the interest of completeness and to streamline the trial as much as possible.  These additional facts are reflected in Defendants' proposed instruction on judicial notice.

---

[2] These facts include that Schaeffler Group USA, Inc. is the successor to FAG Bearings Corporation, that Schaeffler is liable for any liabilities FAG Bearings Corporation may have in this case, that the release of TCE was predictable and foreseeable, that FAG Bearings knew that the vapor recovery system malfunctioned and allowed the escape of TCE regularly and repeatedly, and that FAG Bearings refused to cooperate in investigation and remediation.

**INSTRUCTION NO.____**

In this case, Defendants are corporations.  The mere fact that Defendants are corporations does not mean they are entitled to any lesser consideration by you.  All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

SOURCE:  Sand Modern Federal Jury Instructions Civil, 72.01; *Smith v. Hy-Vee*, No. 07-00565-CV-W-DW, Doc. 157 (W.D. Mo. Apr. 9, 2009).

**INSTRUCTION NO.___**

On Plaintiff's claim of personal injury based on negligence, your verdict must be for Plaintiff if you believe:

First, FAG Bearings was negligent (as submitted in Instruction Number ____) in its handling, use, or disposal of TCE at the Joplin plant; and

Second, Plaintiff's injuries and damages were directly caused by such negligence, which, in turn, requires proof that:

a.  Plaintiff was exposed to TCE in an amount significant enough to cause her disease, AIH;

b.  There is a demonstrable relationship between TCE exposure and human AIH (i.e., exposure to TCE can cause AIH in humans);

c.  Plaintiff has been diagnosed with AIH;

d.  Plaintiff's AIH is consistent with exposure to TCE; and

e.  FAG Bearings was responsible for the substance alleged to have caused the AIH diagnosed in Plaintiff.

SOURCE: MAI 31.00 (7th Ed.) (modified); *Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 178 (Mo. Ct. App. 1988); Doc. 333, Order Granting in Part Motion for Summary Judgment at 9–10 (citing *Elam* and adopting elements for causation in this case)

**Plaintiff's Proposed Instruction No. __:  Strict Liability**

Defendants object to Plaintiff's proposed instruction on her strict liability claim of "abnormally dangerous activity" for multiple reasons.[3]

First, whether a certain activity is "abnormally dangerous" is a legal question that cannot be submitted to the jury.  The commentary to the Restatement (Second) of Torts § 520 explains:

> Whether the activity is an abnormally dangerous one ***is to be determined by the court***, upon consideration of all the factors listed in this Section, and the weight given to each that it merits upon the facts in evidence.  In this it differs from questions of negligence. . . .  The imposition of strict liability . . . involves a characterization of the defendant's activity or enterprise itself, and a decision as to whether he is free to conduct it at all without becoming subject to liability for the harm that ensues even though he has used all reasonable care.  ***This calls for a decision of the court; and it is no part of the province of the jury*** to decide whether an industrial enterprise upon which the community's prosperity might depend is located in the wrong place or whether such an activity as blasting is to be permitted without liability in the center of a large city.

Restatement (Second) of Torts § 520 (comment l. Function of court.) (emphasis added); *see also Fletcher v. Conoco Pipe Line Co.*, 129 F. Supp. 2d 1255, 1259 (W.D. Mo. 2001) (concluding "the doctrine of strict liability does not apply" to operation of petroleum pipelines "as a matter of law").  In short, this is purely a question of law.  Legal questions should not be submitted to the jury.  *See Eagle Star Group, Inc. v. Marcus*, 334 S.W.3d 548, 556 (Mo. App. W.D. 2010) ("[T]he function of the jury [is] to decide fact issues; they should not be asked to pass upon questions of law.") (quotation omitted).[4]

---

[3] The specific basis of Plaintiff's strict liability claim was unclear to Defendants until the meet-and-confer call with Plaintiff's counsel concerning the jury instructions on February 15, 2016, at which time Plaintiff's counsel made clear her only basis for strict liability was "abnormally dangerous activity."

[4] To be sure, Plaintiff's strict liability claim fails as a question of law as well.  Only two activities have been found to be abnormally dangerous in Missouri:  blasting and radioactive nuclear emissions.  *Rychnovsky v. Cole*, 119 S.W.3d 204, 211 (Mo. Ct. App. 2003).

