**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| JODELLE L. KIRK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 3:13-cv-05032-DGK |
| | ) | |
| SCHAEFFLER GROUP USA, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **DEFENDANTS' PROPOSED JURY INSTRUCTIONS (ORIGINAL)**

94208555

# INSTRUCTION NO.___

I have decided to accept as proved the following facts: [1]

1.      Plaintiff Jodelle L. Kirk is a resident and citizen of the State of Missouri

2.      Plaintiff was born on October 4, 1988.

3.      Plaintiff resides at 3130 Woodland Drive, Silver Creek, Newton County, Missouri 64804; this same home previously was known as 513 Woodland Drive before addresses in the neighborhood were renumbered.

4.      Since 1987, Ms. Kirk's mother, Janice Kirk resided in at 3130 Woodland Drive formerly known as 513 Woodland Drive, Joplin, Newton County, Missouri, 64804 including throughout her pregnancy with Ms. Kirk.

5.      FAG Bearings, LLC, is the same entity as FAG Bearings Corporation.

6.      FAG Bearings Corporation operated a manufacturing plant at 3900 Rangeline Road, Joplin, Missouri, until at least June 6, 2005.[*]

7.      Trichloroethylene ("TCE") is a man-made volatile organic compound used as a solvent, often for removing grease from metal parts.

8.      TCE has a density that is greater than water, a high vapor pressure, a low affinity for soil particles, low solubility in water, and naturally degrades at a slow rate.

9.      FAG Bearings used a TCE vapor degreasing system in its manufacturing process until 1983, using TCE as a solvent for removing grease from metal parts.

10.     In April, May, and December 1991, the Missouri Department of Health ("MDOH") and the United States Environmental Protection Agency ("EPA") discovered TCE contamination in certain residential wells of Saginaw and Silver Creek Villages.

---

[1] Except where expressly indicated, all of these facts were stipulated to by the parties in Doc. 389. All other facts were found by the Court in its Findings of Findings of "Undisputed Material Facts" in its January 1, 2016 Order Granting in Part Motion for Summary Judgment (Doc. 333 at 4-7.). Those facts are indicated with an asterisk (*).

94208555

11.    In August 1991, the EPA implemented a emergency removal action and provided bottled drinking water to Silver Creek homes where TCE concentrations above the EPA's Maximum Contaminant Level ("MCL") had been detected.

12.    Plaintiff's family received documents regarding the TCE contamination in Silver Creek and Saginaw, including a variety of fact sheets, letters, notices, and other information regarding the TCE contamination and subsequent remediation efforts.[*]

13.    In or about November 1991, Plaintiff's family received a fact sheet from the MDOH regarding the laboratory test results for TCE in water samples and potential health risks from exposure to TCE.[*]

14.    Between November 13 and 15, 1991, the MDOH conducted laboratory testing of the water supply at Plaintiff's home and provided the results to her family.  This testing purportedly showed there was less than one microgram per liter of TCE in the sample, a health risk the MDOH described as "so small as to be virtually non-existent."[*]

15.    Between November 1991 and March 1992, Plaintiff's family received several letters, information sheets, agreements, contracts, and bills from the Village of Silver Creek regarding the construction and implementation of the public water system, meetings to discuss the TCE contamination, legal representation to "pursue FAG's liability and obtain public water," and the results of well water testing.[*]

16.    The EPA provided Plaintiff's parents with a December 1991 letter and January 1992 fact sheet regarding the extent of TCE contamination.[*]

17.    The December 1991 letter from the EPA provided notice of a public meeting on January 6, 1992 "to answer any questions or concerns you may have about this site."[*]

18.     The January 1992 EPA fact sheet discussed EPA measures to limit potential risks to residents and an upcoming EPA-led public meeting.*

19.     Pam Stanley, a Silver Creek resident, testified that she attended meetings to discuss the TCE contamination, and that Plaintiff's parents also attended those meetings.*

20.     On or about February 6, 1992, Plaintiff's family received letters from the EPA sharing the results of a water sample taken from their residence.*

