# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| JODELLE L. KIRK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:13-CV-05032-DGK |
| ) | |
| SCHAEFFLER GROUP USA, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

Pursuant to the pretrial order Plaintiff submits the following objections to the proposed jury instructions submitted by Defendants.

**I.  Instruction Regarding Corporate Status**

Defendants have proposed an instruction regarding the fact that they are corporations. This instruction is not provided for in the Eighth Circuit Model Instructions and is not necessary in this instance. The Model Instructions already provide that the jury is not to "let sympathy, or your own likes or dislikes, influence you. The law requires you to come to a just verdict based only on the evidence, your common sense, and the law that I give you in my instructions, and nothing else." 8TH CIR. CIVIL JURY INSTR. § 1.03 (2014).

The fact that the Eighth Circuit Model Instruction do not provide for an instruction of the type proposed by Defendants is telling. The Committee preparing the model instructions would expect that claims involving corporations would routinely be heard in this court. Model Instruction 1.03 makes clear that personal sympathy, likes or dislikes is not to influence the verdict to be returned by the jury. Plaintiff is not going to suggest to the jury that these

Defendants should be treated differently simply because they are corporations. The corporate status of Defendants – much like the existence or non-existence of insurance – is not an issue that needs to be introduced through jury instruction unless needed for curative purposes. Plaintiff respectfully suggests that this proposed instruction is not necessary in this case and should not be given.

## II. Instruction Regarding Proof of Injuries and Damages

Defendants have proposed an instruction listing "injuries and damages" that the Plaintiff must prove in order to recover in this case. While Defendants cite *Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 178 (Mo. Ct. App. 1988) as authority for this instruction, nothing in the *Elam* case remotely suggest that this is an appropriate instruction to be given in this, or any other, toxic tort case.

Defendants' proposed instruction serves no legitimate purpose. Instead, this proposed instruction 1) creates what is in effect an additional and unnecessary verdict director that includes vague and undefined terms; 2) creates what is in effect an additional and unnecessary converse instruction on issues the jury is required to find in the verdict directors; 3) actually suggests to the jury issues of fact for which there is no evidence to support; and 4) do not include the proper modification for multiple causes of damage found under MAI 19.01. For these reasons, Plaintiff respectfully suggests that this instruction should not be given in this case.

First, Defendants' proposed instruction effectively creates an additional verdict director that is not tied to any specific claim. Each of the verdict directors proposed by Plaintiff require that the jury find the damages suffered by Plaintiff were caused by the tortious actions of Defendants. See e.g. Plaintiff's Proposed Instruction based upon MAI 17.02 ("such negligence directly caused or directly contributed to cause damage to plaintiff."). While Defendants may

2

wish to argue that Plaintiff's level of exposure to trichloroethylene was not "significant enough" to cause disease, this argument is not proper to frame in the form of an instruction. Additionally, Defendants' proposed instruction includes vague and ambiguous terminology such as "an amount significant enough," "demonstrable relationship" and "consistent with exposure" that are the subject of expert witness testimony and not properly included within jury instructions.

Defendants' proposed instruction regarding "injuries and damages" that "must be proven" is effectively an additional converse instruction that – again – is not tied to a specific verdict director. Defendants have proposed converse instructions on a number of elements in Plaintiff's verdict directors and those converse instructions should, as required by MAI, track the language of the element being conversed, and be included at the appropriate point in the instruction package. See MAI 33.01.

Defendants include within the proposed instruction regarding causation of injuries and damages, a suggestion that lacks evidentiary support – namely that any other person or company could be responsible for Plaintiff being exposed to trichloroethylene other than Defendants. Plaintiff is not aware of any evidence of any source of trichloroethylene exposure other than that released by Defendants. In fact, this Court has found Defendants are the "sole cause" of the contamination. See Doc. 232 at para. 3, 7. Therefore, a jury instruction suggesting a possible source of exposure other than Defendants' contamination would be improper.

