# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| JODELLE L. KIRK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:13-cv-5032-DGK |
| | ) |
| SCHAEFFLER GROUP USA, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON PRETRIAL RULINGS OF UNRESOLVED ISSUES

Now before the Court is Defendants' Motion for Pretrial Rulings on Unresolved Issues (Doc. 435). Defendants seek pretrial resolution of two questions:

1. How will the Court instruct the jury on the issue of causation: whether Defendants "directly caused" Plaintiff's injuries, or whether Defendants "directly caused or directly contributed to cause" Plaintiff's injuries?

2. What information will the Court communicate to the jury regarding stipulated facts, facts established by collateral estoppel, and facts established during summary judgment, and when will it communicate these facts to them?

With respect to the first question, the Court appreciates the parties briefing this issue now so the Court has ample time to carefully consider it. The Court, however, cannot rule on this issue now because it does not know precisely how the evidence will come in at trial. Consequently, the Court takes this issue under advisement and will rule on it after the close of all the evidence.

With respect to the second question, the Court will communicate to the jury in a stipulated facts instruction those facts to which the parties have stipulated.

The Court will not communicate to the jury any facts established during summary judgment, with one exception. That fact is the following: FAG Bearings operated a manufacturing facility at 3900 Rangeline Road, Joplin, Missouri, until at least June 6, 2005.

Although pursuant to Federal Rule of Civil Procedure 56(g)[1] the Court could instruct the jury to treat as established any undisputed material fact which the Court found in its summary judgment order, the Court declines to do so here for three reasons. First, the Court did not enter an order clearly stating that it was treating any undisputed facts set out in the summary judgment order as established for purposes of trial in this case. Although the summary judgment order might be construed as such an order, it was not meant to be construed so broadly.

Second, as the Advisory Committee Notes make clear, the court must be careful not to interfere with a party's ability to accept a fact for purposes of summary judgment only and still litigate the fact at trial. Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment. A nonmovant might decide that it is more cost-effective to defeat a summary judgment motion by disputing one or two key facts rather than going to the expense of disputing all of the facts. *Id.* Such a litigant should be allowed to do so without running the risk of forfeiting the right to litigate the other facts at trial. *Id.*

Third, at least one of the facts Defendants claim were established as uncontroverted in the Court's summary judgment order were either partially controverted, unclear, or both. For example, Defendants claim the Court found the following fact in its summary judgment order:

> Between November 13 and 15, 1991, the MDOH conducted laboratory testing of the water supply at Plaintiff's home and provided the results to her family. This testing purportedly showed there was less than one microgram per liter of TCE in the sample, a

---

[1] "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

health risk the MDOH described as "so small as to be virtually non-existent."

Mot. (Doc. 435-1) at ¶ 14. In fact, what the Court actually found was this:

> Between November 13 and 15, 1991, the MDOH conducted laboratory testing of the water supply at Plaintiff's home and provided the results to her family. *Although the record is somewhat unclear on this point*, this testing purportedly showed there was less than one microgram per liter of TCE in the sample, a health risk the MDOH described as "so small as to be virtually non-existent." *(Plaintiff's experts dispute the accuracy of this testing and what the results indicate.)*

Order Granting in Part Mot. for Summ. J. (Doc. 333) at 5 (emphasis added). Defendants reached their conclusion by quoting a paragraph from the summary judgment order and then deleting all of the qualifying language from it, thus altering its meaning. Since what the Court actually found in its summary judgment order was patently different from what Defendants' claim the Court found, the Court declines to so instruct the jury. The Court will, however, order lead Defense counsel in a separate order to show cause why he should not be sanctioned for making a misrepresentation to the Court. *See* Fed. R. Civ. P. 11(b)(3).

Finally, the Court will communicate to the jury the facts established by collateral estoppel and facts established during summary judgment by reading to them the instruction in Exhibit 1. During any punitive damages phase, the Court will communicate to the jury additional facts established by collateral estoppel by reading to them the instruction in Exhibit 2.

**IT IS SO ORDERED.**

Date: February 28, 2016            /s/ Greg Kays
                                   GREG KAYS, CHIEF JUDGE
                                   UNITED STATES DISTRICT COURT

**EXHIBIT 1.**

## INSTRUCTION NO.\_\_\_

The Court has previously established that Defendant FAG Bearings, LLC ("FAG Bearings") released trichloroethylene ("TCE") into the environment near Plaintiff's childhood home. To speed the trial along, the Court will instruct you on these facts now. You must accept these facts as proven in this case. The parties, their attorneys, and witnesses may refer to these facts from time to time during the course of the trial:

1. FAG Bearings, LLC, is the same entity as FAG Bearings Corporation.

2. Defendant Schaeffler Group USA, Inc. is the successor to FAG Bearings Corporation.

3. FAG Bearings operated a manufacturing facility at 3900 Rangeline Road, Joplin, Missouri, until at least June 6, 2005.

4. FAG Bearings released TCE into the environment in a number of different ways.

5. FAG Bearings released approximately 12,000 to 25,000 gallons of TCE through waste, spills, leaks, overflowing tanks, incidental use of TCE, and dumping of "still bottoms" into the ground at FAG Bearings facility.

6. During investigations at FAG Bearings' facility from 1991 to 1996, TCE or TCE-related chemicals were detected in at least 36 different locations across the FAG Bearings facility.

7. FAG Bearings' employees occasionally dumped or pumped TCE directly into the ground. The highest levels of TCE contamination were found at or near these locations.

8. The "trail," or plume, of contamination runs directly from these locations to residential wells located south of FAG Bearings' property.

9. FAG Bearings was "100%" responsible for the TCE contamination in Silver Creek, Saginaw, and on FAG Bearings' property.

10. FAG Bearings could not account for approximately 30,000 gallons of TCE it purchased.

11. FAG Bearings' vapor recovery system frequently and repeatedly malfunctioned, releasing large amounts of TCE into the air over a long period of time.

12. FAG Bearings' own experts and employees have opined that these vapors then condensed and returned to the soil on FAG Bearings' property.

13. The releases of TCE on FAG Bearings' property were predictable and foreseeable.

14. FAG Bearings knew that the vapor recovery system malfunctioned and allowed TCE to escape regularly and repeatedly.

15. While FAG Bearings repaired the vapor recovery system frequently, it did not take appropriate steps to prevent the systems from malfunctioning or operating.

16. Defendant FAG Bearings was the sole cause of the TCE contamination in the groundwater at Silver Creek.

**EXHIBIT 2.**

**INSTRUCTION NO.\_\_\_**

Earlier, in Instruction No. \_\_\_\_, the Court instructed you about facts it previously established concerning FAG Bearings release of TCE into the environment near Plaintiff's childhood home. The Court has also established certain other facts which are relevant to the issue of punitive damages. These facts are as follows. You must accept these facts as proven in this case. The parties, their attorneys, and witnesses may refer to these facts during this phase of the trial:

1. FAG Bearings acted deliberately in causing the TCE contamination in the groundwater at Silver Creek.

2. FAG Bearings' actions in regard to the releases of TCE were deliberate, the releases were expected by Defendant FAG Bearings, and the releases were not accidental.

3. FAG Bearings totally refused to cooperate in investigation and remediation of the TCE contamination.