IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| JODELLE L. KIRK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13-cv-5032-DGK |
| | ) | |
| SCHAEFFLER GROUP USA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Now before the Court are the parties' cross-motions for judgment as a matter of law. After carefully considering the parties' arguments, the Court DENIES Plaintiff's motion (Doc. 489) and GRANTS IN PART Defendants' oral motion read into the record after the close of Plaintiff's case. The Court grants Defendants judgment as a matter of law on Counts One and Three.

**I.    Defendants are entitled to judgment as a matter of law on Count One.**

Count One is a claim for strict liability premised on Plaintiff's assertion that, "The operation of the plant by Defendants FAG and Allison entailed the use, storage, and disposal of large quantities of TCE and VOCs, which constituted an *abnormally dangerous* activity."[1]  Am. Compl. (Doc. 19) at ¶ 26 (emphasis added).

---

[1] Plaintiff's asserts two alternate strict liability theories, a "defective condition" theory and a "failure to warn" theory. Both are premised on the assertion that the operation of a ball bearing plant using TCE in its operations as an "abnormally dangerous" activity.

Defendants contend operating a ball bearing plant using TCE is, as a matter of law, not an abnormally dangerous activity[2] under Missouri law. The Court agrees.

As a sister court in the Eastern District of Missouri has observed in another case involving a Superfund site:

> The doctrine of strict liability for damages caused by abnormally dangerous activities is "very narrowly applied in Missouri." *Bennett v. Mallinckrodt, Inc.,* 698 S.W.2d 854, 868–69 (Mo.Ct.App.1985). Missouri courts consider the following factors to determine whether an activity is abnormally dangerous: the existence of a high degree of risk of harm; the likelihood that the harm will be great; the inability to eliminate the risk by exercise of reasonable care; the extent to which the activity is not a matter of common usage; the inappropriateness of the activity to the place where it is carried on; and the extent to which its value to the community is outweighed by its danger. *Henke v. Arco Midcon, LLC,* 750 F.Supp.2d 1052, 1059 (E.D.Mo.2010) (citing the Restatement (Second) of Torts § 520). Only two activities have been found to be abnormally dangerous in Missouri: blasting and radioactive nuclear emissions. *Rychnovsky v. Cole,* 119 S.W.3d 204, 211 (Mo.Ct.App.2003).
>
> Plaintiffs argue that [Defendant] Fronabarger's land-disturbing activities were abnormally dangerous, because Fronabarger "excavated a known Superfund Site *without installing erosion control measures, and stockpiled contaminated soil near a ravine*" nearby the Dumey property. Plaintiffs' true complaint is with the *manner* in which Fronabarger conducted its activity, and not the activity itself. Plaintiffs' claim that Fronabarger excavated the land *in such a manner* that led to increased erosion onto their property. Plaintiffs have not shown Fronabarger's excavation to be akin to activities involving blasting and nuclear emissions, where the risk of harm simply cannot be lessened by additional precautions and care. Plaintiffs' claim is one of negligence, not strict liability.

---

[2] The parties have used the words "ultrahazardous" and "abnormally dangerous" interchangeably. These terms are synonymous. *See Bennett v. Mallinckrodt*, Inc., 698 S.W.2d 854, 868 (Mo. Ct. App. 1985).

*Wilson Rd. Dev. Corp. v. Fronabarger Concreters, Inc.,* 971 F. Supp. 2d 896, 916-17 (E.D. Mo. 2013). As in *Wilson Road Development Corp.*, the Court holds that Plaintiff's claim is not directed at an activity, but rather goes to the *manner* in which FAG Bearings engaged in the activity of operating a ball bearing plant using TCE.

Further, after applying the six relevant factors to the present case, the Court holds that operating a ball bearing plant using TCE as a solvent is not an abnormally dangerous activity.[3] The Court analyzes these factors as follows. First, although there is some risk associated with operating a plant using TCE, it is not a high degree of risk. There is no evidence that using TCE while manufacturing ball bearings is as risky as using explosives or dealing in radioactive nuclear emissions. Second, while there is some risk of great harm in the activity, the likelihood of this risk of great harm is not large. Third, this risk can be completely eliminated by the exercise of reasonable care. In this way, operating such a plant is completely different from using explosives. Fourth, while operating a ball bearing factory is not a matter of common usage, this factor does not weigh heavily in the analysis. Fifth, the activity—FAG's operation of its ball bearing facility—was not carried out in a particularly inappropriate place. While it might be preferable to operate such a plant away from a residential community relying on well-water, it is unclear from the record if there was a residential community near the plant when FAG began using TCE in its operations. Sixth and finally, the Court cannot say that the value of the operation to the community as a whole—that is, the production of ball bearings, which are indispensable to modern industry—is outweighed by its danger. Consequently, operating a ball bearing plant using TCE as a solvent is not an abnormally dangerous activity.

Since this is not an abnormally dangerous activity, Count One is not a viable claim.

---

[3] Whether an activity is abnormally dangerous is a question for the Court to decide. Restatement (Second) of Torts § 520 (comment l. Function of court.).

