IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| JODELLE L. KIRK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13-cv-5032-DGK |
| | ) | |
| SCHAEFFLER GROUP USA, INC., | ) | |
| FAG HOLDING, LLC, and | ) | |
| FAG BEARINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING MOTION FOR NEW TRIAL**

This case concerns Defendants' release of trichloroethylene ("TCE") into the environment near Plaintiff Jodelle Kirk's childhood home. Following a three-week trial, the jury found this TCE caused Plaintiff's autoimmune hepatitis and awarded her $20,600,000 in compensatory and punitive damages.

Now before the Court is Defendants' Rule 59 Motion for New Trial (Doc. 557). For the following reasons, the motion is DENIED.

**Standard**

Rule 59(a) provides that the court may grant a new trial on some or all of the issues after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A new trial under Rule 59 "is warranted when the outcome is against the great weight of the evidence so as to constitute a miscarriage of justice." *Bank of Am., N.A., v. JB Hanna LLC,* 766 F.3d 841, 851 (8th Cir. 2014). In making this determination, the court relies on its own reading of the evidence, including weighing the evidence and evaluating the witnesses' credibility. *Lincoln Composites, Inc. v. Firetrace USA,*

*LLC*, -- F.3d --, 2016 WL 3186895, at *2 (8th Cir. 2016). Where the moving party complains about an evidentiary ruling, the court must determine whether the "ruling was so prejudicial as to require a new trial which would be likely to produce a different result." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1058-59 (8th Cir. 2005).

## Discussion

Defendants advance seven arguments in support of their motion. The Court finds no merit to any of them.

**I.  The Court did not err in admitting government reports referencing TCE standards.**

Defendants argue the Court erred in admitting the U.S. Environmental Protection Agency's Toxicological Review of TCE and a Minnesota Department of Health report setting recommended levels of TCE in drinking water, and that the jury wrongly used the standards referenced in these reports to determine causation. Defendants contend Plaintiff's counsel used the reports to argue repeatedly to the jury that TCE caused Plaintiff's AIH, despite giving assurances that he would not do so. Defendants contend the unfair prejudice resulting from introducing the reports outweighed any probative value they had, and that this prejudice, combined with Plaintiff's counsel's use of these standards during closing argument, necessitates a new trial.

The Court did not err in admitting the reports. The Eighth Circuit has upheld the admission of similar government reports under the public records exception in Federal Rule of Evidence 803(8). *See Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 618-19 (8th Cir. 1983). Further, the reports' probative value outweighed the danger of unfair prejudice, confusion of the issues, or misleading the jury. While the Court allowed the jury to consider the reports in determining causation, the Court repeatedly instructed the jury that the reports did not

establish causation.  The Court also gave a curative instruction accurately stating Eighth Circuit law whose wording was substantially similar to that proposed by Defendants.  *Compare* Defs.' Proposed Curative Instr. (Doc. 502) *with* Instr. No. 17 (Doc. 523 at 20).

Granted, there is some merit to Defendants' complaint that Plaintiff's counsel attempted to use the reports for an impermissible purpose after assuring the Court he would not do so, but the impact of these attempts was negligible.  What hurt Defendants' case most was the mountain of other evidence Plaintiff presented that was simply more persuasive than Defendants' evidence.

In short, the Court did not err in admitting the reports, and to the degree there was any error, the error did not prejudice Defendants such that a new trial would likely lead to a different result.

## II.     The Court did not err in admitting the soil and soil-vapor evidence.

Defendants also contend the Court erred in admitting evidence that Plaintiff came into contact with soil and "soil vapors" in Silver Creek because Plaintiff never admitted soil testing evidence showing the presence of TCE in the soil or soil vapors.

This argument is unavailing.  Plaintiff introduced sufficient evidence of TCE presence in the soil to prove she was exposed to TCE via these pathways.  For example, Plaintiff's expert Dr. Lorne Everett, Ph.D., D.Sc., testified that Silver Creek residents were exposed to TCE in many ways, including dirt-contaminated soil and vapor intrusion.  He described how vapor intrusion works and played an animated video illustrating it.  He explained how residents living within the TCE plume, including Plaintiff, were exposed to TCE via this pathway, and he testified that the soil in certain creek beds, including one Plaintiff played in as a child, was contaminated.  Finally, he testified to a reasonable degree of scientific certainty that "FAG Bearings' releases have

3

resulted in widespread groundwater and soil vapor contamination throughout the entirety of the Silver Creek and Saginaw communities which are located south of the facility." Trial Tr. Vol. 3, 378:11-16.