Second, Plaintiff's proposed instruction is not directed to an activity, but instead to the manner in which FAG Bearings engaged in an activity, thereby improperly conflating strict liability with negligence. The activity in which FAG Bearings engaged was using a TCE vapor degreasing system in its manufacturing process, using TCE as a solvent for removing grease from metal parts. Plaintiff's proposed instruction tries to recharacterize FAG Bearings' "activity" as "releasing trichloroethylene into the ground water." That is not the *activity*, but rather, the *manner* in which FAG Bearings conducted the activity. The U.S. District Court of the Eastern District of Missouri recently rejected a very similar attempt to broaden a strict liability claim for "abnormally dangerous activity" in *Wilson Road Development Corp. v. Fronabarger Concreters, Inc.*, 971 F.Supp.2d 896, 916-17 (E.D. Mo. 2013):

> Plaintiffs argue that [Defendant's] land-disturbing activities were abnormally dangerous, because [Defendant] "excavated a known Superfund Site *without installing erosion control measures, and stockpiled contaminated soil near a ravine* " nearby the Dumey property. . . . Plaintiffs true complaint is with the *manner* in which [Defendant] conducted its activity, and not the activity itself. Plaintiffs claim that [Defendant] excavated the land *in such a manner* that led to increased erosion onto their property. Plaintiffs have not shown [Defendant's] excavation to be akin to activities involving blasting and nuclear emissions, where the risk of harm simply cannot be lessened by additional precautions and care. Plaintiffs' claim is one of negligence, not strict liability.

*Id.* (emphasis original). The same is true here as well. Plaintiff's argument is not that the sheer use of TCE is abnormally dangerous, but that FAG Bearings was negligent in how it used that TCE in its operations. That is a negligence claim and it cannot be properly presented to the jury as a strict liability claim.

Because the question of strict liability cannot be submitted to the jury, Defendants do not submit an instruction on strict liability.

**INSTRUCTION NO.___**

Your verdict on Plaintiff's negligence claim must be for Defendants unless you believe FAG Bearings was negligent, as submitted in Instruction Number _____, above.

Your verdict must also be for Defendants unless you believe that, as a result of such negligence, Plaintiff's injuries and damages were caused by FAG Bearings, as submitted in Instruction Number _____, above.

SOURCE: MAI 33.04(4) (7th Ed.) (modified); *Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 178 (Mo. Ct. App. 1988); Doc. 333, Order Granting in Part Motion for Summary Judgment at 9–10 (citing *Elam* and adopting elements for causation in this case)

**Plaintiff's Proposed Instruction No. __:  Negligence.**

Defendants object to Plaintiff's proposed instruction on negligence for multiple reasons.

First, Plaintiff's proposed instruction amounts to a loaded question, improperly guiding the jurors to her preferred outcome by front-loading the question with a list of supposedly "already established" facts.  Even if these facts had indeed all been established, there is no conceivable reason to include them in the body of the negligence instruction except to persuade the jury to decide in Plaintiff's favor.  *See White v. Curators of Univ. of Mo.*, 937 S.W.2d 366, 368 (Mo. App. S.D. 1996) (A jury instruction must be "simple, brief, impartial [and] free from argument . . . .").  But several of these supposed facts have ***not*** been established.  For example, whether FAG Bearings failed to investigate the TCE contamination or failed to warn about TCE contamination are far from "established."  The inclusion of Plaintiff's argumentative preamble to the negligence instruction would be improper.

Second, Plaintiff's proposed negligence instruction contains an improper formulation of the test for causation.  Based on MAI 17.02 (multiple negligent acts) and 19.01 (multiple causes of damage), Plaintiff states the test as whether Defendants' alleged negligence "directly caused or directly contributed to cause damage to plaintiff."  That is incorrect.  First, Plaintiff has not alleged any negligent acts other than those of Defendants caused her injury.  Instead—despite citing MAI 17.02—Plaintiff's real basis for this instruction appears to be MAI 19.01 on the theory that Plaintiff was uniquely susceptible to AIH.  That theory does not support the "directly contributed to cause" instruction, however.  Instead, while MAI 19.01 may be proper where a plaintiff has a preexisting condition that she argues contributed to the cause of the injury alleged along with the conduct of the defendant, Plaintiff has failed to allege a preexisting condition or any other contributory cause for her damages aside from Defendants' conduct.  Moreover, it is

clear under Missouri law that that "[s]usceptibility is not causation." *Wailand v. Anheuser Busch Inc.*, 861 S.W.2d 710, 717 (Mo. Ct. App. 1993). "A prerequisite for the use of MAI 19.01 and either of the two options available requires there to be ***two or more causes of damage***." *Id.* (emphasis added) ("Appellants assert that Wailand's preexisting arteriosclerosis condition made him more susceptible to a stroke, constituting a cause of damage within the meaning of MAI 19.01. Such argument is without merit.") *See also Higby v. Wein*, 996 S.W.2d 95, 98-99 (Mo. Ct. App. 1999). In short, Plaintiff's alleged susceptibility is not a basis to provide the "directly contributed to cause" instruction to the jury and Defendant's proposed "directly caused" instruction is the only proper way to establish the necessary "but for" causation in this case.[5]