21.     Silver Creek began installing a public water system in 1992

22.     Saginaw began installing a public water system in 1994.

23.     The February 6, 1992 letters from the EPA stated that no TCE was detected in Kirk family's water supply.

24.     In a mailing postmarked March 26, 1992, Plaintiff's father received a March 23, 1992, fact sheet from the Missouri Department of Natural Resource ("MDNR") describing the history and extent of the TCE contamination in Silver Creek; various EPA, MDNR, and MDOH public meetings in 1991 and 1992 to address the contamination; and "a chronology of significant site events."*

25.     Plaintiff's family also received a September 1993 EPA fact sheet regarding trust funds available to "allow [the community] to hire an independent expert to help them interpret technical data, understand site hazards, and become more knowledgeable about the different technologies that are being used to clean up sites."*

26.     In 2002, Ms. Kirk was diagnosed with Autoimmune Hepatitis, type 1, which requires medical attention and medication to control.

27.     Plaintiff has never sought treatment from any psychiatrists or psychologists.*

28.     None of Plaintiff's treating physicians have diagnosed her with any mental or emotional condition such as an anxiety disorder or depression.*

29.     None of Plaintiff's treating physicians attributed any of her anxiety to her purported exposure to TCE.*

30.     From approximately 1973 to 1982, FAG Bearings Corporation produced ball bearings using TCE as a commercial degreaser and parts cleaner.

31.     In 1991, the Missouri Department of Health (MDOH) discovered the TCE contamination in certain residential wells in the village of Silver Creek.

32.     FAG Bearings was the sole cause of the TCE contamination found in Silver Creek and Saginaw.

33.     FAG Bearings released TCE into the environment in a number of different ways.

34.     FAG Bearings released approximately 12,000 to 25,000 gallons of TCE through waste, spills, leaks, overflowing tanks, incidental use of TCE, and dumping of "still bottoms" into the ground at FAG Bearings' facility.

35.     During investigations at FAG Bearings' facility from 1991 to 1996, TCE or TCE-related chemicals were detected in at least 36 different locations across the FAG Bearings' facility.

36.     FAG Bearings' employees occasionally dumped or pumped TCE directly into the ground. The highest levels of TCE contamination were found at or near these locations.

37.     The "trail," or plume, of contamination runs directly from these locations to residential wells located south of FAG Bearings' property.

38.     FAG Bearings was "100%" responsible for the TCE contamination in Silver Creek, Saginaw, and on FAG Bearings' property.

39.     FAG Bearings could not account for approximately 30,000 gallons of TCE it purchased.

40.     FAG Bearings' vapor recovery system frequently and repeatedly malfunctioned, releasing large amounts of TCE into the air over a long period of time.

41.     FAG Bearings' own experts and employees have opined that these vapors then condensed and returned to the soil on FAG Bearings' property.

42.     [To be read only if punitives are not bifurcated] The releases of TCE on FAG Bearings' property were predictable and foreseeable.

43.     [To be read only if punitives are not bifurcated] FAG Bearings knew that the vapor recovery system malfunctioned and allowed TCE to escape regularly and repeatedly.

44.     [To be read only if punitives are not bifurcated] As of September 30, 1998, FAG Bearings totally refused to cooperate in investigation and remediation of the TCE contamination.

45.     Plaintiff has alleged that she was exposed to TCE at the following specific locations in Silver Creek or Saginaw:

> a. Her childhood residence at 3130 (formerly 513) Woodland Drive;
> b. The Banfield residence at 3314 Silver Creek Drive;
> c. The Parrish residence at 3428 Woodland Drive, including a portion of Thurman Creek that runs through the backyard of this residence;
> d. The Robertson residence at 4409 Malaura Lane;
> e. The Strella residence at 3112 Woodland Drive;
> f. The Johnson residence at 4509 Bradley Street;
> g. The Bickett residence at 3808 Duquesne Street, including a pond of water west of the Bickett residence;
> h. The Switzer residence at 3914 Duquesne Street;
> i. The Horine residence at 3275 Ivy Lane;
> j. The Sutton residence at 3611 Silver Creek Drive;
> k. The Garwood residence at 3101 Silver Creek Drive;
> l. The Johnson residence at 3014 Silver Creek Drive;
> m. The Vincent residence at 4415 Hickory Lane;
> n. The Simpson residence at 4508 Middleton;

o.  Saginaw Baptist Church, at 406 Bartlett Avenue;

p.  Christ's Community Methodist Church, at 2700 E. 44th Street;

q.  Shoal Creek near the Tipton Ford access point;

r.  Waters Edge Camping and Kayaking, at 6614 Old Highway71;

s.  Thompson Orchard and Berry Farm, Bees and Berries, at 707 Saginaw Road; and

t.  The fields near Duquesne Road.