Finally, the proposed instruction regarding proof of Plaintiff's "injuries and damages" fails to include the appropriate modification under MAI 19.01 when there is evidence of multiple causes of damage. Instead, Defendants' proposed instruction requires that the "injuries and damages were directly caused" by Defendants. Defendants appear to take the position that the modification under MAI 19.01 is limited almost exclusively to those situations that involve

3

Case 3:13-cv-05032-DGK   Document 427   Filed 02/16/16   Page 3 of 14

multiple tortfeasors. This is not a correct statement of Missouri law on this issue. As the court in *Closson v. Midwest Div. IRHC, LLC*, 257 S.W.3d 619, 6254 (Mo. Ct. App. 2008), made clear, evidence of a pre-existing condition supports the use of MAI 19.01 in the verdict directing instructions. See also *Higby v. Wein*, 996 S.W.2d 95 (Mo. Ct. App. 1999); *Snelling v. Gress*, 996 S.W.2d 538 (Mo. Ct. App. 1999).

"A requesting party is entitled to use the MAI 19.01 modification language if the evidence shows a preexisting injury. A requesting party is also entitled to use the MAI 19.01 modification language "in cases in which there are multiple causes of damage but which may not involve another party or tortfeasor."" *Wright v. Barr*, 62 S.W.3d 509, 529 (Mo. Ct. App. 2001) citing *Higby v. Wein,* 996 S.W.2d 95, 99 (Mo.App. E.D.1999) and MAI 19.01, Committee Comment (1995)).

Defendants' position that there must be evidence of two *tortfeasors* is in exact opposition to well-settled Missouri law, and erroneously ignores the "multiple causes of *damage"* analysis. "These causes need not even involve another tortfeasor but may simply be, for example, a pre-existing medical condition. The applicability of MAI 19.01 beyond cases involving joint tortfeasors is highlighted by the change in 1986, when the title of the instruction was changed from "Verdict Directing Modification—Joint Tortfeasors" to "Verdict Directing Modification—Multiple Causes of Damage." MAI 19.01 Committee Comment (1995 New). "Multiple Causes" includes successive, not merely joint, tortfeasors. There was no error in the use of the 19.01 modification." *Mathes v. Sher Express, L.L.C.*, 200 S.W.3d 97, 108 (Mo. Ct. App. 2006)(internal citation to *Schiles v. Schaefer*, 710 S.W.2d 254, 267 (Mo.App. E.D.1986)(in turn applying MAI 19.01).

4

In this case, a modification under MAI 19.01 is necessary to properly instruct the jury on the issue of causation. Plaintiff has offered substantial evidence that a number of factors including genetics, gender, and age made her more susceptible to the toxic effects of TCE. The Court has recognized this interplay of factors a number of times.

For example, in denying Defendants' motion to exclude Dr. Gilbert's opinions, the Court stated that Dr. Gilbert's Report: "provides a reliable basis for her opinion that Plaintiff's exposure to TCE was such that, over time, acting on a genetic predisposition, it caused Plaintiff to develop AIH, and it was not idiopathic." (Doc. 285 at pg. 5; *See also* Doc. 417, at 6.). Plaintiff's expert Dr. Zizic also found that Jody Kirk had a number of susceptibility factors which predisposed her to develop TCE induced autoimmunity, including genetic predisposition, higher vulnerability because she was exposed to TCE from conception and the fact that she was female. The Court also found Dr. Zizic's opinions admissible. *Id*, at 12-13.

Similarly, there will be evidence in this case that the medication Plaintiff takes for her autoimmune hepatitis "contributed to cause changes in her bone density and caused her to suffer diabetes, and that she now faces at least a four-fold increase risk of cancer from a combination of her exposure to Defendants' TCE and the medication (Imuran) that she has been forced to take the entirety of her adolescent and adult life. "Thus, not only does Jodelle Kirk had an increased risk of cancer of the liver from her autoimmune hepatitis, she also has an increased risk of developing a lymphoma, because of the treatment with Imuran necessitated by the inability to taper her off the Imuran, due to flare of the disease when this is been attempted." (Report of Dr. Zizic, (Doc. 170) pg. 43, at para. 12.)

This evidence supports including the MAI 19.01 modification for all instruction regarding the damages in this case. All of the verdict directors and damages instructions submitted by Plaintiff included the appropriate modification under MAI 19.01.