**II.    Defendants are entitled to judgment as a matter of law on Count Three.**

With respect to Count Three, Plaintiff's negligence per se claim, the Amended Complaint alleges:

> 46.   The release of hazardous substances from Defendant FAG's plant has resulted in violations of both federal and state law regulating the disposal and storage of hazardous wastes, including the Clean Water Act (33 U.S.C. Section 1251 et seq.); the Resource Conservation and Recovery Act (42 U.S.C Section 6901 et seq., including the Hazardous and Solid Waste Amendment of 1984); the comprehensive Environmental Response Compensation and Liability Act (42 U.S.C Section 9601 et seq.); and the Missouri Hazardous Waste Management Law (Mo. Rev. Stat. Section 260.350 et seq.).
>
> 47.   The Citizen's Suit Provisions of the Clean Water Act (33 U.S.C. Section 1365); the Resource Conservation and Recovery Act (42 U.S.C. Section 6972); and the Comprehensive Environmental Response Compensation and Liability Act (42 U.S.C Section 9659) expressly create private rights of action that support Plaintiff's negligence per se cause of action. The Missouri Hazardous Waste Management Law expresses special concern to protect a person's property in close proximity to hazardous waste sites and also support Plaintiff's negligence per se cause of action. (Mo. Rev. Stat. Sections 260.375(9), (12), and (29); and Section 260.415.3).

Am. Compl. (Doc. 13) at ¶¶ 46-47. During trial, Plaintiff has not put any evidence on concerning any of these statutes. However, assuming this is a question of law, Plaintiff has repeatedly asserted to the Court and filed a brief indicating that 42 U.S.C. § 9607 is the specific statute under which she is seeking to recover. *See* Pl.'s Mot. for Partial Judgment as a Matter of Law (Doc. 489) at 3.

In the context of this case, the elements of a negligence per se claim are:

1. FAG Bearings violated a then existing statute or regulation pertaining to the storage, disposal, or release of TCE which allowed TCE to contaminate the groundwater;

2. Plaintiff was a member of the class of persons intended to be protected by the statute or regulation;

3. Plaintiff's injury was the kind of injury the statute or regulation was designed to prevent; and

4. Violation of the statute or regulation was the proximate cause of Plaintiff's injury, which in turn requires showing:

   a. Plaintiff was exposed to TCE in an amount significant enough to cause her AIH;

   b. There is a demonstrable relationship between TCE exposure and human AIH;

   c. Plaintiff has been diagnosed with AIH;

   d. Expert testimony that Plaintiff's AIH is consistent with exposure to TCE; and

   e. Defendant was responsible for her exposure to TCE.

*See Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 84-85 (Mo. Ct. App. 2012); *Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 178 (Mo. Ct. App. 1988).

The specific statute or regulation Plaintiff has identified Defendants violating is a subsection of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") 42 U.S.C. § 9607. In relevant part, § 9607 provides:

(a) Covered persons; scope; recoverable costs and damages . . .

   (1) the owner . . . of a facility . . . shall be liable for—

   (A) *all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe* not inconsistent with the national contingency plan;

   (B) any other *necessary costs of response incurred by any other person consistent with the **national contingency plan***;

   (C) *damages for injury to, destruction of, or loss of **natural resources***, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) *the costs of any health assessment or health effects **study** carried out under section 9604(i) of this title.*

42 U.S.C. § 9607 (emphasis added). These subsections, however, are not applicable to this lawsuit. The plain language of § 9607 demonstrates it was not designed to protect individual members of the public from personal injury. Specifically:

* Subsection (A) does not apply because Plaintiff is not the United States Government, a State, or an Indian tribe;

* Subsection (B) does not apply because there is no evidence that Plaintiff's damages include "necessary costs of response incurred" by a person "consistent with the national contingency plan." Indeed, there is no evidence in the record of what the "national contingency plan" is or how it is applicable here.

* Subsection (C) is not applicable because Plaintiff is not seeking to recover for injury or damage to natural resources.

* Subsection (D) is not applicable because there is no evidence Plaintiff is seeking to recover for the costs any health assessment or health effects study carried out under subsection 9604(i).

*See also FAG Bearings Corp. v. Gulf States Paper Co.*, No. 95-5081-CV-SW-8, 1998 WL 919115, at *42 (W.D. Mo. 1998) (noting the statue allows for the recovery of response costs incurred in clean-up activities); *Thomas v. FAG Bearings Corp.*, 846 F. Supp. 1382, (W.D. Mo. 1994) (awarding damages for response costs). Hence, Plaintiff cannot use this statute to establish a claim for negligence per se because she is not a member of the class of persons intended to be protected by the statute or regulation, nor is her injury the kind of injury the statute or regulation was designed to prevent.

Consequently, Defendants are entitled to judgment as a matter of law on Count Three.

**IT IS SO ORDERED.**

Date:  March 9, 2016                              /s/ Greg Kays
                                                  GREG KAYS, CHIEF JUDGE