Because there was ample evidence supporting this theory of exposure, the Court did not err in admitting the soil vapor evidence.

**III.    The Court did not improperly limit Don Van Dyke's testimony.**

Next, Defendants complain the Court improperly excluded factual testimony from Don Van Dyke regarding his observations as a Missouri Department of Natural Resources ("MDNR") project manager. Defendants contend the Court should have permitted him to testify as an ordinary fact witness about a variety of topics, including, for example, the quality and reliability of well-water testing done in the area, his authorship of the MDNR's 2004 Record of Decision, and whether Plaintiff's 19 alleged exposure locations were within the plume of TCE contamination. They assert none of these subjects involved his rendering an opinion, much less an expert opinion.

This argument is meritless. With respect to the above examples, no lay person would know whether a given set of well-water testing was reliable or not; this determination requires expert knowledge of the protocols for well-water testing. Similarly, Mr. Van Dyke's proposed testimony that the 19 alleged exposure locations were outside of the plume implicitly rests on an expert opinion about where the plume of TCE contamination runs through Silver Creek, which requires expert knowledge of hydrology and other disciplines. As for his supposed authorship of the 2004 Record of Decision, although he was a staff member of the agency that produced the report, he was not the author.

The Court did not err in excluding portions of his testimony. Even if the Court did err, given the amount of other evidence in the record supporting the verdict, a new trial would not result in a different outcome.

**IV.     Defendants had a fair opportunity to rebut Dr. Zizic's testimony.**

Defendants also complain that the Court deprived them of a fair chance to rebut the testimony of Plaintiff's expert Dr. Thomas Zizic, M.D., by limiting rebuttal testimony from two of Defendants' experts and completely excluding rebuttal testimony from three others. Defendants note that despite repeatedly stating Dr. Zizic would provide rebuttal testimony only, Plaintiff nonetheless called him in her case-in-chief.

This argument is meritless. Defendants expressed concern well before the trial began that Plaintiff might call Dr. Zizic to testify in her case-in-chief and not as a rebuttal expert. The Court addressed Defendants' concerns on September 29, 2015—approximately four months before the trial—by observing that if Defendants did not want Dr. Zizic to testify during Plaintiff's case-in-chief they could file a motion addressing the order of his testimony. *See* Order Denying Mot. to Exclude Pl.'s Experts (Doc. 285) at 11-12. Defendants did not file any such motion. Instead, they made a strategic decision to keep arguing that they were prejudiced by an untimely disclosure of his testimony, hoping to exclude all of Dr. Zizic's testimony, not just delay its admittance until the rebuttal phase.

The fact that Defendants' strategic decision did not work as planned is not grounds to grant a new trial.

**V.      The Court did not err in holding Schaeffler was judicially estopped from denying that it previously merged with FAG Bearings Corporation and inherited its liability.**

Next, Defendant Schaeffler Group USA, Inc. argues the Court erred in holding it is judicially estopped from denying it previously merged with FAG Bearings Corporation and

5

inherited its liability in the merger. Defendants seek to include by incorporation arguments previously raised in their motion for reconsideration (Doc. 386).

As the Court observed in denying the motion for reconsideration, the arguments Defendants seek to incorporate could have been made *before* the Court issued its summary judgment ruling and so will not be entertained now. Defendants' suggestion that they did make these arguments previously, albeit in the "Response to Additional Facts" section of their summary judgment briefing, is novel but unavailing. It is axiomatic that a party's arguments must be presented in the "Argument" section of its briefing, not in the "Facts" section. Holding otherwise would be the death of page limits, allowing a litigant to evade a page limit by cutting and pasting an overly-long argument from the "Argument" section into the "Facts" section of its brief.[1] Because Defendants had a fair opportunity to argue the matter before the Court issued its summary judgment order, the Court did not err by declining to revisit its decision and consider Defendants' new arguments.

**VI.     The compensatory damages instruction and verdict form do not warrant a new trial.**

In their sixth argument, Defendants contend the damages instruction and verdict form used in the first phase of the trial violated their rights to due process by failing to explain that the jury's award was limited to compensatory damages.

With respect to damages, the Court instructed the jury, "If you find in favor of Plaintiff, then you must award her such sum as you unanimously believe will fairly and justly compensate her for any damages you believe she sustained, and is reasonably certain to sustain in the future." Instr. No. 21 (Doc. 523 at 26). This language is almost identical to that used in Missouri

---

[1] Allowing litigants to present argument in the "Facts" section of its briefing would be particularly problematic in the Western District of Missouri, where there are no page limits on the "Facts" section of a party's summary judgment briefing. *See* Local Rule 7.0(f) (limiting suggestions in support of . . . a motion to fifteen pages, "exclusive of facts presented in accordance with Rule 56.1").