---

[5] Under Missouri law, "the 'but for' test for causation is applicable in all cases except those involving two independent torts, either of which is sufficient in and of itself to cause the injury, i.e. the 'two fires' cases." *Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852, 862-63 (Mo. en banc 1993). "Two fires" cases involve situations in which "there are two independent torts, either of which by itself would have caused the injury." *Id.* at 861. Because the "but for" causation test fails to accurately test for causation in these situations, the substantial factor test becomes the means of establishing actual causation in "two fires" cases. *Id.*

**INSTRUCTION NO.___**

On Plaintiff's claim of personal injury based on negligence per se, your verdict must be for Plaintiff if you believe:

First, FAG Bearings violated:

    a.    The Clean Water Act, 33 U.S.C. § 1251 ([insert provision]), by [describe requirements to establish violation of specific provision]; or

    b.    The Resource Conservation and Recovery Act, 42 U.S.C. § 6901 (([insert provision]), by [describe requirements to establish violation of specific provision]; or

    c.    The Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601 ([insert provision]), by [describe requirements to establish violation of specific provision]; or

    d.    The Missouri Hazardous Waste Management Law, Mo. Rev. State. § 260.350 ([insert provision]), by [describe requirements to establish violation of specific provision].

Second, the violation of the statute(s) directly caused Plaintiff Jodelle L. Kirk's injuries and damages, which, in turn, requires proof that:

    a.    Plaintiff was exposed to TCE in an amount significant enough to cause her disease, AIH;

    b.    There is a demonstrable relationship between TCE exposure and human AIH (i.e., exposure to TCE can cause AIH in humans);

    c.    Plaintiff has been diagnosed with AIH;

    d.    Plaintiff's AIH is consistent with exposure to TCE; and

e.	FAG Bearings was responsible for the substance alleged to have caused the AIH

diagnosed in Plaintiff.

<u>SOURCE:</u> MAI 31.00 (7th Ed.) (modified); *Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 178 (Mo. Ct. App. 1988); Doc. 333, Order Granting in Part Motion for Summary Judgment at 9–10 (citing *Elam* and adopting elements for causation in this case)

**Plaintiff's Proposed Instruction No. __:  Negligence Per Se.**

Defendants object to Plaintiff's proposed instruction on negligence per se for multiple reasons.

First, Plaintiff has thus far failed to specify which provisions of the four enumerated Acts it alleges Defendants have violated.  As a result, without more, it is impossible, based on Plaintiff's proposed instruction, to determine whether Defendants violated any particular provision.  It goes without saying, these Acts are substantial and legally complex laws and a jury is incapable of determining whether there has been a "violation" of any of them without further guidance as to what would constitute a violation.  If, as here, "an instruction fails to advise the jury what acts or omissions of the party would constitute liability, the instruction is a roving commission."  *Centerre Bank of Kansas City, National Association v. Angle*, 976 S.W.2d 608, 617 (Mo. App. W.D.1998).  Likewise, a jury instruction may also be considered a roving commission when it is too general or where it submits a question to the jury in a broad, abstract way without any limitation to the facts and law.  *Id.*  Such instructions are prohibited.  *Hepler v. Caruthersville Supermarket Co.*, 102 S.W.3d 564, 568 (Mo.App. S.D. 2003) ("Prejudicial and reversible error occurs when an instruction is proffered to a jury that gives the jury a roving commission.").

"To avoid a roving commission, the court must instruct the jurors regarding the specific conduct that renders the defendant liable."  *Rinehart v. Shelter General Ins. Co.*, 261 S.W.3d 583, 594 (Mo.App. W.D.2008).   Defendants' proposed instruction for negligence per se includes bracketed fields which must be populated with guiding information as to the specific provisions alleged violated and the requirements to establish such a violation.  Absent that information, this instruction does not enable the jury to properly answer the question put to it and would be error.

Second, Plaintiff's proposed instruction includes as questions for the jury whether Plaintiff "is a member of the class of persons" that the statutes "intended to protect," and whether Plaintiff's "injury is of the type" that the statutes were designed to prevent. Those questions are matters of statutory interpretation. *See King v. Morgan*, 873 S.W. 2d 272, 275-79 (1994) (determining whether plaintiff and injury were within scope of statute as matter of statutory interpretation, including looking to "legislative intent"). As such, they are questions of law. *City of St. Joseph v. Village of Country Club*, 163 S.W.3d 905, 907 (Mo. banc 2005) ("An issue of statutory interpretation is a question of law, not fact."); *Lincoln Industrial, Inc. v. Dir. of Rev.*, 51 S.W.3d 462, 464 (Mo. banc 2001) ("Statutory construction is strictly a matter of law."). Questions of law should not be submitted to the jury. *See Eagle Star Group, Inc. v. Marcus*, 334 S.W.3d 548, 556 (Mo. App. W.D. 2010) ("[T]he function of the jury [is] to decide fact issues; they should not be asked to pass upon questions of law.")

Third, Plaintiff's proposed instruction repeats the same erroneous instruction on causation discussed above. The correct standard is whether Defendants "directly caused" Plaintiff's injury, not whether Defendants "directly caused or directly contributed to cause" Plaintiff's injury.

**INSTRUCTION NO.____**

Your verdict must be for Defendants unless you believe FAG Bearings violated one of

the listed legal requirements and that the violation caused her injury, as submitted in Instruction

Number _____, above.

SOURCE: MAI 33.04(2) (7th Ed.) (modified); *Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 178 (Mo.
Ct. App. 1988); Doc. 333, Order Granting in Part Motion for Summary Judgment at 9–10 (citing
*Elam* and adopting elements for causation in this case)

**INSTRUCTION NO.____**

If you find in favor of Plaintiff on Plaintiff's claims of personal injury based on negligence or negligence per se, then you must award Plaintiff such sum as you believe will fairly and just compensate Plaintiff for any damages you believe she sustained and is reasonably certain to sustain the future as a direct result of the occurrence mentioned in the evidence

<u>SOURCE:</u> MAI 4.01 (7th Ed.)

**INSTRUCTION NO.____**

Your verdict must be for Defendants unless you believe Plaintiff sustained damage.

SOURCE: MAI 33.04(4) (7th Ed.) (modified)

**Plaintiff's Proposed Instruction No. __: Compensatory Damages.**

Defendants object to Plaintiff's proposed instruction on compensatory damages because it repeats the same erroneous instruction on causation discussed above. The correct standard is whether Defendants "directly caused" Plaintiff's injury, not whether Defendants "directly caused or directly contributed to cause" Plaintiff's injury.

**INSTRUCTION NO.____**

[Only if instructing jury on punitive damages].

If you believe the conduct of FAG Bearings showed complete indifference to or conscious disregard for the safety of others, then in addition to any damages to which you may find Plaintiff entitled under Instruction Number _____ you may award Plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish FAG Bearings and to deter FAG Bearings and others from like conduct. While it has already been decided that FAG Bearings acted "deliberately" in causing the contamination in the sense that its releases of TCE were "predictable and foreseeable," thus "expected" and "not accidental," that does not mean that FAG Bearings showed completed indifference to or conscious disregard for the safety of others. Instead, that is a question that you must decide based on the evidence presented to you in this case.

SOURCE: MAI 10.05/10.06 (7th Ed.) (modified)

**INSTRUCTION NO.____**

[Only if instructing jury on punitive damages].

You must not award Plaintiff an additional amount as punitive damages under Instruction Number _____ unless you believe FAG Bearings showed complete indifference to or conscious disregard for the safety of others.

SOURCE: MAI 33.16(2)/33.16(3) (7th Ed.) (modified)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

JODELLE L. KIRK                      )
                                         )
                Plaintiff,        )
                                         )
v.                                     )     Case No: 3:13-cv-05032-DGK
                                         )
SCHAEFFLER GROUP USA, INC., *et al.*,   )
                                         )
                Defendants.    )

## DEFENDANTS' PROPOSED VERDICT FORM

1.  Has Plaintiff Jodelle L. Kirk proven by a preponderance of the evidence that FAG Bearings was negligent (meaning that it failed to use the degree of care that an ordinarily careful company would use under the same or similar circumstances) in its handling, use, or disposal of TCE at the Joplin plant?

____Yes    ____No

2.  Has Plaintiff Jodelle L. Kirk proven by a preponderance of the evidence that FAG Bearings violated a specific legal requirement, as described in instruction ____?

____Yes    ____No

**If you answered yes to questions 1 or 2 proceed to answer question 3. If you did not answer yes to any of those questions, stop here, answer no further questions, and have the presiding juror sign and date this form.**

3.  Has Plaintiff Jodelle L. Kirk proven by a preponderance of the evidence that FAG Bearings directly caused her autoimmune hepatitis, meaning that:

a)  Plaintiff Jodelle L. Kirk was exposed to TCE in an amount significant enough to cause her autoimmune hepatitis; and

b)  There is a demonstrable relationship between TCE exposure and human autoimmune hepatitis (i.e., that exposure to TCE can cause autoimmune hepatitis in humans); and

c)  Plaintiff Jodelle L. Kirk has been diagnosed with autoimmune hepatitis; and

d)  Plaintiff Jodelle L. Kirk's autoimmune hepatitis is consistent with exposure to TCE; and

e)  FAG Bearings was responsible for the TCE alleged to have caused the autoimmune hepatitis diagnosed in Plaintiff Jodelle L. Kirk?

____Yes    ____No

**If you answered yes to question 3, answer question 4.  If you answered no to question 4, stop here, answer no further questions, and have the presiding juror sign and date this form.**

4.  What amount of money will fairly and justly compensate Plaintiff Jodelle L. Kirk for damages you believe she sustained and is reasonably certain to sustain in the future as a result of her exposure to TCE?

$_____ (state the amount)

_____          _____
SIGNATURE OF JURY FOREPERSON                                  DATE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

JODELLE L. KIRK      )
           )
     Plaintiff,   )
           )
v.           )   Case No: 3:13-cv-05032-DGK
           )
SCHAEFFLER GROUP USA, INC., *et al.*, )
           )
     Defendants.  )

## DEFENDANTS' PROPOSED PUNITIVE DAMAGES VERDICT FORM

1.  Has Plaintiff Jodelle L. Kirk clearly and convincingly established that Defendants' conduct

showed complete indifference or conscious disregard for the safety of others?

____Yes ____No

**If your answer to question 1 is no, stop here, answer no further questions, and have the presiding juror sign and date this form.  If you answered yes, answer question 2.**

2.  What amount of money do you award in punitive damages?

$_____ (state the amount)

_____  _____

   SIGNATURE OF JURY FOREPERSON     DATE

**Plaintiff's Proposed Verdict Form**

Defendants object to Plaintiff's proposed use of a general verdict form. This is a complicated case in which Plaintiff has alleged three separate bases for liability (one of which—strict liability—should not be presented to the jury at all). In the interest of clarity and convenience for the jury, therefore, Defendants have proposed a special verdict form that is non-argumentative and provides only modest modifications to the general verdict form. Namely, (1) separate questions that reflect Plaintiff's different theories of liability; (2) a separate question on causation; and (3) a separate question whether Plaintiff has met her burden to obtain punitive damages. Additionally, Defendants have provided a separate form on punitive damages should the Court elect to bifurcate this case. These small modifications serve the purpose of reducing juror confusion by identifying and organizing the issues in the case.

Date: February 16, 2016

Respectfully submitted,

DENTONS US LLP

By:    /s/ Gregory T. Wolf

Gregory T. Wolf     MO Bar # 43717
Andrea M. Kimball    MO Bar # 61316
Wade P. K. Carr     MO Bar # 62786
Kate E. Hart       MO Bar # 61601
Jacqueline M. Whipple  MO Bar # 65270
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
Tel:  816-460-2400
Fax:  816-531-7545
Email:    gregory.wolf@dentons.com
          andrea.kimball@dentons.com
          wade.carr@dentons.com
          kate.hart@dentons.com
          jacqueline.whipple@dentons.com

Gary M. Roberts     *Admitted pro hac vice*
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: 213-892-5005
Fax: 213-623-9924
Email:    gary.roberts@dentons.com

Richard D, Salgado    *Admitted pro hac vice*
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201
Tel: 214-259-0935
Fax: 214-259-0910
Email:    richard.salgado@dentons.com

**ATTORNEYS FOR DEFENDANTS
SCHAEFFLER GROUP USA, INC. AND FAG
BEARINGS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of February 2016, a true and accurate copy of the
foregoing document was served upon the following counsel by the Court's CM/ECF system:

Kenneth B. McClain
Scott A. Britton-Mehlisch
Andrew K. Smith
Jonathan M. Soper
Lauren E. McClain
Michael S. Kilgore
Timothy J. Kingsbury
Kevin D. Stanley
HUMPHREY, FARRINGTON &
MCCLAIN, P.C.
221 West Lexington, Ste. 400
P.O. Box 900
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
Email: kbm@hfmlegal.com
        aks@hfmlegal.com
        jms@hfmlegal.com
        lem@hfmlegal.com
        msk@hfmlegal.com
        tjk@hfmlegal.com
        kds@hfmlegal.com

**ATTORNEYS FOR PLAINTIFF**

/s/ Gregory T. Wolf
**ATTORNEY FOR DEFENDANTS
SCHAEFFLER GROUP USA, INC. AND
FAG BEARINGS, LLC**