46.     Plaintiff's residence was connected to the city water supply in 1992.

47.     The groundwater at Plaintiff's residence was tested for TCE on January 3, 1992, and on June 1, 1995.  In both cases, no TCE was detected at a level above the laboratory detection limit of 1 microgram per liter (µg/L).

48.     The groundwater at the Banfield Residence was tested for TCE on January 4, 1992, and TCE was detected at a level of 1.8 µg/L at that time.

49.     The groundwater at the Parrish residence located at 3428 Woodland Drive was tested for TCE on five occasions.  On December 17, 1991, TCE was detected at a level of 21 µg/L.  On January 1, 1992, TCE was detected at a level of 26 µg/L.  On May 20, 1993, TCE was detected at a level of 18 µg/L.  On May 23, 1995, two water samples were tested, and TCE was detected at levels of 24 µg/L and 21.9 µg/L.

50.     The groundwater at the Robertson residence at 4409 Malaura Lane was tested for TCE on December 27, 1991, and at that time, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

51.     The groundwater at the Strella Residence was tested for TCE on January 3, 1992, and at that time, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

52.     The groundwater at 4509 Bradley Street was tested for TCE on three occasions. On November 5, 1991, no TCE was detected at a level above the laboratory detection limit of 1

µg/L. On January 2, 1992, TCE was detected at a level of 1 µg/L. On June 4, 1995, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

53. The groundwater at the Switzer Residence was tested for TCE on two occasions, on January 3, 1992, and on June 3, 1995. In both cases, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

54. The groundwater at the Sutton Residence was tested for TCE on January 14, 1992, and at that time, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

55. The groundwater at 3101 Silver Creek Drive was tested for TCE on two occasions, on January 4, 1992 and on May 31, 1995. In both cases, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

56. The groundwater at 3014 Silver Creek Drive was tested for TCE on two occasions, on October 10, 1991 and on January 4, 1992. In both cases, no TCE was detected at a level above the laboratory detection limit.

57. The groundwater at 4415 Hickory Lane was tested for TCE on two occasions, on November 12, 1991, and December 20, 1991. In both cases, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

58. The groundwater at 4508 Middleton was tested for TCE on January 3, 1992, and at that time, no TCE was detected at a level above the laboratory detection limit of 1 µg/L.

59. The groundwater at Saginaw Baptist Church was tested for TCE on four occasions. On January 15, 1992, TCE was detected at a level of 3.8 µg/L. On February 25, 1993, TCE was detected at a level of 6.3 µg/L. On June 2, 1995, two water samples were tested, and TCE was detected at levels of 4.2 µg/L and 3.8 µg/L.

60.     [To be read only if punitives are not bifurcated] Defendant Schaeffler Group USA, Inc. is the successor to FAG Bearings Corporation.

You must accept these facts as proved.

## INSTRUCTION NO.___

In this case, Defendants are corporations. The mere fact that Defendants are corporations does not mean they are entitled to any lesser consideration by you. All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

94208555

**INSTRUCTION NO.___**

On Plaintiff's claim of personal injury based on negligence, your verdict must be for Plaintiff if you believe:

First, FAG Bearings was negligent (as submitted in Instruction Number _____) in its handling, use, or disposal of TCE at the Joplin plant; and

Second, Plaintiff's injuries and damages were directly caused by such negligence, which, in turn, requires proof that:

a.   Plaintiff was exposed to TCE in an amount significant enough to cause her disease, AIH;

b.   There is a demonstrable relationship between TCE exposure and human AIH (i.e., exposure to TCE can cause AIH in humans);

c.   Plaintiff has been diagnosed with AIH;

d.   Plaintiff's AIH is consistent with exposure to TCE; and

e.   FAG Bearings was responsible for the substance alleged to have caused the AIH diagnosed in Plaintiff.

94208555

**INSTRUCTION NO.___**

  Your verdict on Plaintiff's negligence claim must be for Defendants unless you believe FAG Bearings was negligent, as submitted in Instruction Number _____, above.

  Your verdict must also be for Defendants unless you believe that, as a result of such negligence, Plaintiff's injuries and damages were caused by FAG Bearings, as submitted in Instruction Number _____, above.

94208555

**INSTRUCTION NO.___**

On Plaintiff's claim of personal injury based on negligence per se, your verdict must be for Plaintiff if you believe:

First, FAG Bearings violated:

a. The Clean Water Act, 33 U.S.C. § 1251 ([insert provision]), by [describe requirements to establish violation of specific provision]; or

b. The Resource Conservation and Recovery Act, 42 U.S.C. § 6901 (([insert provision]), by [describe requirements to establish violation of specific provision]; or

c. The Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601 ([insert provision]), by [describe requirements to establish violation of specific provision]; or

d. The Missouri Hazardous Waste Management Law, Mo. Rev. State. § 260.350 ([insert provision]), by [describe requirements to establish violation of specific provision].

Second, the violation of the statute(s) directly caused Plaintiff Jodelle L. Kirk's injuries and damages, which, in turn, requires proof that:

a. Plaintiff was exposed to TCE in an amount significant enough to cause her disease, AIH;

b. There is a demonstrable relationship between TCE exposure and human AIH (i.e., exposure to TCE can cause AIH in humans);

c. Plaintiff has been diagnosed with AIH;

d. Plaintiff's AIH is consistent with exposure to TCE; and

e.    FAG Bearings was responsible for the substance alleged to have caused the AIH

diagnosed in Plaintiff.

94208555

**INSTRUCTION NO.____**

Your verdict must be for Defendants unless you believe FAG Bearings violated one of the listed legal requirements and that the violation caused her injury, as submitted in Instruction Number _____, above.

94208555

**INSTRUCTION NO.\_\_\_**

If you find in favor of Plaintiff on Plaintiff's claims of personal injury based on negligence or negligence per se, then you must award Plaintiff such sum as you believe will fairly and just compensate Plaintiff for any damages you believe she sustained and is reasonably certain to sustain the future as a direct result of the occurrence mentioned in the evidence

94208555

**INSTRUCTION NO.____**

Your verdict must be for Defendants unless you believe Plaintiff sustained damage.

94208555

**INSTRUCTION NO.___**

[Only if instructing jury on punitive damages].

If you believe the conduct of FAG Bearings showed complete indifference to or conscious disregard for the safety of others, then in addition to any damages to which you may find Plaintiff entitled under Instruction Number _____ you may award Plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish FAG Bearings and to deter FAG Bearings and others from like conduct. While it has already been decided that FAG Bearings acted "deliberately" in causing the contamination in the sense that its releases of TCE were "predictable and foreseeable," thus "expected" and "not accidental," that does not mean that FAG Bearings showed completed indifference to or conscious disregard for the safety of others. Instead, that is a question that you must decide based on the evidence presented to you in this case.

94208555

**INSTRUCTION NO.____**

[Only if instructing jury on punitive damages].

You must not award Plaintiff an additional amount as punitive damages under Instruction Number _____ unless you believe FAG Bearings showed complete indifference to or conscious disregard for the safety of others.

94208555

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION**

JODELLE L. KIRK                   )
                                                )
                  Plaintiff,       )
                                                  )
v.                                   )     Case No: 3:13-cv-05032-DGK
                                                  )
SCHAEFFLER GROUP USA, INC., *et al.*,  )
                                                )
                  Defendants.    )

## DEFENDANTS' PROPOSED VERDICT FORM

1.  Has Plaintiff Jodelle L. Kirk proven by a preponderance of the evidence that FAG Bearings was negligent (meaning that it failed to use the degree of care that an ordinarily careful company would use under the same or similar circumstances) in its handling, use, or disposal of TCE at the Joplin plant?

____Yes   ____No

2.  Has Plaintiff Jodelle L. Kirk proven by a preponderance of the evidence that FAG Bearings violated a specific legal requirement, as described in instruction ____?

____Yes   ____No

**If you answered yes to questions 1 or 2 proceed to answer question 3.  If you did not answer yes to any of those questions, stop here, answer no further questions, and have the presiding juror sign and date this form.**

94208555

3.  Has Plaintiff Jodelle L. Kirk proven by a preponderance of the evidence that FAG Bearings directly caused her autoimmune hepatitis, meaning that:

a)  Plaintiff Jodelle L. Kirk was exposed to TCE in an amount significant enough to cause her autoimmune hepatitis; and

b)  There is a demonstrable relationship between TCE exposure and human autoimmune hepatitis (i.e., that exposure to TCE can cause autoimmune hepatitis in humans); and

c)  Plaintiff Jodelle L. Kirk has been diagnosed with autoimmune hepatitis; and

d)  Plaintiff Jodelle L. Kirk's autoimmune hepatitis is consistent with exposure to TCE; and

e)  FAG Bearings was responsible for the TCE alleged to have caused the autoimmune hepatitis diagnosed in Plaintiff Jodelle L. Kirk?

____Yes   ____No

**If you answered yes to question 3, answer question 4.  If you answered no to question 4, stop here, answer no further questions, and have the presiding juror sign and date this form.**

4.  What amount of money will fairly and justly compensate Plaintiff Jodelle L. Kirk for damages you believe she sustained and is reasonably certain to sustain in the future as a result of her exposure to TCE?

$_____ (state the amount)


_____          _____
        SIGNATURE OF JURY FOREPERSON                              DATE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| JODELLE L. KIRK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 3:13-cv-05032-DGK |
| | ) | |
| SCHAEFFLER GROUP USA, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' PROPOSED PUNITIVE DAMAGES VERDICT FORM

1.  Has Plaintiff Jodelle L. Kirk clearly and convincingly established that Defendants' conduct

showed complete indifference or conscious disregard for the safety of others?

____Yes    ____No

**If your answer to question 1 is no, stop here, answer no further questions, and have the presiding juror sign and date this form. If you answered yes, answer question 2.**

2.  What amount of money do you award in punitive damages?

$_____ (state the amount)

_____        _____
SIGNATURE OF JURY FOREPERSON                    DATE

94208555

Date: February 16, 2016                Respectfully submitted,

DENTONS US LLP

By:    /s/ Gregory T. Wolf
        Gregory T. Wolf      MO Bar # 43717
        Andrea M. Kimball     MO Bar # 61316
        Wade P. K. Carr      MO Bar # 62786
        Kate E. Hart          MO Bar # 61601
        Jacqueline M. Whipple  MO Bar # 65270
        4520 Main Street, Suite 1100
        Kansas City, Missouri 64111
        Tel:  816-460-2400
        Fax:  816-531-7545
        Email:   gregory.wolf@dentons.com
                    andrea.kimball@dentons.com
                    wade.carr@dentons.com
                    kate.hart@dentons.com
                    jacqueline.whipple@dentons.com

        Gary M. Roberts      *Admitted pro hac vice*
        601 South Figueroa Street, Suite 2500
        Los Angeles, California 90017-5704
        Tel: 213-892-5005
        Fax: 213-623-9924
        Email:   gary.roberts@dentons.com

        Richard D, Salgado     *Admitted pro hac vice*
        2000 McKinney Avenue, Suite 1900
        Dallas, Texas 75201
        Tel: 214-259-0935
        Fax: 214-259-0910
        Email:   richard.salgado@dentons.com

**ATTORNEYS FOR DEFENDANTS
SCHAEFFLER GROUP USA, INC. AND FAG
BEARINGS, LLC**

94208555

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of February 2016, a true and accurate copy of the

foregoing document was served upon the following counsel by the Court's CM/ECF system:

    Kenneth B. McClain
    Scott A. Britton-Mehlisch
    Andrew K. Smith
    Jonathan M. Soper
    Lauren E. McClain
    Michael S. Kilgore
    Timothy J. Kingsbury
    Kevin D. Stanley
    HUMPHREY, FARRINGTON &
    MCCLAIN, P.C.
    221 West Lexington, Ste. 400
    P.O. Box 900
    Independence, MO 64051
    Telephone: (816) 836-5050
    Facsimile: (816) 836-8966
    Email: kbm@hfmlegal.com
          aks@hfmlegal.com
          jms@hfmlegal.com
          lem@hfmlegal.com
          msk@hfmlegal.com
          tjk@hfmlegal.com
          kds@hfmlegal.com

**ATTORNEYS FOR PLAINTIFF**

/s/ Gregory T. Wolf
**ATTORNEY FOR DEFENDANTS
SCHAEFFLER GROUP USA, INC. AND
FAG BEARINGS, LLC**

94208555