### III. Defendants' Product Liability Verdict Director and Converse Instruction

Plaintiff included a claim for strict liability as recognized by the Missouri Court of Appeals in *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854 (Mo. Ct. App. 1985). Under *Bennett*, a defendant is strictly liable when 1) its activities create a high degree of risk of harm; and 2) the risk posed by defendant's activity is outweighed the value of the activity. *Id*. See also Restatement (Second) of Torts § 519 (1938). In this case, the risk of harm posed by trichloroethylene outweighed the value of these Defendants' activities. The claim for strict liability is not based upon the selling or distribution of a defective product. Therefore, the use of MAI 25.04 is not called for in this case.

Additionally, Defendants proposed a converse instruction based upon a products liability claim. While Defendants have the right to submit a converse instruction, the instruction must track the language of the verdict director given.

Plaintiff submitted a proposed instruction that tracks the elements as set forth by the court in *Bennett*. The factors outlined in Restatement (Second) § 520 support a finding that use and release of trichloroethylene into the groundwater is an abnormally dangerous activity: 1) a high degree of risk of some harm to a person or property; 2) the likelihood that the harm would be great; 3) inability to reduce the risk of harm through reasonable care; 4) the activity is not common; 5) whether the place the activity was conducted was appropriate for that activity; and 6) the value to the community when compared to the dangerous characteristic of the activity.

Nearly all of the Restatement (Second) § 520 factors support allowing Plaintiff to assert a

strict liability claim under these facts. First, trichloroethylene contamination of the groundwater runs a high risk of harm to both persons and property. Second, the hazards posed by trichloroethylene are significant and include autoimmune diseases such as autoimmune hepatitis, neurological disorders, and cancer.

No amount of care will prevent harm from trichloroethylene once it has been released into the environment. A small amount of this substance has the ability to contaminate a large amount of groundwater. Furthermore, trichloroethylene does not decompose readily. Therefore, once released, the contamination will continue for a long period of time.

While trichloroethylene may have a number of industrial uses, the use of this product in close proximity to a residential area is not appropriate given the gravity of the consequences from release. Finally, access to clean groundwater is a crucial to the viability of any community. Therefore, the benefit to the community from use of trichloroethylene is far outweighed by the danger posed from use of this chemical.

**IV.     Defendants' Negligence Verdict Director Based On MAI 31.00 and Converse**

Defendants' proposed a negligence verdict director based upon MAI 31.00 which is the verdict director for "General Negligence – Single Negligent Act Submitted." Defendants' proposed verdict director on this claim is improper for several reasons.

First, it is unnecessary to include the word "negligence" in the introductory paragraph to this instruction. Under MAI, instructions simply read "[y]our verdict must be for plaintiff if you believe." There is no reason to deviate from the established MAI format for providing the jury with verdict directors.

Next, the allegations – and evidence in this case – support a verdict directing instruction that includes multiple negligent acts on the part of Defendants. For example, the evidence will

7

demonstrate multiple ways that these Defendants allowed the release of trichloroethylene into the groundwater. Release of vapor, burying barrels of chemicals, pouring chemicals onto the ground, etc. are all negligent acts that the jury can consider in determining which negligent act or acts may have caused or contributed to cause Plaintiff's injuries and damages in this case. Defendant's proposed language of "FAG Bearings' acts and/or omissions caused Plaintiff to be exposed to TCE" does not comply with MAI 31.00 (or any other MAI negligence-based verdict director) because it does not describe or insert the negligent act or omission being complained of by the plaintiff. A review of the MAI-approved modifications in Chapter 17 demonstrates that the negligence-based verdict directors must be modified with specific acts of the defendant rather than simply saying a general act or omission caused plaintiff harm. See e.g. MAI 17.03 to 17.21.

Furthermore, Defendants' proposed negligence instruction actually contains multiple instructions on the issue of causation. In the paragraph "First" – Defendants' proposed instruction requires that the jury believe that the acts or omissions "caused" exposure to trichloroethylene. Then, again in paragraph "Third" – Defendants' proposed instruction requires the jury to find causation. No negligence-based MAI jury instruction suggests instructing on causation in multiple paragraphs within the verdict director. See MAI 17.01, 31.00.

Defendants' second paragraph in the proposed verdict director based upon MAI 31.00 includes an improper and unnecessary parenthetical phrase which is presumed to refer to the definition of negligence. There is no need to refer to the definition of negligence. Missouri juries have been instructed using negligence-based MAI for, literally, decades without the need for additional language.

Defendants' third paragraph is also improper. The causation language used by MAI is simple and concise. Defendants are attempting to argue their case or include an additional

8

converse instruction. The points that Defendants highlight in subparagraph (a) to (e) are exactly that – points for argument and have no place in an MAI-based negligence instruction.

Finally, as discussed above, the instruction proposed by Defendants on this claim does not include the necessary modification under MAI 19.01 where there is evidence to support the jury finding multiple causes for Plaintiffs damages that have been claimed in this case.

Plaintiff proposed a negligence instruction based upon the form of MAI 17.02 which provides for submission of multiple negligent acts of the defendant for the jury to consider in reaching its verdict. Plaintiff's proposed instruction also includes the proper modification under MAI 19.01.

Defendant has a right to submit a converse instruction. As discussed in MAI 33.01, the elements that Defendants chose to converse must track the language used in the verdict director received by the jury. The form of Defendants' proposed converse is not correct and should be incorporated into a single paragraph. The correct form for a converse of both negligence and causation elements is found in MAI 33.04(4).

## V. Defendants' Proposed Negligence *Per Se* Instruction and Converse

Defendants' proposed negligence *per se* instruction suffers from many of the same flaws as the general negligence instruction they propose. First, there is no reason to include the term "negligence *per se*" in the introductory paragraph.

Furthermore, Defendants' proposed instruction on this claim fails to identify the conduct – violation of a statute or regulation – that is the basis for the claim of negligence *per se*. In contrast, Plaintiff's proposed instruction identifies the legal basis for the violation that establishes the standard for *per se negligence.*

As discussed above, the causation paragraph is also improper. The causation language

9

used by MAI is simple and concise. Here, Defendants are attempting to argue their case or include an additional converse instruction. The points that Defendants highlight in subparagraph (a) to (e) are exactly that – points for argument and have no place in an MAI-based negligence instruction.

Finally, again, this instruction does not include the necessary modification under MAI 19.01 where there is evidence to support the jury finding multiple causes for Plaintiff's damages that have been claimed in this case.

The form of the converse to the negligence *per se* verdict director does not follow the form of MAI 33.04(4). The converse of the negligence and causation elements should be combined into a single paragraph as outlined in MAI.

### VI. Defendants' Proposed MAI 4.01 and Converse

Defendants' proposed MAI 4.01 is improper for several of the reasons set forth above. First, MAI 4.01 does not provide for identifying the legal basis for the particular claims (i.e. negligence, negligence *per se* or strict liability). Instead, MAI 4.01 is simple and concise and directs what the jury is to do in the event they have found on behalf of Plaintiff on one, or more, claims. Furthermore, as discussed above, the instruction on MAI 4.01 must contain the modification under MAI 19.01 when there is evidence of multiple causes of damage.

Finally, Defendants have included a converse to the damages instruction that is not provided for under MAI. Essentially, Defendants are requesting that the Court include a second converse instruction on the issue of damages. Converse instructions are appropriately tied to verdict directing instructions. See MAI 33.01.

### VII. Defendants' Proposed Punitive Damage Verdict Director and Converse

Defendants have submitted a combination of MAI 10.05 and 10.06 on the issue of

10

punitive damages. This proposed instruction is improper for several reasons.

First, as discussed above, Defendants do not properly frame the nature of Plaintiff's strict liability claim. Plaintiff's claim for strict liability is not based on selling a defective product but, rather, the use of a dangerous substance in its manufacturing process as recognized in Missouri in *Bennett v. Mallinckrodt*. Therefore, the use of MAI 10.05 (which relates to punitive damages claims based upon product defect and failure to warn) is not proper.

Defendants also attempt to modify the language from MAI 10.06 with argumentative language regarding Defendants' conduct that has been found to be conclusively established in an effort to deflect or minimize the impact of the collateral estoppel rulings by the Court. The instruction in 10.06 sets forth the standard of conduct that must be found in order to return a verdict for punitive damages. Nothing in MAI 10.06, or its Notes of Use, suggest a modification of the type proposed by Defendants.

Plaintiff has proposed a punitive damages instruction that closely tracks the language of MAI 10.06 throughout. This form of this instruction is proper given that the underlying claims are based on negligence and strict liability.

Similarly, the converse of the punitive damages instruction proposed by Defendants is not in the correct form because the nature of the claim being addressed in Defendants' proposed instruction is based upon products liability and not strict liability under *Bennett v. Mallinckrodt.* While Defendants are entitled to a converse instruction, it should follow the language of the punitive damages verdict director. See MAI 33.01.

### VIII. Verdict Form

Defendants have proposed a verdict form that contains special interrogatories. The verdict form proposed is contrary to both the standard practice suggested by the Eighth Circuit

11

Model Instructions and jury instruction practice under MAI.

Under the Eighth Circuit Model Instructions, the typical practice is to provide a verdict form that allows the jury to return a general verdict. See e.g. 8TH CIR. CIVIL JURY INSTR. §§ 4.80, 5.80, 5.81, 6.80, 7.80, 11.80, 12.80, 13.80, 14.80, 15.80 (2014). See also MAI 36.01, 36.11. Typically Eighth Circuit Model Instructions provide for alternative verdict forms with special interrogatories where the state of the law regarding the appropriate standard for recovery in civil rights claim is unclear. See e.g. §§ 5.90, 11.90. (providing for special interrogatories where "it is unclear whether the correct standard for liability is 'determining factor' or 'motivating factor.'")

Eighth Circuit Model Instruction §§ 15.80 and 15.81 for use in Federal Employee Liability Act (FELA) claims are helpful for comparison in this instance. Under both § 15.80 and 15.81, the jury is asked to return a general verdict for the plaintiff or defendant. Then, in the event of a verdict in favor of the plaintiff is returned, an assessment of damages. The special interrogatories proposed by Defendants unnecessarily confuse and lengthen the instructions while providing no additional benefit to the Court based upon the additional information provided by the jury with its verdict.

Assuming Plaintiff makes a submissible claim for punitive damages, the appropriate verdict form for this case would be similar in form to that of MAI 36.11 (with the exception of having only the foreperson sign on behalf of the jury as is the Federal Court practice). Plaintiff respectfully requests that this Court decline Defendants' invitation to complicate the jury instructions by incorporating the verbose special interrogatories proposed and ask that the Court instead incorporate a general verdict form that is in keeping with the standard practice outlined by the Eighth Circuit Model Instructions and that called for under MAI.

12

Respectfully Submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.


*/s/ Andrew K. Smith*
| | |
|---|---|
| Kenneth B. McClain | #32430 |
| Michael S. Kilgore | #44149 |
| Andrew K. Smith | #60485 |
| Jonathan M. Soper | #61204 |
| Timothy J. Kingsbury | #64958 |
| Lauren E. McClain | #65016 |

221 West Lexington, Ste. 400
P.O. Box 900
Independence, MO 64051
Telephone:    (816) 836-5050
Facsimile:     (816) 836-8966
kbm@hfmlegal.com
msk@hfmlegal.com
aks@hfmlegal.com
jms@hfmlegal.com
tjk@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFF**

13

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above-foregoing document was served on the 16th day of February, 2016 via the Court's ECF system to the following counsel of record:

Gregory T. Wolf
Wade P.K. Carr
Jacqueline M. Whipple
Andrea Kimball
SNR DENTON US LLP
4520 Main Street, Ste. 1100
Kansas City, MO 64111
Telephone: (816) 460-2400
Facsimile: (816) 531-7545
gregory.wolf@snrdenton.com
wade.carr@snrdenton.com
jacqueline.whipple@dentons.com
andrea.kimball@dentons.com
and
Gary M. Roberts
601 S. Figueroa Street, Ste. 2500
Los Angeles, CA 90017
Telephone: (213) 892-5005
Facsimile: (213) 623-9924
gary.roberts@dentons.com
**ATTORNEYS FOR DEFENDANTS
SCHAEFFLER GROUP USA, INC.;
FAG HOLDINGS, LLC; and
FAG BEARINGS, LLC**

　　　　　　　　　　　　　　　　　　　　*/s/　　Andrew K. Smith*
　　　　　　　　　　　　　　　　　　　　**ATTORNEY FOR PLAINTIFF**