6
Case 3:13-cv-05032-DGK   Document 578   Filed 07/13/16   Page 6 of 9

Approved Instruction 4.01. More tellingly, it is also almost identical to that proposed by Defendants:

> If you find in favor of Plaintiff on Plaintiff's claims of personal injury based on negligence or negligence per se, then you must award Plaintiff such sum as you believe will fairly and just[ly] compensate Plaintiff for any damages you believe she sustained and is reasonably certain to sustain the future as a direct result of the occurrence mentioned in the evidence[.]

Defs.' Annotated Proposed Jury Instr. (Doc. 423) at 24.

The verdict form used during phase one was similarly innocuous. It read, "We, the undersigned jurors, assess the damages of Plaintiff Jodelle L. Kirk as follows: $_____ (stating the amount)." Jury Verdict (Doc. 520). Read in conjunction with Instruction No. 21, the Court's guidance to the jury was clear—they must award Plaintiff an amount that would fairy and justly compensate her for the damages she sustained and is reasonably certain to sustain in the future. Accordingly, the instructions contained no errors, certainly none that warrant holding a new trial.

**VII. The jury's damages award was not excessive.**

Finally, Defendants complain the jury returned excessive verdicts. Defendants argue "[w]hether through the jury's honest mistake or the numerous errors—or both—the jury's damages award was excessive, disproportionate, and likely the result of bias and prejudice," because the $7.6 million in actual damages "was more than twice the amount of damages calculated by Plaintiff's damages expert using worst-case scenario assumptions." Defs.' Br. at 15.

State law determines whether an award is excessive. *Tedder v. Am. Railcar Indus., Inc.*, 739 F.3d 1104, 1111 (8th Cir. 2014). Under Missouri law, "[t]here are two general types of excessive verdicts: (1) a verdict that is disproportionate to the evidence of injury and results from
7

an 'honest mistake' by the jury in assessing damages; and (2) a verdict that is excessive due to trial error that causes bias and prejudice by the jury." *Stewart v. Partamian*, 465 S.W.3d 51, 56 (Mo. 2015). "When a verdict is excessive because of an 'honest mistake' in the jury's assessment of damages, the excessive verdict can be remedied by ordering remittitur[2] or granting a new trial." *Id.*

In determining whether an award is excessive, the court must be mindful that a jury award should fairly and reasonably compensate the plaintiff for her injuries. *Id.* Factors to consider include the nature and extent of injury, diminished earning capacity, economic condition, and plaintiff's age, as well as non-economic damages such as past and future pain, suffering, effect on lifestyle, embarrassment, and humiliation. *Id.* at 56-57.

The flaw in Defendants' argument is that Plaintiff's compensatory damages encompass both economic *and* non-economic losses. Plaintiff's experts demonstrated that she suffered $3 million in economic damages. With respect to non-economic damages, several credible witnesses, including Plaintiff, testified about the pain, suffering, and humiliation her autoimmune hepatitis—and its attendant treatment—have caused her and will cause her in the future. It has also severely impacted her life-style. For example, Plaintiff presented credible evidence that she may have to take Imuran for the rest of her life to prevent her immune system from attacking her liver, a drug which increases her risk of having cancer. As one doctor put it: The risks of taking the drug are severe, but the risks of not taking it are worse. And even if she keeps taking the Imuran, she may need a liver transplant at some point. If that happens, she will be forced to take a regime of anti-rejection drugs for the rest of her life. Finally, taking Imuran leaves Plaintiff facing a terrible dilemma with respect to having a family: She can choose to continue taking the

---

[2] Remittitur is the process by which a court orders that the case be retried, or that the damages awarded be reduced to an amount determined by the judge. *Remittitur*, Black's Law Dictionary (10th ed. 2014).

drug and never become pregnant, or she can discontinue taking the drug and become pregnant but risk dying. This is a horrible dilemma for a young woman who testified she wanted to have a family. Accordingly, Plaintiff's non-economic damages are considerable, and a $4 million award for non-economic damages is not excessive or disproportionate.

Considering her non-economic damages alongside the expert testimony regarding her economic damages, the Court finds a total compensatory damage award of $7.6 million is not excessive or disproportionate.

## Conclusion

For the foregoing reasons, Defendants' Rule 59 Motion for New Trial (Doc. 557) is DENIED.

**IT IS SO ORDERED.**

Date:  July 13, 2016   /s/ Greg Kays
　　　　　　　　　　　　　　　　　　　　　　　GREG KAYS, CHIEF JUDGE
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT